# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-01643-als11 |
| | ) | Affiliated Cases: 21-01644 through 21-01653 |
| **QHC FACILITIES LLC,** | ) | |
| | ) | |
| Debtor and Debtor in Possession. | ) | Chapter 11 |
| | ) | |
| | ) | Hon. Anita L. Shodeen |
| 8350 Hickman Road, Suite 15 | ) | |
| Clive, IA 50325 | ) | **FIRST DAY MOTION** |
| | ) | **DEBTORS' EMERGENCY AND *EX*** |
| EIN: 26-2923180 | ) | ***PARTE* MOTION FOR ORDER** |
| | ) | **AUTHORIZING INTERIM AND FINAL** |
| | ) | **USE OF CASH COLLATERAL AND** |
| | ) | **PROVIDING POST-PETITION LIENS** |
| | ) | |
| And Affiliated Cases | ) | [Bankruptcy Code Section 363, Bankruptcy |
| | ) | Rule 4001] |
| | ) | |
| | ) | No Hearing Set |

QHC Facilities LLC, ("QHC Facilities" or "Debtor"), Debtor and Debtor-in- Possession in this Chapter 11 case herein, by and through its proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., and Krystal R. Mikkilineni, Esq. of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., and together with its debtor affiliates Crestridge, Inc., Crestview Acres, Inc., QHC Fort Dodge Villa, LLC, QHC Humboldt North, LLC, QHC Humboldt South, LLC, QHC Madison Square, QHC Mitchellville, LLC, QHC Villa Cottages, LLC, QHC Winterset North, LLC, and QHC Management, LLC, (collectively referred to herein as the "QHC Entities" or "Debtors") respectfully submit this Emergency and *Ex Parte* Motion (the "Motion") for entry of an interim order on an expedited basis (the "Interim Order"), and following a final hearing to be set by the Court (the "Final Hearing"), entry of a final order (the "Final Order"), pursuant to sections 105, 361, 362 and 363 of Title 11 of the United States Code

(the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), authorizing the Debtors to (a) use cash collateral, and (b) provide adequate protection to its senior pre-petition secured lender, Lincoln Savings Bank ("Senior Secured Creditor").  In support of this Motion, the Debtors rely on the Declaration of Ms. Nancy Voyna, Principal of the QHC Entities in Support of First Day Motions (the "First Day Declaration").  In further support of this Motion, the Debtors represent as follows:

## INTRODUCTION

1. The Debtor herein is a limited liability company formed under the laws of the State of Iowa. QHC Facilities, along with the other QHC Entities, qualify as a Health Care Business as defined in Bankruptcy Code Section 101(27A). The QHC Entities provide skilled nursing, assisted living and complementary and ancillary health care services in the following Iowa counties: Tama, Madison, Humboldt, Jackson, Linn, Webster, and Polk.  The QHC Entities have combined approximately 647 beds in the Skilled Nursing Facilities ("SNF's"), and approximately 55 units in its two assisted living facilities.

2. On December 29 2021 (the "Petition Date"), each of the Debtors commenced their respective Chapter 11 case (together, the "Chapter 11 Cases") by filing voluntary petitions for relief under the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Iowa (the "Court").  Pursuant to Bankruptcy Code Sections 1107 and 1108, since the Petition Date, the Debtors have continued in possession of its property and operation of their businesses as debtor-in-possession.  No motion for the appointment of a Chapter 11 Trustee or Examiner has been filed in the Chapter 11 Cases.  No committee of unsecured creditors has been formed.

**JURISDICTION**

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

**RELIEF SOUGHT**

4. As of December 27, 2021, the Debtors are indebted to the Senior Secured Creditor in the aggregate amount of $9,292,663.90. By this Motion, the Debtors seek the entry of an Interim Order and a Final Order, which:

a) Authorizes the Debtors, in compliance with the 13-week budget attached hereto as Exhibit A (the "13-Week Budget") to use cash collateral (the "Cash Collateral") in which the Senior Secured Creditor has an interest;

b) Authorizes the Debtors to provide adequate protection to the Senior Secured Creditor as set forth herein;

c) Modify the automatic stay imposed pursuant to Bankruptcy Code Section 362 to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and Final Order;

d) Waive any applicable stays under the Bankruptcy Rules and provide for the immediate effectiveness of the Interim Order and the Final Order; and

e) Schedule a Final Hearing to allow for entry of the Final Order within thirty (30) days of the entry of the Interim Order (the "Interim Order Entry Date") (the date on which the Final Order is entered being the "Final Order Entry Date").

5. After consultation with the General Reorganization Counsel and the Debtors' financial advisors, the Debtors acknowledge, admit, stipulate, and agree that the Senior Secured Creditor holds validly perfected and enforceable liens on and security interests in, among other things, the Debtors' cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents, proceeds, products, offspring, rents, or profits of property (hereinafter the "Cash Collateral"), all as more particularly described and evidenced by those several security agreements (the "Security Agreements") executed by the applicable Debtors on various dates and perfected by various financing statements filed with the Iowa Secretary of State and on various dates, respectively.

6. The Debtors' obligations to the Senior Secured Creditor constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the various loan documents applicable thereto, including, without limitation, the Security Agreements.

7. Proceeds from cash or cash equivalents received from any source constitute cash collateral pursuant to Bankruptcy Code Section 363(a), which comprise the Cash Collateral of the Senior Secured Creditor. The Senior Secured Creditor is entitled to adequate protection of its interests in the prepetition collateral and liens granted pursuant to all prepetition loan documents with the Debtors (collectively, the "Prepetition Collateral"). As set forth herein, the Debtors may not use the Cash Collateral for any purpose without the Senior Secured Creditor's consent or upon order of the Court, after appropriate notice and hearing, authorizing use of Cash Collateral in accordance with this Motion. The Debtors wish to provide adequate protection to the Senior Secured Creditor under Bankruptcy Code Section 506.

8. The Debtors propose that as adequate protection and in consideration for the Debtor's use of the Cash Collateral pursuant to the 13-Week Budget and as adequate protection for any diminution in the value of the Senior Secured Creditor's security interests, Debtors propose to grant to the Senior Secured Creditor:

(a) Pursuant to Bankruptcy Code sections 361, 362, 363, and 507, a validly perfected first priority lien on and security interest in the Debtors' post-petition Cash Collateral which primes all existing valid, perfected and superior liens in the Prepetition Collateral (other than the Carve-Out (as defined below)) (the "Adequate Protection Liens"). Except as set forth herein, the rights, liens and interests granted to the Senior Secured Creditor pursuant to the Adequate Protection Lien shall be based on the Senior Secured Creditor's relative rights, liens and interests in the Debtors' Prepetition Collateral. Subject to the entry of the Final Order, the Debtors grant the Senior Secured Creditor an Adequate Protection Lien on the proceeds of the Debtors' Avoidance Actions (as defined below). Upon entry of any Order, stipulation, or otherwise before this Court permitting the relief requested in this Motion, the Adequate Protection Lien shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of the Senior Secured Creditor taking any further action. The Senior Secured Creditor may, however, at its respective option, file continuation statements, financing statements or such documents as it deems necessary to evidence its respective security interests in the Prepetition Collateral. Upon request by the Senior Secured Creditor, the Debtors will execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect the Senior Secured Creditor's security interests as set forth in this paragraph.

(b) In the event of any decrease in value (such decrease being a "diminution of value") of the Senior Secured Creditor's interests in the Prepetition Collateral, a super-priority claim that shall have priority in the Debtors' bankruptcy case over all priority claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise (the "Adequate Protection Superpriority Claims"). The Adequate Protection

5

Superpriority Claims shall be subject and subordinate only to the Carve-Out described below and not to any other unsecured claim (having administrative priority or otherwise). The Carve-Out shall include any fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and fees and expenses incurred by the Debtors', Bankruptcy Estate, and Committee professionals and approved by the Court in an amount not to exceed $130,000. For the avoidance of doubt, it is the intention of the Debtors to expand upon the rights of the Senior Secured Creditor and to "prime" all administrative expenses (except for the Carve-Out described herein) pursuant to the Adequate Protection Superpriority Claim.

(c) The Debtors shall, as soon as practicable in advance of the filing with the Court, but in not later than two business days prior to filing, deliver to counsel for the Senior Secured Creditor copies of all material documents, motions, and pleadings related to the Interim Order, Final Order, and Cash Collateral and provide the Senior Secured Creditor with a reasonable opportunity to review and comment on all such documents, which documents shall be reasonably satisfactory to the Senior Secured Creditor.

(d) The Debtors shall deliver to the Senior Secured Creditor, promptly after the same are available, copies of all reporting and information related to any proposed asset sales or other dispositions.

(e) The Debtors shall allow the Senior Secured Creditor access to, upon reasonable notice during normal business hours, all financial advisors and other professionals engaged by the Debtors (which engagement, with respect to any professionals or advisors engaged after the Petition Date, shall be consistent with the 13-Week Budget and on terms and conditions reasonably satisfactory to the Senior Secured Creditor).

(f) If the Debtors enter into any agreement to sell substantially all of their assets to third parties outside of the ordinary course of the Debtors' business (a "Disposition Event"), a $100,000.00 adequate protection payment shall be added to the Adequate Protection Superpriority Claim. If a Disposition Event occurs, the Debtors shall provide the Senior Secured Creditor with twice-weekly telephonic updates on the status and timing of the consummation of such disposition transaction.

(g) If a Termination Event (as defined below) occurs and is not cured within 2 business days, a $100,000 adequate protection payment shall be added to the Adequate Protection Superpriority Claim.

9. Amounts set forth in the Budget for Estate Professionals (defined below) for periods prior to the occurrence of a Post-Petition Default, if any, shall be set aside weekly and held by the Debtors in a separate segregated account for the Debtors Professionals (defined below) and the Committee Professionals (defined below) (each, a "Professional Fee Escrow") for the sole purpose of funding allowed fees and expenses of Estate Professionals (as defined below) incurred prior to the occurrence of a Termination Event. For the avoidance of doubt, the Adequate Protection Superpriority Claim shall cover all amounts in the Professional Fee Escrow that are not subject to an order by this Court allowing such fees to be paid to an Estate Professional following a Termination Event. Any amounts payable by the Debtors to Estate Professionals on account of fees or expenses incurred prior to the occurrence of a Termination Event shall only be paid upon allowance or authorization by the Court from funds on deposit in the applicable Professional Fee Escrow.

10. The Senior Secured Creditor consents to the professionals retained pursuant to an order of this Court by the Debtors (the "Debtor Professionals") or any Committee (the "Committee Professionals," and collectively with the Debtor Professionals, the "Estate Professionals") retaining any retainers held as of the Petition Date, provided that such retainers are used first for payment of allowed fees and expenses of such firms holding such retainers prior to any payment from the applicable Professional Fee Escrow. The Senior Secured Creditor consents, subject to the terms and conditions set forth in this Motion, to a carve out from the Prepetition Collateral for the payment of (i) fees payable to the United States Trustee pursuant to 28 U.S.C. 1930 and (ii) the allowed professional fees and expenses of Estate Professionals in an amount not to exceed (a) the amounts set forth in the 13-Week Budget and paid into the applicable Professional Fee Escrow to be used to pay fees earned and expenses

7

incurred prior to the occurrence of a Termination Event, plus (b) an aggregate amount not to exceed $100,000 for Debtor Professionals, and $30,000 for Committee Professionals to be used to pay fees earned and expenses incurred subsequent to the occurrence of a Termination Event, which payments are approved on a final basis by this Court (collectively, the "Carve-Out").

11. Payments from the Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of Estate Professionals. The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a Termination Event in accordance with the 13-Week Budget and allowed and payable under Bankruptcy Code § 330 and § 331, as the same may be due and payable solely from the applicable Professional Fee Escrow. Other than the Carve-Out set forth above, the Senior Secured Creditor, does not consent to any carve-out from the Prepetition Collateral for payment of any fees and expenses of the Estate Professionals.

12. Subject to entry of the Final Order, the Debtors propose to waive their right to "surcharge" the Senior Secured Creditor's Prepetition Collateral under Bankruptcy Code section 506(c). The Senior Secured Creditor required that the Debtors waive their rights under Bankruptcy Code section 506(c) as a condition to the consensual use of Cash Collateral. Moreover, the Senior Secured Creditor extended valuable concessions to the Debtors in exchange for the proposed section 506(c) waiver, including the Carve Out.

13. Subject to the entry of the Final Order, the Senior Secured Creditor shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Senior

Secured Creditor with respect to proceeds, products, offspring, or profits of any Prepetition Collateral, Cash Collateral, or other collateral covered by this Motion. Further, the Senior Secured Creditor is not subject to the equitable doctrine of "marshalling" or any other similar doctrine, with respect to collateral encumbered by the Adequate Protection Liens. The Senior Secured Creditor required that the Debtors waive their rights under Bankruptcy Code section 552(b) as a condition to the consensual use of Cash Collateral. Moreover, the Senior Secured Creditor extended valuable concessions to the Debtors in exchange for the proposed section 552(b) waiver, including the Carve Out.

14. Subject to the entry of the Final Order and as set forth herein, as adequate protection for the use of Cash Collateral, the Senior Secured Creditor shall be entitled to an Adequate Protection Lien on the proceeds of all of the Debtors' claims and causes of action under (i) Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 550, and 553; (ii) under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statute or common law; and (iii) any commercial tort claims (collectively, the "Avoidance Actions"). For the avoidance of doubt, the Senior Secured Creditor's Adequate Protection Lien shall not extend to the Avoidance Actions themselves and shall only extend to any and all proceeds of the Avoidance Actions. The Senior Secured Creditor required that the Debtors provide an Adequate Protection Lien on the proceeds of the Avoidance Actions as a condition to the consensual use of Cash Collateral. Moreover, the Senior Secured Creditor extended valuable concessions to the Debtors in exchange for the Adequate Protection Lien on the proceeds of Avoidance Actions, including the Carve Out.

15. As further adequate protection, the Debtors will make post-petition monthly, interest-only payments at the rate of 4.25% per annum to the Senior Secured Creditor based on the amount of the Senior Secured Creditor's claim as of the Petition Date.

16. The Debtors propose that, in conformity with and pursuant to the 13-Week Budget, they shall be authorized to use Cash Collateral for the payment of usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of the Debtors' business and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court. Any of the following payments shall not be considered ordinary and usual expenses necessary to continue the operation of the Debtors' business unless the Senior Secured Creditor consents to any such payment in writing prior to such payment being made and provided approval of this Court is obtained : (1) operation of the Debtors' business at any fixed locations other than the pre-petition business premises or locations;  (2) payment of trade debt incurred prior to the commencement of this case; (3) payment of any taxes owed prior to the Petition Date; and (4) payment of any other debt incurred prior to the Petition Date. The foregoing payments due are merely illustrative and not the exclusive list of payments that will not be considered ordinary and usual expenses.  The Debtors authorization to use Cash Collateral shall continue until a Termination Event (as defined below), subject to the following terms and conditions:

    (a) All proceeds received from the Debtors' operations of its business, in the ordinary course of its business, and the collection of accounts receivable and profits, shall be deposited in the DIP Account (as defined in the First Day Declaration).Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, shall be paid from the DIP Account, and other payments as the Court shall allow from time to time in compliance with the 13-Week Budget or as otherwise agreed to by the Senior Secured Creditor.

(b) On or before thirty (30) days after the Petition Date, the Debtors shall provide to the Senior Secured Creditor an initial aging of all accounts receivable and accounts payable, plus total current operating expenses and total current collections as of the Petition Date. This report shall be updated and provided to the Senior Secured Creditor by the 30th day of each month thereafter (the "Reports").

(c) The Senior Secured Creditor shall, at any time, be permitted to conduct a full inspection of the real estate property and accounts of the Debtors by visiting the Debtors' premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Prepetition Collateral, subject to all applicable privacy and HIPPA disclosure regulations. Debtors propose to grant the Senior Secured Creditor, its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours, subject to all security restrictions imposed by various health, environmental and regulatory agencies.

(d) On or before thirty (30) days after the Petition Date, the Debtors shall prepare and provide the Senior Secured Creditor with a balance sheet and income statement existing as of the Petition Date. Within thirty (30) days of each successive month, Debtors shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the United States Trustee.

(e) For purposes of determining the Debtors' compliance with the 13-Week Budget, on Wednesday, January 5, 2022 and every second Wednesday thereafter on a "rolling" basis, the Debtors shall provide via electronic mail to counsel for the Senior Secured Creditor a variance report (the "Variance Report") in a form reasonable satisfactory to the Senior Secured Creditor setting forth for the period ending on the Saturday immediately preceding such report (i) any variances (whether positive or negative) of actual total operating receipts or total operating expenses from the applicable period of the 13-Week Budget; and (ii) an explanation, in reasonable detail, for any variances from the 13-Week Budget.

(f) All Prepetition Collateral shall be insured to its full value, and Debtors shall otherwise comply with the terms and conditions of the Senior Secured Creditor loan and security documents. Evidence of insurance listing Senior Secured Creditor as insured mortgagee/loss payee shall be provided within thirty (30) days of the Petition Date.

17. In the absence of a further order of this Court, following delivery (including delivery by electronic mail or facsimile) of notice by the Senior Secured Creditor of the occurrence of a Termination Event set forth herein to (i) counsel for the Debtors, (ii) counsel to the Committee (if any), and (iii) U.S. Trustee (the "Termination Notice"), and upon the expiration of the Termination Event Cure Period, the Debtors shall no longer be authorized to use Cash Collateral (other than with respect to the Carve Out) and such Cash Collateral use shall automatically terminate on the date upon which any of the following events occur (each of the following events, a "Termination Event"). The Termination Events include the following:

(a) If no Final Order (in a form acceptable to the Senior Secured Creditor in its sole discretion) is entered within 30 days after entry of the Interim Order or like stipulation.

(b) March 1, 2022, unless extended with the written consent of the Senior Secured Creditor, which extension shall be effective without further application to, or approval by, this Court;

(c) Failure to have applicable insurance in place on the Prepetition Collateral at any time;

(d) The failure to pay any local, state or federal taxes as they become due

(e) The filing by any Debtor or any of its controlled affiliates of a reorganization plan to which the Senior Secured Creditor has not provided its written consent (to be given in its sole and absolute discretion).

(f) Any provision set forth in this Motion is reversed, vacated, stayed, or otherwise ceases to be in full force and effect or the entry of an order (without the prior written consent of the Senior Secured Creditor) amending, supplementing, or otherwise modifying the terms set forth in this Motion.

(g) Failure by the Debtors to perform under any order entered by the Court in any material respect.

(h) Failure to pay fees as required by the U.S. Trustee.

(i) The dismissal of any of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or the filing of any motion to so dismiss or convert brought by any of the Debtors.

(j) Any of the Adequate Protection Liens or the Adequate Protection Superpriority Claims granted pursuant to any order by this Court cease to be valid, perfected, and enforceable in any respect.

(k) Appointment of a Chapter 11 trustee or an examiner or any similar insolvency official or administrator or the filing of any motion to so appoint brought by or against any Debtor.

(l) Any Debtor (or any person on behalf of the Debtors) shall file a motion or other pleading seeking or otherwise consenting to any of the matters set forth herein or any other relief that, if granted, would give rise to a Termination Event.

(m) A total combined average variance of above 15% for any two consecutive Variance Reports

(n) Failure to comply with any term or provision of this Motion.

(o) Failure to notify the Senior Secured Creditor within one business day of any Termination Event that is known by or should reasonably be known to the Debtors.

Following a Termination Event, the Senior Secured Creditor may send a Termination Notice to all parties set forth herein. Upon the Debtors' receipt of the Termination Event Notice, the Debtors shall have 14 days from the occurrence of the Termination Event to fully cure and remedy (in Senior Secured Creditor's sole and absolute discretion) such Termination Event (the "Termination Event Cure Period"). Following expiration of the Termination Event Cure Period and in the event that such Termination Event is not fully cured and remedies (in Senior Secured Creditor's sole and absolute discretion), and without further order of this Court, Senior Secured Creditor's consent to use Cash Collateral will be withdrawn and the automatic stay provisions of Bankruptcy Code section 362 shall be modified to the extent necessary to permit the Senior Secured Creditor to enforce all of its rights and remedies against the Prepetition Collateral, Cash Collateral, and all other collateral encumbered by the Adequate Protection Liens and the Adequate Protection Superpriority Claims. During the Termination

Event Cure Period, the Debtors may request an expedited hearing before the Court solely to determine whether a Termination Event has occurred and is continuing.

18. All rights of the Senior Secured Creditor to seek additional adequate protection for Debtors' use of Cash Collateral, to assert any other right or cause of action, or any other matter with respect to the Debtors, whether in this bankruptcy case, or otherwise, are expressly reserved. The failure or delay by the Senior Secured Creditor to seek relief or otherwise exercise its rights and remedies under this Motion or any applicable document shall not constitute a waiver of any of the rights of the Senior Secured Creditor.

19. This Motion, the Security Agreements, and any documents and instruments required of the Debtors by this Motion are, or when executed and delivered, will be valid, binding and enforceable in accordance with its respective terms upon entry of any order or otherwise by this Court approving this Motion.

20. In consideration of the Senior Secured Creditors' agreements hereunder, the Debtors has waived and shall be barred from (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset, or subordinate any of the prepetition indebtedness or prepetition liens of the Senior Secured Creditor, and (ii) from asserting any claim or causes of action against the Senior Secured Creditor that accrues prior to the date of any Final Order or a Termination Event. Notwithstanding the foregoing, any party-in-interest with standing to do so, including the Committee, shall be permitted until 45 days after its appointment (the "Investigation Period") to investigate and challenge the validity, priority, and extent of the prepetition loan debt, or to assert other claim or cause of action against the Senior Secured Creditor relating to the Debtors which accrued prior to the date of any Final Order, only by filing an adversary proceeding on or prior to the last day of

the Investigation Period against the Senior Secured Creditor; *provided, however,* that no more than an aggregate of $15,000 of the proceeds of any collateral encumbered by the Adequate Protection Liens (including Cash Collateral) may be used by the Committee during the Investigation Period to investigate and challenge the matters set forth in this paragraph. If the Committee does not file and serve upon the Senior Secured Creditor's counsel an adversary proceeding naming such Senior Secured Creditor as a defendant prior to the end of the Investigation Period: (i) all parties-in-interest, including without limitation the Committee, shall be forever barred from taking any action regarding any claims or causes of action which accrued prior to the date of this Final Order against the Senior Secured Creditor or asserting any objection to the validity, priority, extent, and/or perfection of the Senior Secured Creditor's liens, security interests, mortgages, and any other interest of the Senior Secured Creditor in the Debtors' assets; and (ii) the Senior Secured Creditor's claim will be deemed allowed and fully secured.

21.    No representation or warranty of the Debtors contained in this Motion or in any statement, instrument, or other document furnished by the Debtors in connection with this Motion, or prior to this Motion contains any untrue statement of material fact or omits to state any material fact.

22.    Immediately upon entry by the Court of an Order approving this Motion, the provisions of the Motion shall be valid and binding upon and inure to the benefit of the Senior Secured Creditor, all other creditors of the Debtors, and all other parties in interest. Pursuant to Bankruptcy Rule 4001(d), a copy of this Motion shall be provided to any committee appointed in this case, or if no committee has been appointed to the twenty (20) largest

unsecured creditors. If no objection is filed, the terms and conditions of this Motion may be approved without further order and shall be binding on all parties in interest on a final basis.

23. The Debtors shall pay the reasonable and documented fees of counsel for the Senior Secured Creditor to the extent authorized under Bankruptcy Code section 506.

WHEREFORE, based upon the foregoing, the Debtors request that this Court (a) approve this Motion; (b) enter the Interim Order; and (c) grant such other and further relief as may be just and equitable under the circumstances.

Date: December 29, 2021               Respectfully submitted,

                                      */s/  Jeffrey Goetz*
                                      Jeffrey D. Goetz, Esq., AT0002832
                                      Krystal R. Mikkilineni, Esq., AT0011814
                                      Bradshaw Fowler Proctor & Fairgrave, P.C.
                                      801 Grand Avenue, Suite 3700
                                      Des Moines, IA 50309-8004
                                      515/246-5817
                                      515/246-5808 FAX
                                      goetz.jeffrey@bradshawlaw.com
                                      mikkilineni.krystal@bradshawlaw.com

                                      Proposed General Reorganization
                                      Counsel for QHC Facilities LLC,
                                      Debtor and Debtor-in-Possession

## CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

                                      *Barbara Warner*

**QHC Facilities, LLC, et al.**
**13-Week Cash Flow Forecast**

| (Amounts in $000s) | | Forecast Week 1<br>29-Dec-21<br>31-Dec-21 | Forecast Week 2<br>1-Jan-22<br>7-Jan-22 | Forecast Week 3<br>8-Jan-22<br>14-Jan-22 | Forecast Week 4<br>15-Jan-22<br>21-Jan-22 | Forecast Week 5<br>22-Jan-22<br>28-Jan-22 | Forecast Week 6<br>29-Jan-22<br>4-Feb-22 | Forecast Week 7<br>5-Feb-22<br>11-Feb-22 | Forecast Week 8<br>12-Feb-22<br>18-Feb-22 | Forecast Week 9<br>19-Feb-22<br>25-Feb-22 | Forecast Week 10<br>26-Feb-22<br>4-Mar-22 | Forecast Week 11<br>5-Mar-22<br>11-Mar-22 | Forecast Week 12<br>12-Mar-22<br>18-Mar-22 | Forecast Week 13<br>19-Mar-22<br>25-Mar-22 | Total<br>29-Dec-21<br>25-Mar-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Inflows** | **174.0** | **316.9** | **480.0** | **425.0** | **225.0** | **745.0** | **280.0** | **425.0** | **425.0** | **225.0** | **280.0** | **425.0** | **425.0** | **4,850.9** |
| 2 | **Employee Costs** | **-** | **372.6** | **85.6** | **282.5** | **82.5** | **324.5** | **172.6** | **282.5** | **82.5** | **282.5** | **124.5** | **60.5** | **17.7** | **2,170.5** |
| 3 | **Operating Cash Outflows:** | | | | | | | | | | | | | | |
| 4 | Rent | - | 12.5 | - | 7.0 | - | 7.5 | - | 7.0 | - | 5.0 | - | - | - | 39.0 |
| 5 | Food | - | 143.9 | - | - | - | - | 108.9 | - | - | - | 108.9 | - | - | 361.7 |
| 6 | Agency | 50.0 | 180.0 | 180.0 | 180.0 | 180.0 | 180.0 | 180.0 | 180.0 | 180.0 | 180.0 | 130.0 | - | - | 1,800.0 |
| 7 | Quality Assurance Assessment Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 8 | Insurance | - | 83.0 | - | - | 8.0 | 75.0 | - | - | 8.0 | - | - | - | - | 174.0 |
| 9 | Supplies | - | 5.0 | - | 22.8 | 26.0 | 5.0 | - | 22.8 | 26.0 | 5.0 | - | 53.8 | - | 166.4 |
| 10 | Utilities | 55.0 | 10.0 | 45.0 | 37.1 | 25.0 | 10.0 | 45.0 | 37.1 | 25.0 | 10.0 | 45.0 | 62.1 | - | 406.3 |
| 11 | Other | - | 43.3 | 40.0 | 48.5 | 40.0 | 40.0 | 40.0 | 48.5 | 40.0 | 40.0 | 40.0 | 48.5 | 40.0 | 508.8 |
| 12 | **Total Operating Cash Outflows** | **105.0** | **477.7** | **265.0** | **295.4** | **279.0** | **317.5** | **373.9** | **295.4** | **279.0** | **240.0** | **323.9** | **164.4** | **40.0** | **3,456.2** |
| 13 | Construction/Renovation - Mitchellville | - | - | - | 97.5 | - | - | - | - | - | - | - | - | - | 97.5 |
| 14 | Property Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15 | **Total Non Operating Cash Outflows** | **-** | **-** | **-** | **97.5** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **97.5** |
| 16 | **Total Cash Outflows before Restructuring Disbursements** | **105.0** | **850.3** | **350.6** | **675.4** | **361.5** | **642.0** | **546.5** | **577.9** | **361.5** | **522.5** | **448.4** | **224.9** | **57.7** | **5,724.2** |
| 17 | **Process and Restructuring Costs** | | | | | | | | | | | | | | |
| 18 | Debt Service / Adequate Protection | 3.3 | - | - | - | - | 34.0 | - | - | - | 30.7 | - | - | - | 68.0 |
| 19 | Legal | - | - | - | - | - | 30.0 | - | - | - | 30.0 | - | - | - | 60.0 |
| 20 | Financial Advisor / CRO | - | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | - | 137.5 |
| 21 | UCC Professional Fees | - | - | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | - | - | 22.5 |
| 22 | Patient Care Ombudsman | - | - | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | - | - | 22.5 |
| 23 | US Trustee | - | - | - | - | - | - | 0.4 | - | - | - | - | - | - | 0.4 |
| 24 | **Total Process and Restructuring Costs** | **3.3** | **12.5** | **17.5** | **17.5** | **17.5** | **81.5** | **17.9** | **17.5** | **17.5** | **78.2** | **17.5** | **12.5** | **-** | **310.9** |
| 25 | **Total Cash Outflows after Restructuring Disbursements** | **108.3** | **862.8** | **368.1** | **692.9** | **379.0** | **723.5** | **564.4** | **595.4** | **379.0** | **600.7** | **465.9** | **237.4** | **57.7** | **6,035.1** |
| 26 | **Cash Generated / (Needed)** | **65.7** | **(545.9)** | **111.9** | **(267.9)** | **(154.0)** | **21.5** | **(284.4)** | **(170.4)** | **46.0** | **(375.7)** | **(185.9)** | **187.6** | **367.3** | **(1,184.2)** |
| 27 | Beginning Book Cash Balance | 1,005.4 | 1,071.1 | 525.2 | 637.1 | 369.2 | 215.2 | 236.7 | (47.7) | (218.1) | (172.1) | (547.8) | (733.7) | (546.1) | 1,005.4 |
| 28 | Cash Generated / (Needed) | 65.7 | (545.9) | 111.9 | (267.9) | (154.0) | 21.5 | (284.4) | (170.4) | 46.0 | (375.7) | (185.9) | 187.6 | 367.3 | (1,184.2) |
| 29 | **Ending Book Cash Balance** | **1,071.1** | **525.2** | **637.1** | **369.2** | **215.2** | **236.7** | **(47.7)** | **(218.1)** | **(172.1)** | **(547.8)** | **(733.7)** | **(546.1)** | **(178.8)** | **(178.8)** |