**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **QHC FACILITIES, LLC** | ) | Case No. 21-01643-als11 |
| | ) | Affiliated Cases: 21-01644-21-01653 |
| Debtor. | ) | |
| | ) | U.S. TRUSTEE'S OBJECTION TO |
| **And Affiliated Cases** | ) | DEBTORS' MOTION FOR USE OF |
| | ) | CASH COLLATERAL |

The Acting United States Trustee, through the undersigned Trial Attorney, files this Objection to Debtor, QHC Facilities, LLC, and Affiliate Cases[1] (collectively "Debtors"), motion authorizing Debtors to use of cash collateral and provide adequate protection to Lincoln Savings Bank ("Lincoln")(the "Motion") (doc. 12) pursuant to a 13-week budget. In support of his objection, the UST states as follows:

1. On December 29, 2021, Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code.

2. No committee of creditors has been formed.

3. This Court approved interim use of cash collateral on January 4, 2022 and deferred final approval of cash collateral to a hearing on January 27, 2022.

4. The Motion designates Lincoln as Debtors' senior secured creditor in the aggregate amount of $9,292,663.90. Conversely, the Motion does not provide for any valuation of collateral. Debtors have further not filed schedules and statements in any case.

5. Accordingly, as a general matter, the UST's objects to the adequate protection relief

---

[1] QHC Management, LLC 21-01644; QHC Mitchellville, LLC 21-01645; QHC Winterset North, LLC 21-01646; QHC Madison Square, LLC 21-01647; QHC Fort Dodge Villa, LLC 21-01648; QHC Crestridge, LLC 21-01649; QHC Crestview Acres, Inc. 21-01650; QHC Humboldt North, LLC 21-01651; QHC Humboldt South, LLC 21-01652; QHC Villa Cottages, LLC 21-01653.

proposed as it is impossible to (1) evaluate the status of Lincoln as oversecured or undersecured; and, (2) determine the necessity and extent of Lincoln's entitlement to adequate protection.

6. At paragraph 8(a), the motion grants Lincoln a "validly perfected first priority lien on and security interest in the Debtors' post-petition cash collateral which primes all existing valid, perfected and superior liens in the Prepetition Collateral…"

   a. Parties in interest cannot determine the appropriateness of such protection without a review of Debtors' schedules and statements, including the identity of all secured and other creditors.

   b. This provision should not be approved until all parties in interest may examine all schedules and statements and have an opportunity to object.

7. At paragraph 8(f) and (g), it appears that in any event, Debtors will be obligated to pay to Lincoln a lump sum $100,000 payment in addition to post-petition monthly interest only payments at the rate of 4.25%. The payment is triggered either by a "Disposition Event" (sale of substantially all of Debtors' assets), or a whole host of what are defined as a "Termination Event" if not cured within two days of such event.

8. Debtors provide no basis for such relief, especially where Lincoln appears to be already substantially protected. On its face, the payment could be interpreted as a substitute or assurance for the payment of Lincoln's attorney fees. Such relief contradicts the specific parameters of the entitled fees and costs afforded secured creditors under section 506. The Motion is based on a 13-week budget. Lincoln clearly reserves the right to seek additional protection depending on the posture of the case at the expiration of the 13-week budget.

9. The UST objects to the proposed Carve-Out as defined in paragraph 8(b) as insufficient under the circumstances of the case, particularly with respect to the appointed patient care

ombudsman ("PCO"). It is readily apparent that Debtors are approaching administrative insolvency in a matter of weeks. Unless an intended purchaser of Debtors' assets is secured under the same timeline, the life of these cases is doubtful. At the same time, it will be necessary for the statutorily appointed PCO to fulfill her obligations, including visiting the locations, evaluation, and reporting on the various facilities located throughout Iowa. Debtors should commit to a retainer sufficient to cover PCO Goodman's initial costs to visit and evaluate the facilities and an overall larger carve-out to pay fees incurred to meet her reporting requirements to the Court.

10. At paragraph 12, Debtors propose to waive their right to "surcharge" Lincoln's prepetition collateral under section 506(c). The right to surcharge should not be waived unless and until all costs of administering these chapter 11 estates has been adequately provided for. The elimination of the right to surcharge increases the risk that the costs of administration of this chapter 11 case will be borne by unsecured creditors, including administrative claimants. *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*, 57 F.3d 321, 325 (3d Cir. 1995)("[Section] 506(c) is designed to prevent a windfall to the secured creditor … The rule understandably shifts to the secured party … the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate…"). The Eighth Circuit holds that "an agreement by a debtor and secured creditor to prohibit the payment of § 506(c) administrative expenses from the secured creditors' collateral would operate as a windfall to the secured creditor at the expense of administrative claimants. We therefore conclude that such a provision is unenforceable." *Hartford Underwriters Ins. Co. v. Magna Bank N.A. (In re Hen House Interstate, Inc.)*, 150 F.3d 868, 871 (8th Cir. 1998), *rev'd on other grounds, Hartford Underwriters Ins. Co. v. Magna Bank, N.A. In*

*re Hen House Interstate, Inc.*), 177 F.3d 719 (8th Cir. 1999)(en banc), *aff'd Hartford Underwriters Ins. Co v. Union Planters Bank*, 530 U.S. 1 (2000).

11. At paragraph 14, Debtors grant Lincoln with a lien on the proceeds of all of Debtors' claims and causes of action under (i) sections 502(d), 506(c), 544, 545, 547, 548, 550, and 553; (ii) under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statute or common law; and (iii) any commercial tort claims (collectively, the "Avoidance Actions"). Based on the information obtained by the UST, the proceeds of an intended sale of Debtors' assets will not be sufficient to afford a distribution to general unsecured creditors. Thus, to allow Lincoln to solely benefit from the Avoidance Actions would result in a bankruptcy case(es) that benefits largely two parties, Debtors and the bank, which is inconsistent with the inherent purpose of reorganization under the Bankruptcy Code.

12. Courts have consistently held that Avoidance Actions are uniquely for the benefit of general creditors of a chapter 11 estate, not secured creditors, and are rarely encumbered in favor of secured lenders. *In re Tribune Co.,* 464 B.R. 126, 171 (Bankr. D. Del. 2011)(noting "that case law permits all unsecured creditors to benefit from avoidance action recoveries"). The intent behind avoidance powers and a debtor's power to bring causes of actions is to allow the debtor-in-possession to gain recoveries for the benefit of all unsecured creditors. *See Buncher Co., v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. Partn. IV,* 229 F. 3d 245, 250 (3d Cir. 2000); *In re Cybergenics Corp.*, 226 F. 3d 237, 244 (2d Cir. 2000)(stating that "the debtor in possession is similarly endowed to bring [avoidance] claims on behalf of, and for the benefit of, all creditor"); *In re Sweetwater,* 55 B.R. 724, 735 (D. Utah 1985)(avoiding powers are meant to benefit creditors generally and promot equitable distribution among all creditors); see also

4

*Official Comm. Of Unsecured Creditors v. Goold Elecs. Corp.*, 1993 U.S. Dist. LEXIS 14318, at *12 (N.D. Ill Sept. 22, 1993)(vacating financing order "to the extent that the order assigns to the bank a security interest in the debtor's preference actions").

13. The UST suggests that Debtor should adequately address and incorporate resolutions to the UST's objections in any proposed Final Order. The UST will endeavor to communicate with Debtors and Lincoln to achieve consensual terms and resolve the UST's concerns.

14. Because the UST has not had an opportunity to review Debtors' schedules and statements, and absent a more thorough assessment of Debtors' assets, the UST reserves all of his rights in to further raise objection to the request for cash collateral and in connection with entry of any Final Order.

**James L. Snyder**,
Acting United States Trustee
Region 12

By: /s/ L. Ashley Wieck
    **L. Ashley Wieck**
    ID # IS9998256
    Federal Building, Room 793
    210 Walnut Street
    Des Moines, Iowa 50309-2108
    Ph: (515) 323-2269
    Ashley.Wieck@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF's notice of electronic filing dated January 11, 2022.

Parties receiving hand or mailed service:

   N/A

By: /s/Shelly W. Fellner
**Shelly W. Fellner**
Legal Clerk
United States Trustee's Office
