## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: | Case No. 21-01643-als11 |
| | Affiliated Cases: 21-01644 thru 21-01653 |
| **QHC FACILITIES, LLC.,** | |
| | Chapter 11 |
| Debtor and Debtor in Possession. | |
| | Hon. Anita L. Shodeen |
| 8350 Hickman Road Suite 15 | |
| Clive, IA 50325 | **DEBTORS' PRELIMINARY OBJECTION TO UST'S MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE** |
| EIN: 26-2923180 | |
| | |
| **AND AFFILIATED CASES** | Date: January 13, 2021 |
| | Time: 10:30 a.m. |
| | Preliminary Zoom Hearing |

**COMES NOW** QHC Facilities, LLC, and its affiliated debtors and debtors in possession[1] (collectively, the "Debtors" or "QHC"), the Debtors and Debtors in Possession herein, by and through their proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq. and Krystal R. Mikkilineni, Esq., of the law firm Bradshaw, Fowler, Proctor & Fairgrave, P.C., and respectfully submit this Preliminary Objection to the United States Trustee's ("UST") Motion for Appointment of a Chapter 11 Trustee (the "Motion") and in support thereof would show this Court as follows:

1. The Debtors filed for Chapter 11 bankruptcy protection on December 29, 2021 (the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No committee has been appointed in these cases.

---

[1] QHC Management, LLC, 21-01644; QHC Mitchellville, LLC, 21-01645; QHC Winterset North, LLC, 21-01646; QHC Madison Square, LLC, 21-01647; QHC Fort Dodge Villa, LLC, 21-01648; QHC Crestridge, LLC, 21-01649; QHC Crestview Acres, Inc., 21-01650; QHC Humboldt North, LLC, 21-01651; QHC Humboldt South, LLC, 21-01652; QHC Villa Cottages, LLC, 21-01653.

2. On December 30, 2021, Debtors requested that the Court enter an order directing the Debtors' chapter 11 cases be jointly administered and consolidated.

3. On January 11, 2022, the UST filed the Motion based on the information and belief that the Debtors' principal and CEO, Nancy Voyna, has been hospitalized and is currently incapacitated.

4. While it is true that Ms. Voyna has unfortunately been hospitalized and is currently unable to manage the Debtors, the UST's statements that there is no longer a "debtor-in-possession" or anyone that may assume her role are completely inaccurate. Ms. Voyna is only currently incapacitated and is making strides in her recovery. Further, Ms. Voyna has executed a durable power of attorney for management of property and personal affairs (the "Voyna POA") which designates first her husband, Jerry Voyna, as her attorney-in-fact. Mr. Voyna, however, passed away in June of 2021 and therefore Ms. Voyna's alternate agent is designated as her attorney-in-fact. Her alternate agent is her son, Mark Hidlebaugh. Mr. Hidlebaugh has assumed his role as attorney-in-fact and is carrying out his duties as same, including the management of Ms. Voyna's business affairs and has given authority to file this Objection. As such, QHC very much maintains its debtor-in-possession status and Mr. Hidlebaugh is authorized to continue operating the business in the same capacity as Ms. Voyna.

5. Further, Ms. Voyna may be the CEO of the Debtors, but the Debtors operations are not run solely by Ms. Voyna. The businesses are run on a day-to-day basis by a team of family members and dedicated, long-time employees, administrators, and medical professionals. The absence of the CEO does not mean these operations fall apart and cease to exist. The UST states in its Motion that Ms. Voyna is "the individual who has personal knowledge of the Debtors' business operation and financial condition." There are clearly more individuals that

have personal knowledge of the business operations and financial condition of the businesses. For instance, Mr. Hidlebaugh and his wife, Angie Hidlebaugh, have been engaged in senior management of the Debtors' operations for approximately ten years.

6. The UST relies on Bankruptcy Code section 1104(a)(2) in arguing a Chapter 11 trustee should be appointed, stating it is in the best interests of creditors and other interests of the estate. The Debtors, however, argue it is not in the best interests of the creditors and estates to appoint a Chapter 11 trustee. In fact, it would significantly delay these proceedings and the sale process to appoint a trustee and allow the trustee sufficient time to assess the situation and be brought up to speed regarding the operations and financial condition. As portrayed in other pleadings and in statements made to the Court, the Debtors' cash flow is extremely tight, which is why the Debtors' plan is to file a sale motion and close on a sale of the businesses expeditiously. Appointment of a trustee would only delay this plan and result in added cost to the estates that cannot bear the extra administrative costs and burdens. Appointment of a trustee would then ultimately result in the liquidation of these businesses, which would not generate the best outcome for the creditors and would not be in the best interests of the estates.

7. Further, Debtors' personnel and Gibbins Advisors have engaged in extensive liquidity management, secured lender engagement, vendor engagement, and communications planning prior to the Petition Date and exhaustive vendor engagement and remittance planning following the Petition Date. The filing of this Motion may have even created setbacks and vendor concern that has just begun to stabilize. The Debtors, Gibbins Advisors, and Newmark have also planned and implemented substantial effort to engage purchasers and investors (a group which has broadened materially following the Petition Date) and this Motion has not

helped the Debtors' and Debtors' professionals' collective efforts to tease out value and present a well-constructed sale process and stable path toward a transfer of ownership.

8. The Debtors intend to file contemporaneously herewith motions to employ Gibbins Advisors and Ronald Winters as Chief Restructuring Officer for the Debtors in lieu of continuing to seek employment of Gibbins Advisors as their financial advisors. The Debtors assert employment of Gibbins Advisors as CRO rather than financial advisors would better assist the Debtors in operating, especially now that Ms. Voyna is currently incapacitated. Mr. Hidlebaugh is prepared to go forward in acting as Ms. Voyna's agent, and Gibbins Advisors would then assist Mr. Hidlebaugh with operations of the companies.

9. The Debtors are informed and believe Lincoln Savings Bank is also opposed to the UST's Motion and supports the appointment of Gibbins Advisors as CRO.

10. The Debtors also assert the UST's Motion fails to consider the impact its pending Motion has on the health, safety, and security of the multitude of residents and patients, as this strategy will have an unnecessary negative impact on those parties, and the state.

11. As a duly-qualified senior manager and operating under the duly-granted powers of attorney-in-fact for and on behalf of Ms. Voyna and the Debtors, Mr. Hidlebaugh and the Debtors do not anticipate any delay in the timely filing of the balance of schedules and statements by the end of the day, Wednesday, January 12, 2022 followed by the timely appearance of the Debtors at the UST's initial debtor interview on January 13, 2022. In the event Ms. Voyna has not fully recovered by January 26, 2022 or the next Court hearing scheduled for January 27, 2022, Mr. Hidlebaugh is prepared and willing to appear on Ms. Voyna's behalf.

12. The Debtors further argue against the UST's characterization of Gibbins Advisors' past, present, and future roles in these cases, especially the argument that all "third party" CROs are incapable of taking control of a Chapter 11 process. Gibbins Advisors will not be approving its own payments; it will report to the members or directors in each case, which will review fees and will be subject to Court approval through the fee application process.

13. The appointment of a trustee in a Chapter 11 bankruptcy is "an extraordinary remedy, and it is generally presumed that a debtor will remain in possession following the commencement of a Chapter 11 proceeding." *In re Fitness World W., Inc.*, No. 90-3112-C H, 1991 WL 11731154, at *4 (Bankr. S.D. Iowa Apr. 26, 1991). "A debtor-in-possession is the rule and not the exception in a Chapter 11 case" and there "is a strong presumption that a reorganization debtor should be permitted to continue management of the estate." *Id.*

14. Indeed, these ideas have almost universal support. *See In re Bayou Grp.*, LLC, 564 F.3d 541, 546 (2d Cir. 2009) ("'[T]he standard for § 1104 appointment is very high.'" (citation omitted)); *see id.* at 546–47 (quoting Collier on Bankruptcy, ¶ 1104.02[2][a] for the proposition that appointment of a Trustee in a Chapter 11 case is an "extraordinary" remedy reserved for "extraordinary cases"); *In re Smart World Techs.*, LLC, 423 F.3d 166, 174 n.10 (2d Cir. 2005) ("In a chapter 11 case, such as this one, a trustee is not normally appointed."); *see id.* at 176 (noting the "standard for § 1104 appointment is very high"); *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) ("'It is settled that appointment of a trustee should be the exception, rather than the rule.' In the usual chapter 11 proceeding, the debtor remains in possession throughout reorganization because 'current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate.'" (citations omitted)); *see id.* ("The strong presumption [against appointment of a Trustee]

also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization."); *In re Fraidin*, 43 F.3d 1466 (4th Cir. 1994) ("Since the Bankruptcy Code favors allowing a debtor in possession to continue managing its business operations, the appointment of a trustee in a Chapter 11 case is an extraordinary remedy; it 'is the exception rather than the rule.'" (citation omitted)); *In re Gen. Oil Distribs., Inc.*, 42 B.R. 402, 408 (Bankr. E.D.N.Y. 1984) ("The appointment of a trustee under 11 U.S.C. § 1104 is an extraordinary remedy which should not be made lightly."); *id.* at 409 ("There is a strong presumption that a debtor remains in possession absent a showing of need.").

15.  Debtors are in a better position to manage their affairs and estate than a trustee as the appointment of a trustee would burden the bankruptcy estates with the substantial trustee and professional fees which would be incurred. *See In re Gen. Oil Distributors, Inc.*, 42 B.R. at 410 (finding that the appointment of a Trustee would cause too substantial of a financial burden on the Estate and was unwarranted where, even though there were findings that showed "numerous instances of conduct approaching gross mismanagement, violations of fiduciary obligations, incompetence and dishonesty," it was clear that management was currently operating successfully and there was a lack of evidence of "post-petition misconduct").

16.  The UST asserts, based on a citation to one case out of Virginia, that the death or incapacitation of a debtor is sufficient cause for the appointment of a trustee. *In re Martin*, 26 Bankr. 39, 40 (Bankr. D.W.Va. 1982). The UST fails to mention, however, that *Martin* dealt with an *individual* Chapter 11 debtor who had passed away, rather than a *business* Chapter 11 debtor which has a CEO who is currently incapacitated. That is a major difference. In *Martin*, the individual debtor passed away; here, the Debtors (the businesses) have not passed away or

become incapacitated.  Rather, the Debtors' CEO has become incapacitated.  The Debtors and their operations still continue despite the CEO's current incapacitation.

17. Finally, the appointment of a trustee is neither in the best interests of the Debtors nor the best interests of the creditors as it will not facilitate resolution of the above-captioned bankruptcy proceedings and will instead prove to be another costly payment to the Debtors. *In re Bayou Grp., LLC*, 564 F.3d at 546–47 (denying appointment of Trustee where movants failed to indicate how replacing current management would facilitate resolution of bankruptcy proceedings and holding that "[i]n determining whether a § 1104 appointment is warranted or in the best interests of creditors, the bankruptcy court must bear in mind that the appointment of a trustee 'may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code,' by incurring the expenditure of 'substantial administrative expenses' caused by further delay in the bankruptcy proceedings" (citation omitted)).

WHEREFORE, the Debtors request that the Court deny the UST's Motion.

Dated:  January 12, 2022

/s/    Jeffrey D. Goetz
Jeffrey D. Goetz, Esq., AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

Proposed General Reorganization Counsel for the Debtors

CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/    Barbara Warner