# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **QHC Facilities, LLC et al.,[1]** | ) Case No. 21-01643-als11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hon. Anita L. Shodeen |
| | ) |
| | Date entered on docket: *March 17, 2022* |

## ORDER AUTHORIZING: (I) THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

THIS MATTER came before the Court on the *Motion for Orders (I)(A) Approving Bidding Procedures; (B) Scheduling the Time, Date, and Form of Notice for the Auction and Sale Hearing; and (C) Approving Break-Up Fee; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, & Encumbrances; and (B) Authorizing Assumption and Assignment or Rejection of Leases and Executory Contracts* (Docket No. 117) (the "Sale Motion") filed by QHC Facilities, LLC, and the above referenced affiliates ("QHC" or the "Debtors") seeking authority, among other things, to sell substantially all assets of the Debtors; the Court having entered its *Order (A) Approving the Bidding Procedures in Connection with the Auction and Sale of Assets and Scheduling an Auction and Sale Hearing; (B) Approving Assumption and Assignment Procedures; (C) Approving the Break-Up Fee; and (D) Granting Other Related Relief* (Docket No. 164) (the "Bidding Procedures Order"); Cedar Healthgroup, LLC ("Cedar" or the "Buyer") having submitted the highest and best offer for the Acquired Assets (defined below) pursuant to the

---

[1] The Jointly Administered Debtors in this proceeding are *In re QHC Management, LLC* (Case No. 21-01644-als11), *In re QHC Mitchellville, LLC* (Case No. 21-01645-als11), *In re QHC Winterset North, LLC* (Case No. 21-01646-als11), *In re QHC Madison Square, LLC* (Case No. 21-01647-als11), *In re QHC Fort Dodge Villa, LLC* (Case No. 21-01648-als11), *In re Crestridge, Inc.* (Case No. 21-01649-als11), *In re Crestview Acres, Inc.* (Case No. 21-01650-als11), *In re QHC Humboldt North, LLC* (Case No. 21-01651-als11), *In re QHC Humboldt South, LLC* (Case No. 21-01652-als11) and *In re QHC Villa Cottages, LLC* (Case No. 21-01653-als11).

procedures established in the Bidding Procedures Order (the "Bidding Procedures" and the process

for implementing the Bidding Procedures, the "Bidding Process") and having been designated the

Successful Bidder at the Sale Hearing (defined below); the Court having reviewed: (a) the Sale

Motion, (b) the Asset Purchase Agreement, dated as of March 7, 2022 between QHC Facilities,

LLC, QHC Management, LLC, QHC Fort Dodge Villa, LLC, QHC Madison Square, LLC, QHC

Villa Cottages, LLC, QHC Mitchellville, LLC, QHC Humboldt North, LLC, QHC Humboldt

South, LLC, QHC Winterset North, LLC, Crestview Acres, Inc., Crestridge, Inc. and Cedar (as it

may be amended or supplemented and together with all attachments thereto, the "Purchase

Agreement"), a copy of which is attached hereto as **Exhibit A**.; (c) all other papers filed with the

Court relating thereto, and (d) the objections to the sale and the cure objections of certain contract

parties, if any (collectively, the "Objections") and; the Court having considered the statements of

counsel with respect to the relief granted herein and the evidence adduced at a hearing conducted

on March 11, 2022 (the "Sale Hearing"); and the Court having determined that the legal and factual

bases set forth in the Sale Motion and the other papers filed by the Debtors and at the Sale Hearing

establish just cause to grant the relief granted herein;[2]

       **NOW, THEREFORE,** it is hereby found and determined that:

**Jurisdiction, Venue and Final Order**

       A.    This Court has jurisdiction and authority to hear and determine the request to

approve the Sale and grant the other relief set forth herein pursuant to 28 U.S.C. §§ 1334 and

157(b)(2)(A), (N) and (O). Venue of these cases in this District is proper under 28 U.S.C. §§ 1408

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Purchase Agreement, as applicable.

and 1409. The statutory predicates for the relief sought herein are sections 105, 363 and 365 of the

Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and all other applicable law.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

### **Acquired Assets**

C.    The Buyer has executed the Purchase Agreement. The Purchase Agreement

provides for, among other things, Buyer to purchase certain assets of the Debtors which are set

forth in the Purchase Agreement (the "Acquired Assets").

### **Notice of Sale Hearing, Purchase Agreement, and Cure Costs**

D.    As evidenced by the certificates of service filed with the Court, proper, timely,

adequate and sufficient notice of the Sale Motion, the relief granted herein and the Sale Hearing

has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code;

Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014; and the Bidding Procedures Order.

Such notice was good and sufficient, and appropriate under the circumstances. No other or further

notice of the Sale Motion, the relief granted herein, the Sale Hearing or the entry of this Sale Order

is necessary or shall be required. To the extent that the amount of notice given to any party entitled

to notice is less than the number of days required under the applicable rules, the notice actually

given to any such party is hereby deemed to be sufficient and adequate by the Court, and the notice

to any and all such parties is hereby ordered to be shortened to the notice actually given.

E.    The Debtors filed the notice of assumption and assignment with respect to the Sale

as evidenced by the *Notice re: Cure Amounts to Assume and Assign Certain Executory Contracts

and Unexpired Leases in Connection with Sale of Assets* (Docket No. 180) (as amended or

supplemented, the "Cure Notice") identifying (among other things) the costs required to cure

defaults under the Assumed Contracts (as defined herein) pursuant to section 365 of the Bankruptcy Code (the "Cure Costs"). The Debtors served the Cure Notice, and each supplement thereto, on each of the non-Debtor counterparties to the Assumed Contracts as set forth in the filed certificates of service. The service of the Cure Notice was sufficient under the circumstances and no further notice needs to be provided in respect of the assumption and assignment of the Assumed Contracts or the proposed Cure Costs related thereto, if any. Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to the assignment and assumption of the Assumed Contracts and the associated Cure Costs.

### Marketing Process

F.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors and their professionals, agents and other representatives have complied in all respects with the Bidding Procedures Order. Under the circumstances, the Debtors and their professionals, agents and other representatives have adequately and appropriately marketed the Acquired Assets. The Bidding Procedures were duly noticed and conducted in a diligent, non-collusive, fair and good faith manner, and the Bidding Procedures afforded a full, fair and reasonable opportunity for any person or entity to qualify as a bidder, participate in the Bidding Process and to make a higher or otherwise better offer to purchase the Acquired Assets. The Debtors and their professionals, agents and other representatives: (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets; and (ii) faithfully executed their duties in considering all offers and bids throughout the Bidding Process and in determining that Buyer is the Successful Bidder for the Acquired Assets.

G.     Buyer is the Successful Bidder for the Acquired Assets, with a Purchase Price of $12.1 million.

H.     The Debtors selected Blue Diamond Equities LLC ("Blue Diamond") as the Backup Bidder.

### Highest and Best Offer; Business Judgment

I.     The Debtors demonstrated a sufficient basis to enter into the Purchase Agreement, sell the Acquired Assets on the terms outlined therein and assume and assign the Assumed Contracts under sections 363 and 365 of the Bankruptcy Code, and all such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors and their estates.

J.     The Cedar offer, upon the terms and conditions set forth in the Purchase Agreement, and the various related agreements contemplated thereby necessary to effect the transfer of the Acquired Assets to Cedar (collectively, the "Related Agreements"), including the form and the total consideration to be realized by the Debtors pursuant to the Purchase Agreement: (i) are the highest and best offer received by the Debtors after marketing, including through the Bidding Procedures; (ii) are fair and reasonable; (iii) are in the best interest of the Debtors, their creditors and their estates; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets.

K.     The Debtors' determination that the Sale set forth in the Purchase Agreement constitutes the highest and best offer for the Acquired Assets is a valid and sound exercise of their business judgment. The Debtors have determined that the sale of the Acquired Assets under the terms set forth in the Purchase Agreement and the Related Agreements represent the best opportunity for the Debtors' estates to realize the greatest value for the Acquired Assets and will

5

provide a greater recovery for the Debtors' creditors, including through a reduction of claims against the Debtors' estates, than would be provided by any other practical or available alternative.

### Good Faith, Arms' Length Sale

L.      Buyer is a purchaser in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Acquired Assets. The Purchase Agreement and the Related Agreements were negotiated and entered into in good faith, based upon arm's length negotiations and without collusion or fraud of any kind.

M.      Buyer and its professionals, agents and other representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement, and the Sale and the Purchase Agreement comply with the Bidding Procedures Order and all other applicable orders of this Court.

N.      Buyer is not considered an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Insider transactions are subjected to higher scrutiny. Debtors met their burden of proof in demonstrating good faith and an inherent fairness in the Bidding Process and the selection of Cedar as the Successful Bidder.

O.      Buyer and the Debtors have not engaged in any conduct that would cause or permit the Sale, the Purchase Agreement or any Related Agreements to be avoided pursuant to section 363(n) of the Bankruptcy Code.

P.      The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  The Sale does not constitute a *sub rosa* plan.

## Corporate Authority

Q.      The Debtors are not a "foreign corporation" as that term is defined in section 1445 of the Internal Revenue Code.

R.      The Acquired Assets are property of the Debtors' estates under section 541 of the Bankruptcy Code. The Sale of the Acquired Assets by the Debtors have been duly and validly authorized by all necessary action and, upon entry of this Sale Order, the Debtors will have full power and authority to execute the Purchase Agreement, the Related Agreements and all other documents contemplated thereby. No consents or approvals other than those provided for in the Purchase Agreement and the Related Agreements are required for the Debtors to consummate the Sale described in the Purchase Agreement.

## Satisfaction of Section 363(f)

S.      The Debtors may sell the Acquired Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever (collectively, the "Liens and Claims")[3] except as otherwise provided in the Purchase Agreement, because, in each case, one or more of the standards set forth sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those non-Debtor parties with interests in the Debtors' assets who did not object, or

---

[3] For the avoidance of doubt, the term "Liens and Claims" as used herein includes, without limitation, any mortgage, lien (as such term is defined in 11 U.S.C. § 101(37), including any mechanic's, materialman's, statutory, cash collateral or carve out lien or any other consensual or non-consensual lien), security interest, charge, hypothecation, deed of trust, pledge, right of use, first offer or refusal, easement, servitude, restrictive covenant, lease, sublease, covenant, right of way, option, restriction (including any restriction on transfer or on the use, voting, receipt of income or other rights or exercise of any attributes of ownership), conditional sale or other title retention agreements, interest, encroachment, encumbrance of any kind, debt, liability, obligation or claim (as that term is defined in 11 U.S.C. § 101(5)), and including any claim against Buyer and/or any of the assets or properties of the Buyer (including the Acquired Assets) based on a theory of successor liability, alter-ego or any similar theory of liability, and all costs and expenses relating thereto. Further, without limiting the foregoing, the term "Liens and Claims" as used herein includes any debts, liabilities, obligations or claims whether they are direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

who withdrew their objections, to the Sale Motion with respect to the relief granted herein are deemed to have consented to the Sale free and clear of Liens and Claims pursuant to section 363(f)(2) of the Bankruptcy Code. Accordingly, except as expressly provided in the Purchase Agreement with respect to the Assumed Liabilities (as defined in the Purchase Agreement), all persons or entities having Liens or Claims against or in any of the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens and Claims against the Acquired Assets, the Buyer, or any of their assets, property, successors or assigns.

### No Successorship

T.      Cedar is not a continuation of the Debtors. In particular:

    i.   Buyer is not holding itself out to the public as a continuation of the Debtors.

    ii.  There is no substantial continuity between Buyer and the Debtors, and there is no continuity of enterprise between Cedar and the Debtors.

    iii. Buyer: (i) is not, as a result of any action taken in connection with the purchase of the Acquired Assets or otherwise, successor to the Debtors; and (ii) has not, de facto or otherwise, merged or consolidated with or into the Debtors.

    iv.  The Sale does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors.

    v.   The Sale is not being entered into fraudulently.

    vi.  Cedar is a bona fide purchaser in good faith of the Acquired Assets.

## Assumption and Assignment of the Assumed Contracts

U.      The agreements and leases identified in the Cure Notice (collectively, the "Assumed Contracts") are either: (i) executory contracts or unexpired leases subject to section 365 of the Bankruptcy Code or (ii) non-executory contracts that may be assigned to the Buyer according to their terms and applicable law. Except where the facts or context require otherwise, the term Assumed Contracts herein refers to executory contracts or unexpired leases subject to section 365 of the Bankruptcy Code.

V.      The Debtors may assume each of the Assumed Contracts, and assign each of them to Cedar pursuant to sections 363 and 365 of the Bankruptcy Code and this Sale Order, notwithstanding any anti-assignment clause or other similar provision in any Assumed Contract, as provided by section 365(f) of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts is in the best interest of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. Buyer and the Debtors have provided good and sufficient evidence of adequate assurance of future performance by the Buyer under the Assumed Contracts consistent with sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

W.      The Cure Costs, if any, set forth in Exhibit A to the Cure Notice, and any supplement thereto, with respect to each Assumed Contract are the sole amounts necessary under sections 365(b)(l)(A), 365(b)(l)(B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Assumed Contracts. Buyer shall pay the Cure Cost for each of its respective Assumed Contracts in accordance with the Purchase Agreement, except the Buyer is not assuming any Cure Cost related to any provider agreement

(i.e., Medicare, Medicaid, or any HMOs), which amount shall either be satisfied by Seller simultaneously with the Closing or credited at Closing against the Purchase Price.

### Findings of Fact/Conclusions of Law

X.      All findings of fact and conclusions of law announced by the Court at the Sale Hearing are incorporated herein.

### Time is of the Essence

Y.      Time is of the essence in consummating the Sale. To maximize the value of the Acquired Assets and minimize the costs incurred by the Debtors' estates, it is essential that the sale occurs promptly, and within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The Sale Motion is **GRANTED** with respect to the approval of the Sale, as further described herein.

2.      All objections to the relief granted herein, whether filed, stated on the record in Court or otherwise, are **OVERRULED** on the merits and with prejudice to the extent they have not been withdrawn, waived or resolved.

3.      All objections to the relief granted herein that were not timely filed are hereby forever **BARRED**.

## <u>Approval of the Purchase Agreement</u>

4.      The Purchase Agreement and the Related Agreements, and all of the terms and conditions thereof, are hereby approved in all respects.

5.      The sale of the Acquired Assets to the Buyer, as set forth in the Purchase Agreement, is approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code, and the Debtors and the Buyer, and their respective affiliates, officers, directors, employees, professionals, agents and other representatives are authorized to immediately take any and all such actions as are necessary or appropriate to consummate and implement the Purchase Agreement and the Related Agreements.

6.      The Purchase Agreement provides for each Debtor Facility to enter into a Management Agreement within five (5) days of entry of this Sale Order to transfer management and operations of the Facilities, subject to applicable law.  The Debtors are hereby authorized to enter into such Management Agreements, in the form attached hereto as **<u>Exhibit B</u>**.

7.      The Debtors and their agents and other representatives, as applicable, are authorized to execute and deliver the Purchase Agreement and the Related Agreements, together with all additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and effectuate the provisions of this Sale Order and the transactions approved hereby, all without further order of the Court. Additionally, pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized and empowered to fully assume, perform under, consummate and implement the Purchase Agreement and the Related Agreements, together with such additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may reasonably be requested by the

Buyer for the purpose of selling, assigning, transferring, granting, conveying, conferring and delivering to the Buyer, or transferring to the Buyer's possession, any or all of the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations, and make effective the transactions contemplated by, the Purchase Agreement, all without further order of this Court.

## Backup Bid

8.      Except as modified at the Auction to increase the purchase price to $12.0 million and the assumption of the paid time off obligation without deduction from the purchase price, the Backup Bid asset purchase agreement, attached hereto as Exhibit "B", and agreements related thereto, and all terms and conditions thereof, satisfy the requirements under Bankruptcy Code section 363(f).

9.      Pursuant to the Bidding Procedures, the Backup Bidder shall be required to keep its Backup Bid open and irrevocable until the earlier of (i) the Closing of the Sale Transaction on the Accepted Bid; or (ii) thirty (30) days after the Sale Hearing.

## Transfer of the Acquired Assets

10.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement, and, upon the Closing under the Purchase Agreement, such transfers shall: (a) be valid, legal, binding and effective transfers; (b) vest the Buyer with all right, title and interest of the Debtors in and to the Acquired Assets; and (c) be free and clear of all Liens and Claims, whether arising prior to or subsequent to the commencement of the Debtor's chapter 11 case, and whether imposed by agreement, law, equity or otherwise, with all such Liens and Claims attaching to the proceeds of the sale in the same validity, enforceability, priority, force and

effect, if any, as they attached to Acquired Assets before the sale, subject to the rights, claims, defenses and objections (if any) of all interested parties with respect to such Liens and Claims, including the rights of the Debtors' estates under chapter 5 of the Bankruptcy Code. For the avoidance of doubt, the transfer of the Acquired Assets shall not be free and clear of Liens and Claims associated with the Assumed Liabilities and Assumed Contracts, including but not limited to the Medicare provider agreements if and when they are assumed and assigned to the Buyer, after the payment to the United States of the cure amounts and the provision of adequate assurance of future performance to the government in accordance with section 365 of the Bankruptcy Code and Medicare Law.  Immediately upon the Debtors' receipt of proceeds of the Sale, the applicable portion of the proceeds of the Sale shall be distributed by the Debtors to Lincoln Savings Bank to satisfy in full the Debtors' outstanding obligations under the *Consent Order (I) Authorizing Debtors to Obtain Debtors in Possession Financing, and (II) Providing Adequate Protection, Superpriority Claims* (Docket No. 172) (the "DIP Order") and the DIP Credit Agreement (as defined in the DIP Order).  The distribution of funds to Lincoln Savings Bank from the proceeds of the sale to satisfy the financing provided to the Debtors under the DIP Order shall be without prejudice as to any other party asserting the allocation of the funds distributed to Lincoln Savings Bank to any specific Debtor estate or asset sold.

11.    All persons or entities holding Liens and Claims with respect to the Acquired Assets are hereby barred from asserting such Liens and Claims against the Buyer, its successors or assigns, or the Acquired Assets.

12.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with this Sale Order and the terms of the Purchase Agreement.

## Assumption and Assignment of the Assumed Contracts

13.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the assumption and assignment to the Buyer of the Assumed Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. To the extent that any Assumed Contract is not an executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, such Assumed Contract is hereby assigned to the Buyer at the Closing in accordance with their terms and applicable law. Any Contract Objection (as defined in the Cure Notice) filed by the United States shall be noticed for separate hearing and assumption and assignment of any Medicare Provider Agreements with the United States shall be determined after the United States' Contract Objection deadline, subject to being postponed by written agreement of the parties and Bankruptcy Court approval while the parties continue to negotiate a settlement agreement and possible debt compromise.

14.     The Debtors are hereby authorized to execute and deliver to the Buyer such agreements, documents or other instruments as may facilitate or document the sale, assignment, transfer, conveyance and deliver the Assumed Contracts to it.

15.     Upon the Closing: (a) the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer; and (b) pursuant to section 365(k) of the Bankruptcy Code and other applicable law, the Debtors shall be relieved from any further liability with respect to the Assumed Contract after such assignment to and assumption by the Buyer.

Notwithstanding any provision of this Sale Order, the change of ownership rules and procedures as established in Medicare Law remain in effect, including but not limited to, the change of ownership administrative process and the imposition of successor liability

16.     All defaults or other obligations of the Debtors under any Assumed Contract arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment of the Cure Costs with respect to each Assumed Contract.

17.     Except for the right to enforce the obligation to pay the Cure Costs, each non-debtor party to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors, the Buyer, or the property of any of them, any default existing as of the date of the entry of this Sale Order, whether declared or undeclared or known or unknown; or, against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertible against the Debtors.

18.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Buyer's rights to enforce every term and condition of the Assumed Contract.

19.     The payment of the Cure Costs (if any) shall: (a) effect a cure of all defaults existing thereunder as of the Closing Date; (b) compensate for any actual pecuniary loss to such non-debtor party resulting from such defaults; (c) constitute a satisfaction in full of all amounts accrued as of the Closing Date; and (d) together with the assumption and purchase of the Assumed Contracts by the Buyer, constitute adequate assurance of future performance thereof. After the payment of the relevant Cure Costs, neither the Debtors nor the Buyer shall have any

further obligations to the non-debtor parties to the Assumed Contracts other than the obligations of the Buyer that accrue under the Assumed Contracts on or after the Closing Date.

20.     Upon the Closing Date and the payment of the relevant Cure Costs, the Buyer shall be deemed to be substituted for the relevant Debtors as a party to the applicable Assumed Contracts, and the Debtors shall be relieved from all liability on such Assumed Contracts arising on or after the Closing Date.

21.     The Buyer has provided adequate assurance of future performance under each Assumed Contract within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## Additional Provisions

22.     At Closing, the Debtors shall pay the Stalking Horse Bidder its Break-Up Fee from the sale proceeds and the Stalking Horse Bidder shall have administrative expense priority under Bankruptcy Code section 503(b)(1)(a), in each case, in accordance with the terms and conditions of the Bidding Procedures Order.

23.     At Closing, the proceeds from the Sale (the "Sale Proceeds") shall be transferred into an escrow account held by the Debtors, with valid Liens attaching to such Sale Proceeds, and will be distributed in accordance with a plan of liquidation or further order of this Court. The Debtor and Committee of Unsecured Creditors (the "Committee") shall move forward with drafting and proposing confirmation of a Plan of Liquidation, which shall provide for the appointment of a liquidating trustee or a plan administrator.

24.     The Debtors shall file complete and accurate Schedules and Statements of Financial Affair by no later than April 30, 2022.

25.    The Debtors shall file all required monthly operating reports and all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall have been paid or will be paid as of the date of Closing.  For the avoidance of doubt, the Management Agreement shall not alter the treatment of disbursements for the purpose of determining United States Trustee quarterly fees and the Debtors' obligation to pay United States Trustee quarterly fees.

26.    From and after the Closing for a period of three (3) years following the Closing Date (or, if later, the closing of the Debtors' bankruptcy cases), the Buyer will provide the Debtors, their advisors, and representatives of the Debtors' estate with reasonable access, during normal business hours, upon reasonable advance notice, to the books and records, including work papers, schedules, memoranda, tax returns, tax schedules, tax rulings, and other documents (for the purpose of examining and copying) relating to the Acquired Assets or the Assumed Liabilities with respect to periods or occurrences prior to the Closing Date and reasonable access, during normal business hours, and upon reasonable advance notice, to employees, officers, advisors, accountants, offices and properties (including for the purpose of better understanding such books and records) of Buyer, in each case, for purposes relating to the Debtors' bankruptcy cases, the wind-down of the operations of Debtors and their estates, actions to which Debtors are a party, insurance claims, tax payments, returns or audits, the functions of any trusts established under any plans of liquidation or any other successors of the Debtors (including a plan administrator or a liquidating trustee, pursuant to any plans of liquidation). Unless otherwise consented to in writing by the Debtors following the Debtors' consultation with (i) Lincoln Savings Bank, (ii) the Webb Family Trust, and (iii) the Official Committee of Unsecured Creditors (collectively, the "Consultation Parties"), Buyer will not, for a period of three (3) years following the Closing Date (or, if later, the closing of the Debtors' bankruptcy cases), destroy, alter or otherwise dispose of

any of the material books and records (other than additional copies thereof) without first offering

to surrender to the Debtors such books and records or any portion thereof that Buyer may intend

to destroy, alter or dispose of.

27.     The automatic stay under section 362 of the Bankruptcy Code is vacated and

modified to the extent necessary to implement the terms and provisions of the Purchase

Agreement and the Related Agreements and the provisions of this Sale Order.

28.     The Buyer is a party in interest and shall be entitled to be heard on all issues in

this chapter 11 case related to the Purchase Agreement, the transactions contemplated thereby,

and the implementation or enforcement of this Sale Order.

29.     Nothing contained in any plan of reorganization or liquidation, or order of any

type or kind entered in this chapter 11 case, any subsequent chapter 7 or chapter 11 cases of the

Debtors, or any related proceeding subsequent to entry of this Sale Order, shall conflict with or

derogate from the terms of this Sale Order or the Purchase Agreement; provided, however, that

for the avoidance of doubt, nothing in this Sale Order shall modify, alter, impair, or otherwise

affect any of the provisions of the DIP Order or DIP Credit Agreement or the rights or remedies

of Lincoln Savings Bank under the DIP Order or DIP Credit Agreement except with respect to

the Acquired Assets.

30.     Each and every federal, state and local government agency or department and

all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders

of deeds and other similar persons are hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Purchase Agreement the Related Agreements and this Sale Order.

31.     If any person or entity that has filed financing statements, mortgages, liens, *lis pendens*, mechanics' or materialmen's liens, notices of levy or other documents evidencing Liens and Claims against the Acquired Assets (other than with respect to the Assumed Liabilities, as defined in the  Purchase Agreement) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims that the person or entity has with respect to such Acquired Assets, such Liens and Claims shall be deemed released by this Sale Order, and the Debtors, or the Buyer after the closing, are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to such Acquired Assets. Without limiting the foregoing, a certified copy of this Sale Order may be filed with the appropriate Clerk's office and/or recorded with the applicable Recorder's office as evidence to cancel the Liens and Claims of record, except the Assumed Liabilities, as defined in the Purchase Agreement.

32.     All persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date.

33.     The Buyer is deemed to be a *bona fide* purchaser in good faith of the Acquired Assets and, thus, are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

34.     The Buyer has given substantial consideration under the Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Buyer. Upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors, except as to any Medicare

Provider Agreements in compliance with Medicare Law, (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors.

35.     Except to the extent the Buyer otherwise specifically agreed in the Purchase Agreement or as set forth in this Sale Order, the Buyer shall not have any liability, responsibility or obligation for any claims, liabilities or other obligations of the Debtors or their estates, including without limitation, any claims, liabilities or other obligations related to the Acquired Assets prior to Closing Date.  Notwithstanding the foregoing, nothing in this Sale Order nor in any other document shall prohibit or impair CMS's authority consistent with applicable law  to determine whether or not a change of ownership occurs with respect to any Medicare provider agreement, as well as the right to enforce any successor liability, if any, that may arise as a result of any such determination.

36.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory power or liability to a governmental unit that any entity would be subject to as the owner or operator of property after the Closing.

37.     To the maximum extent permitted by applicable law, and in accordance with the Purchase Agreement, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval, excluding any and all Medicare Provider Agreements, (collectively, the "Licenses") of the Debtors with respect to the Acquired Assets. To the extent the Buyer cannot operate under any Licenses in accordance with the previous sentence, the Licenses shall be in effect to the maximum extent permitted by applicable law while the Buyer, with assistance from the Debtors, works promptly and

diligently to apply for and secure all necessary government approvals for the new issuance of

Licenses to Buyer. The Debtors shall maintain the Licenses in good standing to the fullest extent

allowed by applicable law for the Buyer's benefit until equivalent new Licenses are issued to

the Buyer.  Notwithstanding the foregoing, unless and until the Medicare Provider Agreements

are assumed and assigned to the Buyer pursuant to a Bankruptcy Court order and in accord with

Bankruptcy Code section 365, the Buyer shall not be authorized to use the Debtors' Medicare

Provider Agreements in any manner.

38.    Bankruptcy Code section 525 shall apply to the full extent applicable.

39.    The terms and provisions of the  Purchase Agreement, together with the terms

and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the

benefit of, the Debtors, the Debtors' estates and the Debtors' creditors, the Buyer and its

affiliates, successors and assigns and any affected third parties and persons or entities asserting

a claim against or interest in or lien on the Debtors' estates or any of the Acquired Assets to be

sold to the Buyer pursuant to the  Purchase Agreement. The provisions of this Sale Order and

any actions taken pursuant hereto shall survive any order of this Court dismissing or converting

these cases.

40.    The Purchase Agreement or the Related Agreements and any other related

agreements, documents or other instruments may be modified, amended or supplemented

by the Buyer and Debtors, following consultation with the Consultation Parties, on a non-

material basis in accordance with the terms thereof without further order of the Court. The

provisions of this Sale Order are non-severable and mutually dependent.

41.    The failure specifically to reference any particular provision of the Purchase

Agreement in this Sale Order shall not diminish or impair the efficacy of such provision. In the

event of a conflict between the term of this Sale Order and the Purchase Agreement or any

Related Agreement, this Sale Order shall govern.

42.    The Debtors and the Buyer are hereby authorized to take all actions reasonably

necessary to effectuate the terms of the Purchase Agreement and the Related Agreements, the

transactions contemplated thereunder and the provisions of this Sale Order, subject to

compliance with the Medicare Law, all without the necessity of any further order of the

Bankruptcy Court.

43.    The provisions of Bankruptcy Rules 6004(h) and 6006(d) shall not apply to stay

consummation of the sale of the Acquired Assets to the Buyer under the Purchase Agreement,

as contemplated in the Sale Motion and approved by this Sale Order, and the Debtors and the

Buyer is hereby authorized to consummate the transactions contemplated and approved herein

immediately upon entry of this Sale Order.

44.    This Court retains exclusive jurisdiction to (a) enforce and implement the terms

and provisions of the Purchase Agreement, the Related Agreements, all amendments thereto,

any waivers thereunder and any other agreements executed in connection therewith; (b) resolve

any disputes arising under or related to the Purchase Agreement and transactions contemplated

thereby; and (c) interpret, implement and enforce the provisions of this Sale Order.

Notwithstanding the foregoing, nothing in this Sale Order or the Purchase Agreement divests

any tribunal of any jurisdiction it may have under police or regulatory law, or divests the

Secretary of HHS of jurisdiction with respect to claims arising under or intertwined with the

Medicare Law.

45.    Notwithstanding the terms of the Sale Order, Purchase Agreement or any other

document, the term "Liens and Claims" as used herein does not include claims held by the United

States' Department of Health and Human Services ("HHS") through its components, the Centers for Medicare and Medicaid Services ("CMS") and the Health Resources and Services Administration ("HRSA"), to the extent that federal law requires successor liability as to its claims and its claims are not settled, compromised, or otherwise resolved. The Medicare Provider Agreements are executory contracts which the Debtors may subsequently move to assume and assign or reject subject to section 365 of the Bankruptcy Code after the deadline for the United States to respond to the Debtors' Amended Cure Notice.  Debtors' assumption and assignment of any Medicare Provider Agreement will be conditioned upon the United States first receiving any outstanding cure amounts and adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code and Medicare law.  Furthermore, the term "Assumed Contracts" under the Sale Order and Purchase Agreement shall not include the Medicare Provider Agreements, unless and until they are assumed and assigned to the Buyer pursuant to Bankruptcy Code section 365 and a Bankruptcy Court order. The change of ownership rules and procedures as established in Medicare Law remain in effect, including but not limited to, the change of ownership administrative process and the imposition of successor liability. Nothing in the Sale Order, Purchase Agreement, or any related document shall (i) alter, impair, effect, or limit, CMS's ability to determine overpayments pursuant to Medicare Law; (ii) affect the United States' rights of setoff and recoupment; nor (iii) relieve Debtors of their obligation to return Provider Relief Funds and American Rescue Plan funds to the extent required by federal law.

46.    To give the parties additional time to continue their settlement negotiations, the deadline for the United States to object to assumption and assignment of the Medicare Provider Agreements, including the Amended Cure Notice, is hereby extended through April 7, 2022.

**IT IS SO ORDERED.**

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

APPROVED FOR ENTRY BY:

/s/ *Krystal R. Mikkilineni*
Jeffrey D. Goetz, Esq., AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

General Reorganization Counsel for the Debtors and Debtors in Possession,

/s/ *Robert C. Gainer*
Robert C. Gainer AT0000305
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, IA 50266
Tel: 515-223-6600
Fax: 515-223-6787
Email: rgainer@cutlerfirm.com

- and -

/s/ *Francis J. Lawall*
Francis J. Lawall, Esq. (admitted pro hac vice)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-44-81
Fax: (215) 689-4693
Francis.lawall@troutman.com

Counsel for the Committee of Unsecured Creditors

/s/ *Jeffrey W. Courter*
Jeffrey W. Courter, Esq., AT
Roy R. Leaf, Esq., AT
Nyemaster Goode, PC
700 Walnut, Suite 1600
Des Moines, IA  50309
(515) 283-8048
(515) 283-3108 FAX
jwc@nyemaster.com

Counsel for Lincoln Savings Bank


/s/ *Terry L. Gibson*
Terry L. Gibson, Esq., AT0002903
WANDRO & ASSOCIATES, P.C.
2501 Grand Avenue
Des Moines, IA 50309
Tel: (515)-281-1475
Fax: (515)-281-1474
tgibson@2501grand.com

Counsel for Webb Family Trust


NO OBJECTION:

/s/ *Ashley Wieck*
L. Ashley Wieck, Esq.
ID # IS9998256
Federal Building, Room 793
210 Walnut Street
Des Moines, Iowa 50309-2108
Tel: (515) 323-2269
Ashley.Wieck@usdoj.gov

Counsel for the United States Trustee


/s/ *Seth B. Shaprio*
Ruth A. Harvey, Esq.
Rodney A. Morris, Esq.
Seth B. Shapiro, Esq.
(D.C. Bar No. 433988)
Marissa D. Embola

(MI Bar No. P82568)
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Tel:  (202) 616-2316
marissa.embola@usdoj.gov
seth.shapiro@usdoj.gov

Counsel for the United States on behalf of
the U.S. Department of Health and Human
Services


/s/  *Krissa Mason*
Krissa Mason, Esq., AT0011928
Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, IA 50319
(515) 721-3917
krissa.mason@ag.iowa.gov

Counsel for the Iowa Department of Human Services


/s/ *Anagha Dixit*
Anagha Dixit, Esq., AT0013042
Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, IA 50319
(515) 281-5478
anagha.dixit@ag.iowa.gov

Counsel for Iowa Department of Inspections and Appeals

/s/ *Susan N. Goodman*
Susan N. Goodman, RN JD
Pivot Health Law, LLC
P.O. Box 69734
Oro Valley, AZ 85737
(520) 744-7061
sgoodman@pivothealthaz.com

Patient Care Ombudsman


Parties receiving this Order from the Clerk of Court:
Everyone in this Chapter Case