IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>QHC FACILITIES, LLC, *et al.*,<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 21-01643<br><br>**REPLY** |

COMES NOW Cedar Healthgroup, LLC ("Cedar Health"), and hereby replies[1] to the Debtors' Resistance (Dkt #364) and the Committee's and Lincoln's Savings Bank's Joinders (Dkts ##365 and 367) against Cedar Health's Motion for Summary Judgment (Dkt #322) ("Motion").

## I.    INTRODUCTION

The Debtors asked the Court for "authority to retain Cedar Healthgroup's deposit in accordance with Section 6.02(b) of the Cedar Healthgroup APA," Emergency Motion for Hearing, Dkt. 221 at ¶ 20, but now curiously obfuscate that legal question with a barrage of disputed "facts." More curiously, the Debtors use (at best) partial "facts" to attempt to create a dispute and then attempt to seek cross summary judgment. In neither circumstance can the Debtors have it both ways. Nor, legally, should they.

Cedar Health put the terms of the APA before the Court for decision. Those terms unambiguously spell out the conditions and circumstances that must be satisfied for the Debtors to retain Cedar Health's deposit *viz.* only a termination pursuant to APA Section 6.01(f) can work a Section 6.02(b) deposit forfeiture. And that termination may arise only

---

[1] This Reply only addresses arguments and issues raised in the Debtors' and the Committee's Resistance and the Joinder against Cedar Health's Motion for Summary Judgment. *Cf. Blaes v. Johnson & Johnson,* 858 F.2d 508, 516 (8th Cir. 2017) (in general, the purpose of a reply brief is to respond to facts and arguments raised in an appellee's brief). Cedar Health of course specifically preserves and reserves and does not waive and does not concede any and all arguments it raised in its Motion for Summary Judgment and accompanying Brief.

1

after the Debtors provided written notice and an opportunity for Cedar Health to cure, and only then for breaches incapable of being cured by the closing date. These circumstances and a Section 6.01(f) termination did not occur, so Cedar Health is entitled to a summary disposition.

For all the "facts" the Debtors allege, none of them creates a genuine dispute on what are very limited, material facts. The Debtors and those that join them do not dispute the existence of the APA or its terms. With respect to Cedar Health's deposit, those terms gave the Debtors a choice in March 2022: (i) follow Section 6.01(f) and give Cedar Health the rights all parties agreed to before working a forfeiture or (ii) something else. The Debtors chose something else.

No matter how the Debtors attempt to detract from their failings or characterize Cedar Heath, their facts and theories fall short of creating a genuine controversy. What notice the Debtors point to cannot be squared with the APA—there is no genuine issue that what they did deviated from the APA. The Debtors likewise fail to genuinely dispute that regardless Cedar Health cured—the dates and paper are plain. Who terminated the APA, how termination occurred, and the underlying basis or motivations are only material to deposit forfeiture if they occurred within the confines of Section 6.02(b) and 6.01(f). No facts that the Debtors bring forth elicit this controversy.

If the Debtors wanted deposit forfeiture the answer was simple, follow the APA. That they failed to do so means Cedar Heath is entitled to summary judgment.

II.   **DEBTORS' INCOMPLETE "FACTS" DID NOT FULLY DISCLOSE THE ENTIRE RECORD**

The Debtors' Resistance alleged and referred to certain "facts." The Debtors did not, however, completely and accurately cite to the entirety of record. Specifically, the following table demonstrates some of the Debtors' incompleteness and mis-statements:

| **Debtors' Factual Assertions** | **Undisputed Facts** |
|---|---|
| "[N]o way to know whether the stalking horse would have bid[.]" Debtors' Resistance at ¶35. | Stalking horse simply and absolutely refused to bid at auction. *See* Motion Exhibit B, March 4, 2022 auction transcript at p. 27. |
| Debtors' broker e-mailed to Cedar Health circa March 3 a draft of the Management Agreement. Debtors' Resistance at ¶17. | The Management Agreement tendered circa March 3, 2022 was revised and modified and new provisions added, **after** the March 4 auction. *Compare* Motion Exhibit CA (initial March 3 version did not contain ¶¶24 *et seq.*) *with* Exhibit CH (March 16 e-mail from Debtors' attorney, with Management Agreement that contained new ¶¶24 *et seq.*). |
| Cedar Health was deemed to be "Qualified Bidder." Debtors' Resistance at ¶23. | Blue Diamond (via Attorney Unger) objected and contended Cedar Health "did not follow the procedure." *See* Motion Exhibit B, March 4 auction transcript at p. 37. Committee (supposedly with Debtors' consent) "determined" that Cedar Health's bid "was appropriate," because the Debtors were authorized to "adopt rules . . . at any time." *See id.* at p. 38. In other words, Cedar Health was deemed qualified because the Debtors waived *all* pre-qualification requirements (or else Cedar Health could not have been deemed qualified). |
| March 10, 2022 declaration from Mark Tress was drafted by Debtors "upon the suggestion of Cedar's counsel[.]" Debtors' Resistance at ¶40. | The March 10, 2022 declaration was suggested to be filed so as to "beef up the facts relative to the good faith purchaser findings," *see* Debtors' Exhibit 38 (e-mail from Cedar Health's attorney 3/9/22 at 7:47 p.m.), *i.e.* the sole purpose of the March 10 affidavit was to supply a record for the Court to make a §363(m) and (n) finding, *and for no other purpose*. |

3

| | |
|---|---|
| Cedar Health requested due diligent issues such as "Medicare and Medicaid numbers . . . ." Debtors Resistance at ¶52. | Initial version of the Management Agreement circulated before March 4 auction did not have ¶¶24 *et seq.* New ¶¶24 *et seq.* added language concerning Medicare, etc. *Compare* Motion Exhibit CA (initial version did not contain ¶¶24 *et seq.*) *with* CH (Management Agreement containing ¶¶24 *et seq.*). Cedar Health's request was therefore at least partly prompted by the Debtors' post-auction modifications to the Management Agreement. |
| Debtors needed "financial support[.]" *See* Debtors' Resistance at ¶55. | *See* Cedar Health's Statement of Undisputed Facts ¶X at p. 4, *viz.* Debtors in late March were holding $604,000 cash and $903,000 escrow. In other words, the Debtors chose to keep the cash and the escrow for other purposes than protecting the health and safety of the residents. |

The Debtors' mis-characterizations of "facts" bear on Cedar Health's arguments, as follows:

### III.    LEGAL ARGUMENTS

#### A.    "Willful breach" should not be found and could not be found on summary judgment and is irrelevant to retaining the deposit.

The Debtors asserted Cedar Health committed "willful breach." The Debtors failed, however, to cite to caselaw and decisions such as *Optimal Interiors LLC v. Hon Co.*, 774 F. Supp. 2d 993, 1005 (S.D. Iowa 2011), which hold whether a breach was material such that a "principal purpose" of the contract was frustrated is a question of fact. *Accord Dindinger v. Allsteel Inc.*, 2015 WL 11143144, at *13 (S.D. Iowa June 8, 2015) (Rose, J.) (willfulness is a fact issue that precludes summary judgment); *In re Wales*, No. 01-06262-RJH-7, 2004 WL 5851364, at *8 (Bankr. S.D. Iowa June 23, 2004) (Hill, J.) (summary judgment motion denied on issue of willfulness); *see also Kurn v. Palmer College of Chiropractic*, 757 N.W.2d 651, 661 (Iowa 2008) (whether party willfully breached contract is a fact question that precludes summary judgment). Even if (but of course not conceding) there was any "willful breach"

4

such that the "principal purpose" of the APA was frustrated, the issue of "willful breach" is factual and cannot be granted via summary judgment. The Debtors' argument concerning "willful breach" should therefore be completely ignored, in the context of Cedar Health's Summary Judgment Motion. And in any event the only issue now before the Court is whether the Debtors may retain the deposit. Any "willful breach" issue should not be addressed at this stage. *Accord* Committee's Joinder (Dkt #365) at p.2 n.3.

>   **B.** *Larken* **is inapposite because** *Larken* **involved a relationship of trust and the APA does not involve a relationship of trust.**

The Debtors cited to the Iowa Supreme Court's decision in *Larken, Inc. v. Larken Iowa City Limited Partnership*, 589 N.W.2d 700 (Iowa 1998) and urged there was a breach that somehow justified non-compliance with the APA §6.01(f) notice requirement. The Debtors failed to mention, however, the contractual relationship involving *Larken* was a "long term management agreement," *id.* at 700, and the Iowa Supreme Court concluded that if a breach "violates the relationship of ___trust___ necessary underlying ___such___ agreements," *id.* at 704 (emphasis added), then the contractual notice provision may be ignored. The issue at bar does <u>not</u> implicate a management agreement that involves a trust relationship. Rather, the APA is merely a contract for purchase between a buyer and a seller. In that context, this Court has specifically held parties to a buy-sell contract "did not agree to any trust relationship." *In re Diwon, L.L.C.*, No. 12-00424-als11, 2013 WL 8351981, at *6 (Bankr. S.D. Iowa July 16, 2013) (Shodeen, J.). Simply put, the *Larken* decision applies mainly when a contract involves a "relationship with trust and confidence." *Larken*, 589 N.W.2d at 704. The APA in the case at bar is merely a buy-sell contract, and does not involve any "trust and confidence." Indeed the Debtors could not point to and did not point to any provision in the APA that remotely sounds in "trust and confidence."

    **C.**    **Cancellation or rescission might be a remedy for willful breach, not termination.**

To the extent (but of course not conceding) somehow a "willful breach" has been shown, the end result is cancellation of the APA, *i.e.* the remedy for breach that goes to the essence of a contract is cancellation or rescission. *Ashkel v. Aurora Medical Group, Inc.*, 841 N.W.2d 297, 302 n.4 (Wis. Ct. App. 2013) (Neubauer, J., concurring) (citing to and construing *Larken,* and explaining that if a breach went to the essence of a contract, the remedy is cancellation or rescission of the contract). If (but not conceding) there was "willful breach" such that the APA can be canceled and completely ignored, then by definition the APA is cancelled *in toto* and the deposit forfeiture provision contained in APA ¶6.02(b)(c) is void and unenforceable. Put another way, if (but not conceding) there was "willful breach" such that the APA notice provision can be ignored, then §6.02(b) and (c) allowing deposit retention must likewise be ignored. Since APA §6.02(b) and (c) is the only contractual provision that allows retention, if §6.02(b) and (c) is canceled then there is no contractual basis for the Debtors to retain the deposit. As such, Cedar Health's Summary Judgment Motion must be granted and the deposit must be returned.

    **D.**    **The Debtors' had well over a million dollars on hand to care for residents.**

The Debtors argue the health and safety of the residents is of primary concern. Of course Cedar Health too is cognizant of such a concern. However, in the context of this dispute, Cedar Health was merely seeking ten days so that it could obtain information or data for its regulatory counsel. To the extent (but of course not conceding) somehow the ten-day request caused financial difficulty with respect to the Debtors' caring for residents, the Debtors could have spent part or all of the more than $1,500,000 it had on hand to care for the residents. *See* Cedar Health's Statement of Undisputed Facts ¶X at p. 4 (Debtors

holding $604,000 cash and $903,000 escrow). To the extent the escrow was for professional fees, the existence of that escrow confirms the Debtors' deliberate choice to pay professional fees and <u>not</u> spend money on caring for the health and safety of the residents. Put another way, the Debtors' "we have no choice but to terminate Cedar Health's contract" is unavailing, in light of the $1,500,000 of cash held by the Debtors as of late-March 2022, *viz.* the Debtors could have chosen to—but deliberately chose not to—spend the $1,500,000 cash it had on hand to care for the residents during the 10-day window sought by Cedar Health. Instead, the Debtors chose to keep the $1,500,000 for its own purposes (other than caring for the residents) and to cancel the APA. This Court should not accept the Debtors' "care of the residents" contention.

     **E.**    **The Court's March 24 Order did not conclude there was a termination.**

The Debtors also assert this Court has already ruled "breach caused the termination of the APA." *See* Debtors' Brief at PDF p. 20.[2] But this Court's March 24, 2022 Order (Dkt #224) at p.3 ¶3 specifically held:

> The determination of whether the contract has been terminated under the conditions of the APA is reserved for further hearing . . . .

The Debtors' assertion at PDF p. 20 of their Brief is simply incorrect and mis-states this Court's Order.

     **F.**    **The Debtors must commence an Adversary Proceeding to obtain their requested relief.**

This Court during the April 6, 2022 Zoom hearing specifically ordered if the Debtors wish to assert any further damages against Cedar Health beyond the deposit, an Adversary Proceeding must be commenced. Indeed, Cedar Health's Summary Judgment Motion

---

[2] The Debtors' Brief did not have any page numbers. Hence the reference to the PDF page number.

7

relates only to Cedar Health's claim for return of the deposit. This Court's approach in directing the Debtors to file an Adversary Proceeding to seek further damages is consistent with caselaw such as *Berryhill v. Hatt*, 428 N.W.2d 647, 656 (Iowa 1988), to the effect that "a breach of contract alone, even if intentional, will not form the basis of punitive damages. Rather, the breach must also constitute an intentional tort, or other wrongful conduct, committed with legal malice, that is with willful or reckless disregard for another's rights." *Id.* (citation omitted). Even if (but not conceding) there was any "willful breach," that issue must be addressed not at this summary judgment stage dealing with Cedar Health's request for return of the deposit; rather, the Debtors must commence a separate Adversary Proceeding to address any other damage claims, *ala Berryhill*.

### G. Cedar Health's absence of fraud was established by the Sale Order.

To the extent the Debtors argue Cedar Health somehow committed fraud, the argument is foreclosed by this Court's March 17, 2022 Sale Order (Dkt #217), at ¶T(v), *viz.* this Court specifically found "[t]he Sale is not being entered into fraudulently." This Court's March 17, 2022 Order is final, is the law of the case, and forecloses the Debtors' argument alleging or hinting at fraud by Cedar Health.

### H. Due diligence is limited to financial, not regulatory, matters.

Neither the Debtors nor the Committee cited to any caselaw to refute Cedar Health's argument and supporting caselaw (*see* Cedar Health's Brief at p.7) that the term "due diligence" in the APA is limited to *financial* matters and does **not** encompass regulatory information or data. The silence is deafening. The conclusion is inescapable that Cedar Health did *not* breach APA §2.10, which deals with "due diligence." That is, when Cedar Health asked for more time to procure and examine regulatory information and data, Cedar

Health was *not* seeking more financial due diligence information. Cedar Health therefore did not breach §2.10.

### IV. BANK'S JOINDER

The Bank is not a party to the APA between the Debtors and Cedar Health. In its Joinder (which was filed *after* the due date for resistances, *i.e.* the Bank's Joinder was untimely filed), the Bank referred to other transactions in which Cedar Health was involved. Of course, when considering a summary judgment motion, this Court may only consider materials that are "admissible or usable at trial." *E.g., Higareda v. Tyson Foods, Inc.*, No. 3:19-cv-00075-RGE-SBJ, 2020 WL 6930453, at *2 (S.D. Iowa Oct. 6, 2020) (Ebinger, J.); *accord* F.R.B.P. 7056(e) (materials opposing summary judgment "shall set forth such facts as would be admissible in evidence"). How Cedar Health behaved or performed in other contexts is totally irrelevant and inadmissible in the context of the purely contractual dispute concerning the deposit. The Bank's Joinder should therefore be completely stricken and ignored. For the record, however, should the Court determine that it would consider this late and irrelevant joinder by the Bank, Cedar Health states that a full and complete review of the record in such other cases will show that the Bank's assertions are incomplete and misleading and would require a full review of the record in such cases.

### V. COMMITTEE'S JOINDER

The Committee urged "anticipatory repudiation." But the Committee cited to no Iowa caselaw. *See* Committee's Joinder (Dkt #365), at pp. 2-3 (citing to Missouri, New York, and Delaware precedents). The APA is governed by Iowa law. *See* APA §13.03. In any event the issue of deposit is governed by one (and only one) provision of the APA, *viz.* §6.02(b) and (c) (permitting retention of deposit if, and only if, termination after an APA

§6.01(f) breach occurred). Whether there was "anticipatory repudiation" under Missouri, New York,[3] or Delaware law is wholly irrelevant. And even if somehow Missouri, New York, or Delaware "anticipatory repudiation" caselaw applied,[4] the Committee's follow-up argument that Cedar Health "lost the ability to retract its repudiation" is based entirely on this Court's March 24, 2022 Order. The March 24, 2022 Order was entered, however, within approximately 24 hours after the filing of the Debtors' March 23, 2022 "Emergency Motion," and no witness testified and no affidavit was supplied at the March 24, 2022 hearing. Surely no one can credibly argue a party did not "retract its repudiation" at a *non*-evidentiary hearing held within 24 hours of the filing of a Motion. And in fact on April 1, 2022 Cedar Health timely (within the 10-day APA §6.10(f) cure period) signed and tendered to the Debtors fully executed Management Agreements.

      Cedar Health respectfully prays this Court grant Cedar Health's Summary Judgment Motion and deny the Debtors' Cross-Motion.

---

[3] Interpreting New York law and expounding on the relationship between the concepts of termination and repudiation, the Second Circuit explained that "terminations" do not include "repudiations." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 91 (2d Cir. 2015). A "termination" occurs "when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach, or pursuant to a right accorded to a party to a contract when the other party breaches a duty that arises under the contract," whereas a repudiation is "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for which renders the obligor unable or apparently unable to perform without such a breach." (quoting U.C.C. § 2–106(3), Black's Law Dictionary 1522 (10th ed.2014), and Restatement (Second) of Contracts § 250). The Committee therefore conflates legal categories in arguing that a repudiation (which never happened) constitutes a termination of the APA.

[4] Iowa law on "anticipatory breach" was summarized in caselaw such as *Lane v. Crescent Beach Lodge*, 199 N.W.2d 78, 82-83 (Iowa 1972), and "requires a definite and unequivocal repudiation of the contract. . . . It is not established 'by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform.'") (citations omitted). Nothing in the Committee's Joinder remotely satisfies these standards.

/s/ Eric W. Lam
Eric W. Lam, AT0004416
Abram V. Carls, AT0011818
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
elam@simmonsperrine.com
acarls@spmblaw.com
ATTORNEYS FOR CEDAR HEALTHGROUP, LLC

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this 14th day of July, 2022, the foregoing document was electronically filed with the Clerk of Court using the Southern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

/s/ Kelly Carmichael

11