**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-01643-als11 |
| **QHC FACILITIES,** *et a*l[1] | ) | Jointly Administered |
| | ) | |
| Debtors and Debtors in Possession | ) | Hon. Anita L. Shodeen |
| | ) | |
| | ) | **DEBTORS' MOTION FOR ORDER** |
| | ) | **APPROVING SALE FREE AND CLEAR OF** |
| | ) | **LIENS, CLAIMS, INTERESTS, AND** |
| | ) | **ENCUMBRANCES** |
| | ) | |
| | ) | No Hearing Set. |
| | ) | |

**COMES NOW**, QHC Facilities, LLC and its affiliates in the above referenced cases (the "Debtors" or "QHC"), Debtors and Debtors-in-Possession herein, by and through their undersigned counsel, and respectfully file this Motion for Order Approving the Sale Free and Clear of Liens, Claims, Interests and Encumbrances (this "Sale Motion") and would show this Honorable Court as follows:

1. On December 29, 2021 (the "Petition Date"), Debtors filed their respective voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (Docket No. 1).

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

---

[1] The Jointly Administered Debtors in this proceeding are *In re QHC Management, LLC* (Case No. 21-01644-als11), *In re QHC Mitchellville, LLC* (Case No. 21-01645-als11), *In re QHC Winterset North, LLC* (Case No. 21-01646-als11), *In re QHC Madison Square, LLC* (Case No. 21-01647-als11), *In re QHC Fort Dodge Villa, LLC* (Case No. 21-01648-als11), *In re QHC Crestridge, LLC* (Case No. 21-01649-als11), *In re QHC Crestview Acres Inc.* (Case No. 21-01650-als11), *In re QHC Humboldt North, LLC* (Case No. 21-01651-als11), *In re QHC Humboldt South, LLC* (Case No. 21-01652-als11) and *In re QHC Villa Cottages, LLC* (Case No. 21-01653-als11).

3.      No trustee or examiner has been appointed in this case.

4.      On January 17, 2022, the Office of the United States Trustee (the "UST") filed a Notice of Appointment of Committee of Unsecured Creditors (the "Committee") (Docket No. 55).

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein include Bankruptcy Code sections 105(a), 363, and Rules 2002, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

6.      Debtors made the business decision to pursue an orderly sale of substantially all of their assets as a going concern to maximize value for the estates and their creditors.

7.      On September 23, 2022, the Debtors filed their Motion for Order Approving the Sale Free and Clear of Liens, Claims Interests and Encumbrances (Docket No. 434) (the "Blue Care Sale Motion") and the Amendment to the Debtors' Motion for Order Approving the Sale Free and Clear of Liens, Claims, Interests, & Encumbrances (Docket No. 454) (the "Blue Care Sale Motion Amendment"), seeking authority, among other things, to sell certain assets of the Debtors and to assume and assign certain executory contracts and unexpired leases to Blue Care Homes, LLC ("Blue Care" or the "Buyer").

8.      The Court entered an order approving the sale to Blue Care on November 2, 2022. (Docket No. 497) (the "Blue Care Sale Order").

9.      Prior to the Petition Date, Lincoln Savings Bank ("LSB") and Debtors entered into a number of promissory notes and lending agreements secured by, among other things, first

mortgages on certain of the Debtors' facilities and security interests in certain of the Debtors' collateral.

10. LSB filed five proofs of claim in the Debtors' respective Bankruptcy Cases as follows: Claim No. 17 in QHC Facilities, LLC; Claim No. 18 in QHC Humboldt North, LLC; Claim No. 18 in QHC Humboldt South, LLC; Claim No. 9 in QHC Madison Square, LLC; and Claim No. 15 in Crestridge, Inc ("LSB's POCs").

11. Prior to the Petition date, in May 2011, the Kenneth Webb Family Trust (the "Webb Trust") and Debtors entered into an asset purchase agreement in which the Debtors acquired several of the nursing homes owned by the Debtors.

12. On February 15, 2022, Webb Trust filed proof of claim No. 6 in the QHC Facilities, LLC bankruptcy case (the "Webb Trust POC"). The Webb Trust POC asserts a secured claim, as of December 29, 2021, against all Debtors in the amount of $20,697,613.81.

13. The Debtors, LSB, Webb Trust, and the Committee (the "Parties") have engaged in good faith negotiations and reached agreement to resolve the issues related to the Webb Trust Claims and LSB Claims as set forth in a settlement agreement (the "Settlement Agreement").

14. On October 27, 2022, the Debtors filed a Motion for Approval of Settlement of LSB and Webb Trust Claims under Bankruptcy Rule 9019 (Docket No. 486).

15. Not included in the Acquired Assets sold to Blue Care were four closed facilities (the "Discontinued QHC Properties"). The Discontinued QHC Properties include: QHC Humboldt South, LLC dba Humboldt Care Center South, Crestview Acres, Inc. (Marion), Crestview Acres, Inc. dba Sunnycrest Nursing Center, and QHC Mitchellville, LLC dba Mitchell Village Care Center.

16. By this Motion, the Debtors seek authority to sell the Discontinued QHC

Properties at this time (the "Sale") together with all real estate and personal property contained therein on an "as is, where is" basis.

17.  LSB has offered to submit a credit bid consisting of its secured claims and the secured claims of the Webb Trust (as assignee) for the purchase of the Discontinued QHC Properties. Accordingly, the Debtors move to designate as the stalking horse bidder for the Discontinued QHC Properties. Accordingly, LSB is submitting a credit bid for all of the Discontinued QHC Properties in the amount of $2,000,000.00 in the aggregate (the "LSB Stalking Horse Bid").

18.  The LSB Stalking Horse Bid is subject to higher and better offers through a marketing process. LSB has agreed to retain Kevin Crowley at Iowa Realty Commercial, as the real estate broker (the "Real Estate Broker") for the sale of the Discontinued QHC Properties in order to market the Discontinued QHC Properties and solicit higher and better offers.

19.  The Real Estate Broker shall begin marketing for sale the Discontinued QHC Properties. If no higher or better offers are received prior to the hearing set for this Sale Motion, LSB will be deemed the successful bidder.

20.  The Real Estate Broker will market the Discontinued QHC Properties both individually and as a package. In the event that third parties wish to purchase some, but not all, of the Discontinued QHC Properties, in addition to its rights to credit bid for all of the Discontinued QHC Properties together, LSB shall be entitled to credit bid for each Discontinued QHC Property individually.

21.  The Debtors shall consult with LSB regarding any offers received for the Discontinued QHC Properties and LSB reserves its rights to object to any potential sale.

22.  LSB shall not be entitled to any "stalking horse" protections related to the sale of

the Discontinued QHC Properties including, but not limited to, any expense reimbursement or break-up fees.

23. LSB shall pay the reasonable administrative and sale costs associated with this Sale (including the reasonable fees and expenses of the Debtors' professionals and Committee's professionals[2] and, in the event not already paid by LSB, the Debtors and Committee shall be permitted to deduct such fees and expenses from the Net Sale Proceeds[3] to reimburse Debtors and Committee for out-of-pocket expenses including its professionals), as well as the costs to maintain the Discontinued QHC Properties in a commercially reasonable manner until sold.

24. LSB agrees that any and all insurance proceeds arising from insurable incidents which occurred at the Discontinued QHC Properties[4] prior to closing of the Sale will be retained by the Debtors' estates. For the avoidance of doubt, this includes but is not limited to the insurance proceeds associated with Crestview Acres, Inc. (Marion).

**RELIEF REQUESTED**

25. As stated above, Debtors intend to sell the Discontinued QHC Properties and believe an orderly sale of the Discontinued QHC Properties is the best way to maximize the value of the properties for the benefit of creditors, the estates, and other parties in interest.

---

[2] The Committee has agreed to limit the extent of its fee reimbursement claim against LSB arising from the sale of the Discontinued QHC Properties to $5,000.

[3] Net Sale Proceeds shall mean the proceeds received from the sale of the Discontinued QHC Properties after deduction of broker fees, the reasonable administrative fees of the Debtors and Committee for conducting the marketing and sale of the Discontinued QHC Properties, property taxes accrued or otherwise owing and any other reasonable and customary closing costs. The foregoing expenses shall be paid either from the Sale Proceeds or directly by LSB at closing in the event it becomes the buyer of the Discontinued QHC Properties.

[4] In the event a third party buys one or more of the Discontinued QHC Properties, all insurance proceeds arising from insurable incidents which occurred at the Discontinued QHC Properties prior to closing of the Sale will be retained by the Debtors' estates.

I. **Marketing Efforts**

26. In order to market the Discontinued QHC Properties and test the marketplace to ensure the Debtors and the estates are realizing maximum value for the sale of the Discontinued QHC Properties, LSB is hiring a local, well known, and respected real estate broker, Kevin Crowley at Iowa Realty Commercial.

27. The marketing process proposes garnering interest in the Discontinued QHC Properties by having LSB establish a baseline bid (the LSB Stalking Horse Bid) that will serve to inform the market and facilitate the Debtors receiving the highest and best offer for the properties.

II. **Proposed Transaction Is a Sound Exercise of Business Judgment and in the Best Interests of the Estates**

28. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See also* Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction"). This section generally permits a debtor to sell property of the estate outside of the ordinary course of its business where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is proposed in good faith. *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 210 (S.D. Ohio 2008) ("Under the law of this [Sixth] Circuit, the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'") (quoting *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)).

29. Bankruptcy Code section 363 governs the Debtors' ability to sell property of the estates outside of the ordinary course of business. Although this section does not set forth a

standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose. *See In re Lionel Corp.*, 722 F.2d at 1070-71; *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 668 (E.D. Michigan 2012); *In re Dewey & LeBoeuf LLP*, No. 12–12321 (MG), 2012 WL 5386276, at *5 (Bankr. S.D. N.Y. Nov. 1, 2012); *In re Nicole Energy Services, Inc.*, 385 B.R. at 230. The burden of establishing a rational business justification lies with the debtor. *Nicole Energy*, 385 B.R. at 230 (citing *Lionel*, 722 F.2d at 1070-71). However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. *See*, *e.g.*, *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007).

30.     In the instant case, the proposed sale of the Discontinued QHC Properties constitutes a sound exercise of the Debtors' business judgment and has been proposed in good faith. The Debtors believe this Motion and the transactions contemplated thereby are in the best interests of the bankruptcy estates and in the best interests of all other interested parties in this chapter 11 case. An orderly sale of the QHC Discontinued Properties is essential. There are no other viable alternatives for a sale of the Discontinued QHC Properties and the value of the Discontinued QHC Properties could be adversely affected if there is undue delay. The Sale will aid in minimizing the administrative expenses of Debtors' estates.  Further, this Sale is also part of the pathway for resolving all LSB and Webb Trust Claims against the estates and all potential estate claims against LSB and Webb Trust. As such, by providing a route for full and complete satisfaction of LSB and Webb Trust Claims, the Sale proffers more funds for the estates and their creditors and avoids the potential of administrative insolvency for the Debtors and their estates. Therefore, the Debtors believe this Motion and the transactions contemplated thereby are in the

best interests of the bankruptcy estates and in the best interests of all other interested parties in these chapter 11 cases.

31.   The Debtors submit that the factors described above support an expeditious sale of the Discontinued QHC Properties and are consistent with the traditional rationale for authorizing a sale outside of a chapter 11 plan. *See also In re Boston Generating, LLC,* 440 B.R. 302, 321 (S.D.N.Y. 2010); *Lionel*, 722 F.2d at 1070.

### III.   Sale Free and Clear of Liens

32.   Bankruptcy Code section 363(f) authorizes a debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property. This Sale provides for a sale of the Discontinued QHC Properties free and clear of all interests, liens, claims and encumbrances, including but not limited to existing or asserted rights of first refusal, judgment liens, mechanics' liens, personal property liens, and contractual restrictions on transferability or other similar protective rights. Any such interests, liens, claims and encumbrance would attach to the proceeds of the sale of the Discontinued QHC Properties (the "Sale Proceeds") ultimately attributable to the property against or in which such interest, lien, claim or encumbrances is asserted.

33.   Under Bankruptcy Code section 363(f)(2), a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the assets consent.  The Debtors are providing proper notice of this Sale Motion to the United States Trustee, senior and other secured creditors, the Official Committee of Unsecured Creditors, authorities, and all other parties who have filed requests for special notice, thereby giving them the opportunity to object to this Sale Motion. Provided no secured creditors object to this Motion, section 363(f)(2) will be satisfied. *See, e.g.*, *In re Motors Liquidation Co.*, 430 B.R.

65, 72) (in a chapter 11 case, noting that "secured lenders" approved a transaction under section 363(b) of the Bankruptcy Code and related transactions).

34. Under Bankruptcy Code section 363(f)(4), a sale free and clear of all interests, liens, claims and encumbrances is permissible if the interest of any entity is in *bona fide* dispute. Under Bankruptcy Code section 363(f)(5), a sale free and clear of all interests, liens, claims and encumbrances is permissible if any party asserting an interest in the assets could be compelled to accept money satisfaction of such interest in a legal or equitable proceeding. Any sale proposed by the Debtors will satisfy both elements.

## REDUCTION OR ELIMINATION OF 14-DAY STAY

35. Time is of the essence in approving and closing the sale, and any unnecessary delay in closing the sale could result in the collapse of the sale. Accordingly, this Court should waive the 14-day period staying any order to sell or assign property of the estates imposed by Bankruptcy Rules 6004(h) and 6006(d).

## CONCLUSION

36. Based upon the authorities and facts detailed above, the Debtors request the Court approve the sale of the assets to the successful bidder, or if there are no other higher and better offers than LSB's Stalking Horse Bid, to LSB. Such relief is warranted because the Debtors have shown and will further establish by testimonial and documentary evidence at the hearing, that the sale of the Discontinued QHC Facilities is in the best interests of Debtors, their estates, and creditors, and because the decision to sell the Discontinued QHC Properties was reached in the exercise of the Debtors' sound business judgment, after careful deliberation of their consequences and possible alternatives.

**WHEREFORE,** the Debtors respectfully request the Court enter an order approving of

the relief requested within this Motion, and providing such other relief as is just and proper under the circumstances.

Date: November 21, 2022      Respectfully submitted,

/s/ *Tirzah R. Roussell*
Jeffrey D. Goetz, AT0002832
Tirzah R. Roussell, AT0014113
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
roussell.tirzah@bradshawlaw.com

General Reorganization Counsel
for Debtors and Debtors in Possession


Krystal R. Mikkilineni, AT0011814
Dentons Davis Brown
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com

General Reorganization Co-Counsel for
Debtors and Debtors in Possession

### CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/ *Barbara Warner*