# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 21-01643-als11 |
| **QHC FACILITIES,** *et al.*[1] | ) Jointly Administered |
| | ) |
| Debtors and Debtors in Possession | ) Hon. Anita L. Shodeen |
| | ) |
| | ) **JOINT PLAN OF LIQUIDATION BY THE** |
| | ) **DEBTORS AND OFFICIAL COMMITTEE** |
| | ) **OF UNSECURED CREDITORS UNDER** |
| | ) **CHAPTER 11 OF THE BANKRUPTCY** |
| | ) **CODE** |
| | ) |

**Dated: January 9, 2023**

| **FOR THE DEBTORS** | **FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
|---|---|
| **BRADSHAW FOWLER PROCTOR & FAIRGRAVE, P.C.** | **TROUTMAN PEPPER HAMILTON SANDERS LLP** |
| Jeffrey D. Goetz, Esq., AT0002832<br>801 Grand Avenue, Suite 3700<br>Des Moines, IA 50309-8004<br>515/246-5880<br>515/246-5808 FAX<br>goetz.jeffrey@bradshawlaw.com | Francis J. Lawall (admitted *pro hac vice*)<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103<br>francis.lawall@troutman.com |
| -and- | Deborah Kovsky-Apap (admitted *pro hac vice*)<br>4000 Town Center, Suite 1800<br>Southfield, MI 48075<br>deborah.kovsky@troutman.com |
| **DENTONS DAVIS BROWN**<br>Krystal R. Mikkilineni, AT0011814<br>Tirzah R. Roussell, AT0014113<br>The Davis Brown Tower | -and- |

---

[1] The Jointly Administered Debtors in this proceeding are *In re QHC Management, LLC* (Case No. 21-01644-als11), *In re QHC Mitchellville, LLC* (Case No. 21-01645-als11), *In re QHC Winterset North, LLC* (Case No. 21-01646-als11), *In re QHC Madison Square, LLC* (Case No. 21-01647-als11), *In re QHC Fort Dodge Villa, LLC* (Case No. 21-01648-als11), *In re Crestridge, Inc.* (Case No. 21-01649-als11), *In re Crestview Acres, Inc.* (Case No. 21-01650-als11), *In re QHC Humboldt North, LLC* (Case No. 21-01651-als11), *In re QHC Humboldt South, LLC* (Case No. 21-01652-als11) and *In re QHC Villa Cottages, LLC* (Case No. 21-01653-als11).

215 10th Street, Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com
tirzah.roussell@dentons.com


*Counsel to the Debtors*

**CUTLER LAW FIRM**
Robert C. Gainer
1307 50th St.
West Des Moines, IA 50266
Tel: (515) 223-6600
Fax:(515) 223-6787
rgainer@cutlerfirm.com


*Counsel to the Official Committee of
Unsecured Creditors*

# TABLE OF CONTENTS

**ARTICLE 1 DEFINITIONS AND CONSTRUCTION OF TERMS** ......................... 1

**ARTICLE 2 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS** ......................................................... 8

**ARTICLE 3 CLASSIFICATION OF CLAIMS** ............................................ 10

**ARTICLE 4 TREATMENT OF CLAIMS** ................................................. 11

**ARTICLE 5 ACCEPTANCE OR REJECTION OF THE PLAN** ........................... 15

**ARTICLE 6 PROVISIONS GOVERNING DISTRIBUTIONS** .............................. 16

**ARTICLE 7 PROCEDURES FOR RESOLVING AND TREATING DISPUTED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS** .............. 18

**ARTICLE 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............. 19

**ARTICLE 9 CAUSES OF ACTION** ...................................................... 20

**ARTICLE 10 MEANS FOR IMPLEMENTATION OF THE PLAN** ...................... 21

**ARTICLE 11 EFFECT OF CONFIRMATION OF PLAN** ................................. 28

**ARTICLE 12 EFFECTIVENESS OF THE PLAN** ........................................ 28

**ARTICLE 13 RETENTION OF JURISDICTION** ......................................... 29

**ARTICLE 14 MISCELLANEOUS PROVISIONS** ........................................ 30

## INTRODUCTION

The Debtors and the Committee, as co-Plan Proponents, hereby propose the following plan of liquidation under Bankruptcy Code sections 1121(a) and 1123. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan constitutes a liquidating chapter 11 plan for the Debtors. The Plan provides for the substantive consolidation of the Debtors assets and liabilities for purposes of the Plan, including all distributions hereunder. The Plan contemplates the creation of a Liquidation Trust, which will be administered by the Liquidation Trustee. The Liquidation Trustee will, among other things, liquidate the Debtors' remaining Assets, evaluate, pursue or settle potential Causes of Action, as appropriate, review the universe of Claims in this Chapter 11 Case, fix the Allowed amount of those Claims, and then make distributions to the Liquidation Trust Beneficiaries. Once the Liquidation Trustee liquidates all Assets, fixes all Claims, and conveys all distributions, the Liquidation Trustee will dissolve the Liquidation Trust pursuant to the terms of this Plan.

## ARTICLE 1
## DEFINITIONS AND CONSTRUCTION OF TERMS

<u>Definitions</u>. As used herein, the following terms have the respective meanings specified below:

1.1.     <u>Administrative Expense Claim</u> means any right to payment under Bankruptcy Code section 503(b), and any fees or charges assessed against the Estates of the Debtors under section 1930 of chapter 123 of Title 28 of the United States Code.

1.2.     <u>Affiliate</u> has the meaning ascribed to such term in Bankruptcy Code section 101(2).

1.3.     <u>Allowed</u> means, with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim listed on Schedule 1.3 to this Plan, in the amount and as classified on such schedule, which schedule may be amended from time to time in the discretion of the Plan Proponents up to five (5) days prior to the Voting Deadline, or (c) any Claim that is deemed "Allowed" in writing by the Plan Proponents or Liquidation Trust or by order of the Bankruptcy Court; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder solely by virtue of such order.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, punitive damages or any fine or penalty on such Administrative Expense Claim or Allowed Claim from and after the Petition Date. For purposes of determining the amount of

an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold or assert against the holder thereof, to the extent such claim may be set off pursuant to Bankruptcy Code sections 502(d) or 553.

1.4.    Assets means all assets of the Debtors' Estates, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Bankruptcy Code section 541, including Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

1.5.    Available Cash means all Cash of the Debtors' Estates to be distributed to the holders of Allowed Claims in accordance with the Plan, including those net recoveries realized from the prosecution and/or settlement of Causes of Action held by the Debtors or the Liquidation Trust, less (i) the Estimated Liquidation Expenses and (ii) the amount of Cash to be retained for the payment of Disputed Claims, from time to time; *provided*, *however*, that Available Cash shall not include collateral security or any proceeds of Collateral securing any Allowed Secured Claims.

1.6.    Ballot means the form distributed to each holder of an impaired Claim on which is to be indicated acceptance or rejection of the Plan.

1.7.    Bankruptcy Code means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*), as amended from time to time, as applicable to the Chapter 11 Case.

1.8.    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of Iowa having jurisdiction of and over the Chapter 11 Cases and, in the event the reference to the Bankruptcy Court is withdrawn, to the District Court for the Southern District of Iowa for the matter that is withdrawn.

1.9.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended.

1.10.    Blue Care means Blue Care Homes LLC.

1.11.    Blue Care Sale Order means the Order Authorizing (I) the Sale Of The Debtors' Assets Free And Clear Of Liens, Claims And Encumbrances; (II) The Assumption And Assignment of Certain Executory Contracts And Unexpired Leases; And (III) Approving the Settlement Agreement With The United States, which was entered on November 2, 2002.

1.12.    Blue Care APA means the APA as defined in and approved by the Blue Care Sale Order.

1.13.    Business Day means any day other than: Saturday, Sunday, any day on which commercial banks in Des Moines, Iowa are required or authorized to close by law or executive order, and the Friday after Thanksgiving.

-2-

1.14.    <u>Cash</u> means legal tender of the United States of America or wire transfer from a domestic bank.

1.15.    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action including Creditor Causes of Action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, avoidance actions arising under Chapter 5 of the Bankruptcy Code.

1.16.    <u>Chapter 11 Cases</u> means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors and jointly administered as *In re QHC Facilities, LLC et. al.,* Chapter 11 Case No. 21-01643-als11, currently pending before the Bankruptcy Court.

1.17.    <u>Claim</u> has the meaning set forth in Bankruptcy Code section 101(5).

1.18.    <u>Claims Objection Deadline</u> means the first Business Day that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by Order of the Bankruptcy Court upon motion of the Liquidation Trustee.

1.19.    <u>Class</u> means a category of holders of Claims as set forth in Article 3 of the Plan.

1.20.    <u>Collateral</u> means any property or interest in property of the Estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or otherwise invalidated under the Bankruptcy Code or applicable non-bankruptcy law.

1.21.    <u>Petition Date</u> means December 29, 2021, the date on which the Debtors commenced the Chapter 11 Cases.

1.22.    <u>Confirmation Date</u> means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.23.    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.24.    <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

1.25.    <u>Creditors' Committee</u> means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102.

1.26.    <u>Committee Members</u> means the current and any former members of the Creditors' Committee, each in their capacity as a member of the Creditors' Committee.

-3-

1.27.    <u>Creditor Representative</u> means a Committee Member or other Person selected by the Committee to serve as Creditor Representative.

1.28.    <u>Debtor(s)</u> means QHC Facilities, LLC, QHC Management, LLC, QHC Mitchellville, LLC, QHC Winterset North, LLC, QHC Madison Square, LLC, QHC Fort Dodge Villa, LLC, Crestridge, Inc., Crestview Acres Inc., QHC Humboldt North, LLC, QHC Humboldt South, LLC, and/or QHC Villa Cottages, LLC.

1.29.    <u>Debtor(s) in Possession</u> means one or more of the Debtors in its or their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

1.30.    <u>Disbursing Agent</u> means the Liquidation Trustee; *provided*, *however*, that the Liquidation Trustee may, in its discretion, retain a third party to act as Disbursing Agent.

1.31.    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

1.32.    <u>Disputed</u> means every Claim which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent or which is not listed in the Debtors' Schedules, or which is disputed under the Plan or as to which any party in interest, including the Plan Proponents or the Liquidation Trust, has interposed a timely objection and/or request for estimation in accordance with Bankruptcy Code section 502(c) and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed. A Claim that is Disputed as to its amount only, shall be deemed Allowed in the amount the Debtors admit is owing, if any, and Disputed as to the excess. Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that (i) the amount of the Claim specified in a proof of Claim exceeds the amount listed in the Schedules and/or (ii) the Claim is classified differently in the proof of Claim than in the Schedules. To the extent an objection to the allowance of only a portion of a Claim has been timely filed, such Claim shall be a Disputed Claim only to the extent of the portion subject to objection.

1.33.    <u>Disputed Claim Amount</u> means the amount set forth in the proof of Claim relating to a Disputed Claim or, if an amount is estimated in respect of a Disputed Claim in accordance with Bankruptcy Code section 502(c) and Bankruptcy Rule 3018, the amount so estimated pursuant to an order of the Bankruptcy Court.

1.34.    <u>Effective Date</u> means the first Business Day on which all conditions in Article 12 of the Plan have been satisfied or waived in accordance with the Plan.

1.35.    <u>Entity</u> shall have the meaning set forth in Bankruptcy Code section 101(15).

-4-

1.36.    <u>Equity Interest</u> means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date.

1.37.    <u>Estates</u> means the estates created by the commencement of the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code section 541.

1.38.    <u>Estimated Liquidation Expenses</u> means the amount of Cash estimated by the Liquidation Trustee, from time to time, as necessary to fund adequately the liquidation of the remaining Assets and the winding up of the Liquidation Trust.

1.39.    <u>Filing Date</u> means December 29, 2021, which is the date the Debtors filed their voluntary chapter 11 petitions.

1.40.    <u>Final Distribution Date</u> means the date on which a final distribution of Available Cash is made pursuant to Article 6 of the Plan. The Final Distribution Date shall be a date, as determined by the Liquidation Trustee, (i) which is after the liquidation into Cash of all Liquidation Trust Assets (other than those Assets abandoned by the Liquidation Trustee) and the collection of other sums due or otherwise remitted or returned to the Liquidation Trust, and (ii) after the final resolution of all Disputed Claims.

1.41.    <u>Final Order</u> means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Liquidation Trust, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.42.    <u>First Distribution Date</u> means that date which is ninety (90) days after the Effective Date; unless the Liquidation Trustee determines, in his or her reasonable discretion, that an extension of such deadline is necessary to ensure an efficient and economical distribution to creditors.

1.43.    <u>General Unsecured Claim</u> means any Claim other than an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Secured Tax Claim, Other Secured Claim, Subordinated Claim, or Intercompany Claim.

1.44.    <u>Intercompany Claim</u> means a Claim held by a Debtor against another Debtor.

1.45.    <u>Lien</u> has the meaning set forth in Bankruptcy Code section 101(37).

1.46.    <u>Liquidation Trust</u> means that certain trust established pursuant to Article 10 of the Plan and the Liquidation Trust Agreement.

1.47.    <u>Liquidation Trust Agreement</u> means the trust agreement that, among other things, creates and establishes the Liquidation Trust, describes the powers, duties and responsibilities of the Liquidation Trustee, provides for the liquidation and distribution of proceeds of the Liquidation Trust Assets, and describes the powers, duties and responsibilities of the Creditor Representatives, which trust agreement shall be substantially in the form filed in the Plan Supplement.

1.48.    <u>Liquidation Trust Assets</u> means all Assets of the Debtors' Estates as of the Effective Date, including, without limitation, the Causes of Action and all rights of setoff and recoupment and other defenses that the Debtors and their Estates may have with respect to any Claim.

1.49.    <u>Liquidation Trust Beneficiaries</u> means holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed General Unsecured Claims.

1.50.    <u>Liquidation Trustee</u> means the individual identified at the Confirmation Hearing as being initially selected by the Debtors and the Creditors' Committee to act as trustee of the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement to administer the Liquidation Trust, and any successors thereto.

1.51.    <u>Management Agreement(s)</u> means those management agreements identified in the Blue Care APA and Blue Care Sale Order entered into between Blue Care and the Debtors on March 28, 2022, including any and all amendments thereto.

1.52.    <u>Other Priority Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a), but only to the extent entitled to such priority.

1.53.    <u>Other Secured Claim</u> means any Secured Claim other than Secured Tax Claims.

1.54.    <u>Person</u> shall have the meaning set forth in Bankruptcy Code section 101(41).

1.55.    <u>Plan</u> means this joint chapter 11 plan of liquidation, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.56.    <u>Plan Supplement</u> means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Plan Proponents no later than three (3) calendar days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Plan Proponents.

1.57.    <u>Plan Proponents</u> means collectively, the Debtors and the Creditors' Committee.

1.58.    <u>Post-petition Interest</u> means interest, commencing on the Petition Date, on the then outstanding principal amount of an Allowed Claim, at an annual rate equal to the federal judgment rate in effect on the Petition Date.

1.59.    <u>Priority Tax Claim</u> means any Claim of a governmental unit of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8) that is not a Secured Tax Claim.

1.60.    <u>Pro Rata Share</u> means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

1.61.    <u>Schedules</u> means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through and including the Claims Objection Deadline.

1.62.    <u>Secured Claim</u> means any Claim, to the extent reflected in the Debtors' Schedules or a proof of Claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Bankruptcy Code section 506(a), or, in the event that such Claim is subject to a permissible setoff under Bankruptcy Code section 553, to the extent of such permissible setoff, including, without limitation, Secured Tax Claims and Other Secured Claims.

1.63.    <u>Secured Tax Claim</u> means any Secured Claim of a governmental unit arising from unpaid taxes that is secured by a Lien on property arising from operation of a statute.

1.64.    <u>Settlement Agreement</u> means that certain settlement agreement between Blue Care and the Debtors as approved by the Blue Care Sale Order.

-7-

1.65.    <u>Subordinated Claim</u> means a Claim that is subordinated pursuant to section 510(b) of the Bankruptcy Code.

1.66.    <u>Subsequent Distribution Date</u> means any date, as determined by the Liquidation Trustee, which is after the First Distribution Date and prior to the Final Distribution Date, but no more frequently than quarterly, on which a distribution of Cash is made to the holders of Allowed Claims in accordance with Article 6 of the Plan.

1.67.    <u>Voting Deadline</u> means the deadline set by the Court for the submission of ballots to vote for or against the Plan.

1.68.    <u>Interpretation; Application of Definitions and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1.    <u>Non-Classification.</u> As provided in Bankruptcy Code section 1123(a), Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately pursuant to the terms set forth in this Article 2.

2.2.    <u>Administrative Expense Claims</u>. Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment or as otherwise provided herein, each holder of an Allowed Administrative Expense Claim (save only Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses, which are specifically addressed in Section 2.3 below) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; <u>provided, however</u>, that (i) Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor in Possession shall be paid in full and performed by the Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such

transactions[2]; and (ii) Allowed Administrative Expense Claims arising from a personal injury arising after the Filing Date shall be satisfied solely from the Debtors' post-petition general liability insurance policies.

2.3.   <u>Professional Compensation and Reimbursement Claims</u>.  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under Bankruptcy Code sections 330 or 331 or entitled to the priorities established pursuant to Bankruptcy Code sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is sixty (60) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, (i) on the later of the Effective Date and the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Liquidation Trust, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

2.4.   <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, at the option of the Plan Proponents or the Liquidation Trustee, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, (b) in accordance with Bankruptcy Code section 1129(a)(9)(C), equal annual Cash payments commencing on the first anniversary of the Effective Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest on any outstanding balance from the Effective Date at the applicable rate under non-bankruptcy law, over a period not exceeding five years after the Petition Date or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; provided, however, that the Debtors or Liquidation Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

2.4.1.   Under the Plan, no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any interest accrued on such Claims from

---

[2] Pursuant to the Blue Care Sale Order, Blue Care assumed and became obligated to timely pay all obligations incurred by the Manager and required to be paid by the Manager under the Blue Care APA and Management Agreement, and the Debtors were released from such obligations.

and after the Petition Date or other Post-petition Interest or penalty with respect to or in connection with an Allowed Priority Tax Claim, except as expressly set forth in Section 2.4 above.

2.4.2. The Department of Treasury – Internal Revenue Service ("IRS") filed proofs of Claim in the following Estates: (1) QHC Villa Cottages, LLC (POC 5); (2) QHC Madison Square, LLC (POC 10); (3) QHC Management, LLC (POC 11 & 12); (4) Crestridge, Inc. (POC 17); (5) QHC Facilities, LLC (POC 19); (6) QHC Mitchellville, LLC (POC 20); (7) QHC Winterset North, LLC (POC 20); (8) Crestview Acres, Inc. (POC 22); (9) QHC Humboldt North, LLC (POC 22); (10) QHC Humboldt South, LLC (POC 22); and (11) QHC Fort Dodge Villa, LLC (POC 25). The IRS' proofs of Claim total $1,089,436.30 (the "IRS Proofs of Claim"). The Debtors are currently owed refunds (the "Refunds") from the IRS for employee retention tax credits from the first and second quarters of 2021 that are in excess of the amounts set forth in the IRS Proofs of Claim. Therefore, as of the Effective Date, the Refunds will be deemed offset against the IRS' Proofs of Claim resulting in full satisfaction of any amounts owed by the Debtors to the IRS. Any refunds owed to the Debtors in excess of the IRS Proofs of Claim will remain due and owing to the Debtors.

### ARTICLE 3
### CLASSIFICATION OF CLAIMS

3.1. <u>Classification</u>. Generally, for voting and distribution purposes, a Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent the Claim qualifies within the description of such different Class. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class. Claims, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| **Class** | **Status** | **Voting Rights** |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 – Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 – Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 – Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 – Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Status | Voting Rights |
|---|---|---|
| Class 7 – Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

3.2.     **SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES.** Prior to bankruptcy, the Webb Trust and Lincoln Savings Bank asserted secured claims in excess of $25 million against all of the Debtors' Assets.  As a result of a recent Court-approved settlement reached with both creditors, the Claims of each were fully resolved, thereby benefitting creditors across all of the Debtors' Estates.  Therefore, for purposes of the Plan, all remaining Assets and liabilities of the Debtors shall be deemed the Assets and liabilities of a single consolidated entity. On the Effective Date: (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Allowed Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors. Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes.

## ARTICLE 4
## TREATMENT OF CLAIMS

4.1.     Class 1 – Other Priority Claims.

(a) Description. Class 1 consists of Claims entitled to priority under the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

(b) Treatment and Distribution. Except to the extent that a holder of an Allowed Other Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each such holder shall receive, in full and complete settlement, satisfaction and discharge of such Claim, Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

-11-

(c) <u>Impairment and Voting</u>. Class 1 is unimpaired by the Plan. Each holder of a Class 1 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.2.    <u>Class 2 – Secured Tax Claims</u>.

(a) <u>Description</u>. Class 2 consists of tax Claims secured by property of the Estates.

(b) <u>Treatment and Distributions</u>. Except to the extent that a holder of an Allowed Secured Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Secured Tax Claim, at the option of the Plan Proponents or the Liquidation Trustee, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to Bankruptcy Code section 506(b), on the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable, (ii) commencing on the first anniversary of the Effective Date and continuing on each anniversary thereafter over a period not exceeding five years after the Petition Date, equal annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the option of the Plan Proponents or the Liquidation Trustee to prepay the entire amount of the Allowed Secured Tax Claim or any remaining balance at any time, or (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

(c) <u>Retention of Liens</u>. Except to the extent that a holder of an Allowed Secured Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall retain the Liens (or replacement Liens), if any, securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Liens shall be deemed null and void and shall be unenforceable for all purposes. As to any holder of an Allowed Secured Tax Claim that has been paid prior to the Effective Date, such Liens shall be deemed null and void and shall be unenforceable for all purposes.

(d) <u>Classification</u>. Unless otherwise ordered by the Bankruptcy Court, each Allowed Secured Claim in Class 2 shall be considered a separate subclass within Class 2, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

(e) <u>Impairment and Voting</u>. Class 2 is unimpaired by the Plan. Each holder of a Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

The Plan Proponents do not believe that any Class 2 Claims exist.

4.3.    Class 3 - Other Secured Claims.

(a) Description. Class 3 consists of the secured Claims of Persons or Entities other than taxing authorities.

(b) Treatment and Distributions. Except to the extent that a holder of an Allowed Other Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Secured Claim, at the option of the Plan Proponents or the Liquidation Trustee, (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, or (ii) the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable.

(c) Retention of Liens. Except to the extent that a holder of an Allowed Other Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall retain the Liens (or replacement Liens), if any, securing its Allowed Other Secured Claim as of the Effective Date until any distribution(s) shall have been made to such holder hereunder, at which time such Liens shall be deemed null and void and shall be unenforceable for all purposes. As to any holder of an Allowed Other Secured Claim that has been paid prior to the Effective Date, such Liens shall be deemed null and void and shall be unenforceable for all purposes.

(d) Classification. Unless otherwise ordered by the Bankruptcy Court, each Allowed Other Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

(e) Impairment and Voting. Class 3 is unimpaired by the Plan. Each holder of a Class 3 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

The Plan Proponents do not believe that any Class 3 Claims exist.

4.4.    Class 4 – General Unsecured Claims.

(a) Description. Class 4 consists of general unsecured Claims.

(b) _Treatment and Distributions_. Except as otherwise set forth herein, the holder of an Allowed General Unsecured Claim shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Claim, (i) on the First Distribution Date, after full satisfaction of (or the establishment of an appropriate reserve therefor) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims, its Pro Rata Share of Available Cash, and (ii) on each Subsequent Distribution Date, and the Final Distribution Date, its Pro Rata Share of Available Cash; _provided_, _however_, that the aggregate distributions received pursuant to the Plan shall not exceed the amount of Allowed General Unsecured Claims plus, if applicable, Post-petition Interest thereon. For purposes of this Plan, all Claims of the state of Iowa for Quality Assurance and Assessment Fees or similar charges ("QAAF") shall be treated and paid as Class 4 General Unsecured Claims. Allowed General Unsecured Claims related to a personal injury which occurred and arose prior to the Filing Date shall be satisfied solely from the policies of insurance the Debtors maintained during the relevant claims period.

(c) _Impairment and Voting_. Class 4 is impaired by the Plan. Each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

4.5.    _Class 5 – Subordinated Claims_.

(a) _Description_. Class 5 consists of Claims that are subordinated pursuant to section 510(b) of the Bankruptcy Code.

(b) _Treatment and Distributions_. On the Effective Date, or on such later date as a Claim is determined by the Bankruptcy Court to be a Subordinated Claim, each Subordinated Claim shall be extinguished. Holders of Subordinated Claims will receive no distributions under the Plan.

(c) _Impairment and Voting_. Class 5 is impaired by the Plan. Each holder of a Class 5 Claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.6.    _Class 6 – Intercompany Claims_.

(a) _Description_. Class 6 consists of Claims of any Debtor against another Debtor.

(b) _Treatment and Distributions_. On the Effective Date, all Intercompany Claims shall be extinguished. Holders of Intercompany Claims will receive no distributions under the Plan.

(c) _Impairment and Voting_. Class 6 is impaired by the Plan. Each holder of a Class 6 Claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan

4.7.    _Class 7 – Equity Interests_.

-14-

(a) <u>Description</u>. Class 7 consists of equity interests in any of the Debtors.

(b) <u>Treatment and Distributions</u>. On the Effective Date, all Equity Interests shall be extinguished and cancelled. Holders of Equity Interests will receive no distributions or other recovery under the Plan.

(c) <u>Impairment and Voting</u>. Class 7 is impaired by the Plan. Each holder of a Class 7 Equity Interest is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.8.    <u>Effect of Bar Dates.</u> Upon the Effective Date of the Plan, any Claim of any sort filed or asserted after the relevant bar date (deadline) for filing such Claim shall be deemed disallowed in full and with prejudice without need for further order of the Court.

## ARTICLE 5
## <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>

5.1.    <u>Voting of Claims</u>. Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article 4 of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity shall be aggregated and treated as one Allowed Claim in such Class.

5.2.    <u>Procedure/Voting Deadline</u>. In order for a Ballot to count, it must be (i) completed, dated, and properly executed, and (ii) delivered to the Voting Agent by first class mail, postage prepaid, or by overnight courier, to the following address: Attn: Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309 or by email to the following address: krystal.mikkilineni@dentons.com. The Voting Agent must ACTUALLY RECEIVE Ballots on or before the Voting Deadline. Except as otherwise ordered by the Bankruptcy Court or agreed to by the Debtors, a vote may not be changed once a Ballot is submitted to the Voting Agent.

5.3.    <u>Elimination of Vacant Classes</u>. Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

5.4.  <u>Nonconsensual Confirmation</u>. If any impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), the Plan Proponents reserve the right to amend the Plan in accordance with Section 14.7 hereof or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b), or both.

# ARTICLE 6
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1.  <u>Method of Distributions Under the Plan</u>.

(a) <u>Distributions of Cash</u>. All distributions under the Plan shall be made pursuant to the terms and conditions of the Plan. At the option of the Liquidation Trustee, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

(b) <u>Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of claim filed by such holders (or at the last known addresses of such a holder if no proof of claim is filed or if the Liquidation Trustee has been notified in writing of a change of address), except as provided below. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidation Trustee is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidation Trustee until such distributions are claimed. However, <u>if such undeliverable distributions are not claimed within sixty (60) days following the date the distributions were initially disbursed, the persons otherwise entitled to such distributions shall have waived and forfeited all rights to such distributions.</u> Such distributions shall be used to pay any outstanding fees and expenses of the Liquidation Trustee and its professionals, and then as an additional distribution to holders of Allowed Class 4 Claims provided there are reasonably sufficient remaining funds to do so, as determined in the Liquidation Trustee's discretion, after taking into account the cost of the distribution. For the avoidance of doubt, nothing contained in this Plan shall require the Liquidation Trustee to attempt to locate any person entitled to receive a distribution under the Plan. It is the obligation of each person claiming rights under the Plan to keep the Liquidation Trustee advised of such person's current address by sending written notice of any changes to the Liquidation Trustee.

(c) <u>Time Bar for Distributions</u>. Checks issued by the Liquidation Trustee in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. The Trustee, may, but shall have no obligation to reissue a distribution once the distribution check becomes void. All Claims in respect of void checks shall be discharged and forever barred.

(d) <u>Unclaimed Property</u>. Any distribution unclaimed within sixty (60) days after the last distribution to Holders of Allowed Claims in Class 4 shall be deemed "unclaimed property" under § 347 of the Bankruptcy Code. Unclaimed property shall be returned to the Liquidation Trustee and shall be distributed *pro rata* to holders of Allowed Claims in Class 4, excluding any payment to holders of Allowed Claims in Class 4 whose distributions were unclaimed. Such unclaimed property shall not be subject to escheat or any similar law.

(e) <u>Allocation of Plan Distributions</u>. All distributions in respect of Allowed Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), with any excess allocated to the remaining portion of such Claims, if any.

6.2. <u>Liquidation Trust Distributions</u>. The Disbursing Agent will make the distributions to Liquidation Trust Beneficiaries required under the Plan in accordance with the Liquidation Trust Agreement and in accordance with the priorities set forth in and the other provisions of the Plan.

(a) <u>Distributions Subsequent to the First Distribution Date</u>. To the extent that there is Available Cash subsequent to the First Distribution Date from, among other things, (i) the liquidation and conversion to Cash of the Liquidation Trust's Assets, (ii) the prosecution and enforcement of Causes of Action, (iii) funds no longer needed to be retained in respect of Disputed Claims in accordance with Section 7.5 of the Plan, (iv) funds no longer needed to be retained in respect of Estimated Liquidation Expenses, and/or (v) the return of undeliverable, time-barred or unclaimed distributions to holders of Allowed Claims as set forth in Section 6.1(c), the Disbursing Agent shall, on each Subsequent Distribution Date, and the Final Distribution Date, distribute to holders of Allowed General Unsecured Claims an amount of Available Cash so that after giving effect to the amounts required to be retained in respect of Disputed Claims in accordance with Section 7.5 of the Plan, holders of Allowed General Unsecured Claims shall have received in respect of such Allowed Claims the distribution that such holders would have received under the Plan in respect of such Allowed Claims on the Effective Date if (x) such Available Cash had been available for distribution on the Effective Date, and (y) such Allowed Claims had been Allowed on the Effective Date in the amounts in which they are Allowed on the Subsequent Distribution Date or the Final Distribution Date, as the case may be. Notwithstanding the foregoing, a Subsequent Distribution Date shall not be scheduled if the amount of Available Cash is less than $50,000.00, unless such would be a final distribution.

(b) <u>Remaining Available Cash</u>. If, in connection with closing the Chapter 11 Case, the Available Cash remaining is less than $25,000, the Liquidation Trustee, in its sole discretion, may donate such amount to a charity of its choice.

(c) *<u>De Minimis Distributions</u>*. No payment of Cash less than $50.00 need be made by the Liquidation Trustee in the exercise of its discretion to any holder of a Claim. Any undistributed amount shall be held over to the next Subsequent

-17-

Distribution Date or Final Distribution Date, or may be donated in accordance with Section 6.2(b), as applicable.

## ARTICLE 7
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS

7.1.    <u>Objections to and Resolution of Claims</u>. Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, the Liquidation Trustee, on and after the Effective Date, shall have the exclusive right to object to Claims. The Liquidation Trustee shall have the exclusive right to file objections and/or motions to estimate any and all Claims after the Effective Date. The Liquidation Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court. The Liquidation Trustee shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

7.2.    <u>Claims Objection Deadline</u>. The Liquidation Trustee shall file and serve any objection to any Claims, including Administrative Expense Claims, no later than the Claims Objection Deadline; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion (on notice) by the Liquidation Trustee.

7.3.    <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is deemed Allowed.

7.4.    <u>Estimation</u>. The Liquidation Trustee may, at any time prior to the Claims Objection Deadline, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors or Liquidation Trustee previously objected to such Claim. In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding this, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim. All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

7.5.    <u>Claims Reserve</u>. On any date that distributions are to be made under the terms of the Plan, the Liquidation Trustee shall reserve Cash equal to one-hundred percent (100%) of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, unless otherwise ordered by the Bankruptcy Court following notice to the affected Claim holder. Such Cash shall be held for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

7.6.     <u>Allowance of Disputed Claims</u>. If, on or after the Effective Date, any Disputed General Unsecured Claim is deemed Allowed, the Disbursing Agent shall, on the Subsequent Distribution Date that is at least fifteen (15) Business Days following the date on which the Disputed Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim the amount of Cash that would have been distributed to such holder under the Plan on the dates distributions previously were made to holders of Allowed General Unsecured Claims had such Claim been an Allowed Claim on such dates, which amount shall not exceed the amount of Cash reserved on account of such Claim.

7.7.     <u>Setoff and Recoupment</u>. The Liquidation Trustee shall retain the right to reduce any Claim by way of setoff and/or recoupment.

7.8.     <u>Subordination Rights Preserved</u>. All rights and claims of the Debtors to subordinate the Claim of any Beneficiary under section 510 of the Bankruptcy Code shall remain valid and enforceable and may be asserted by the Liquidation Trustee.

7.9.     <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Plan, the Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Liquidation Trustee has the right, but not the obligation, not to make a distribution until such holder has made satisfactory arrangements for payment of any such tax obligations. The Liquidation Trustee may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such holder. If the Liquidation Trustee makes such a request and the Allowed Claim holder fails to comply before the date that is 90 days after the request is made, any Claim in respect of such distribution shall be disallowed and forever barred from asserting a Claim in respect of such distribution against the Debtors, Liquidation Trustee or their property.

## ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.     <u>Executory Contracts and Unexpired Leases</u>. Pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity that have not been assumed or rejected pursuant to a Bankruptcy Court order entered prior to the Confirmation Date shall be deemed rejected by the Debtors on the Confirmation Date, effective as of the Confirmation Date.

8.2.     <u>Bar Date for Filing Proofs of Claim Relating to Rejection of Executory Contracts and Unexpired Leases</u>. Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served

upon the Debtors by the earlier of (i) 30 days after the notice of Plan confirmation and (ii) such other date as may be or has already been fixed by order of the Bankruptcy Court. All such Claims not filed within such time will be forever barred from assertion against the Debtors, their Estate and their property, or the Liquidation Trust and the Liquidation Trust Assets, as applicable.

8.3.    Retiree Benefits. The Debtors do not maintain any retiree benefit plans, funds or programs, as defined in Bankruptcy Code section 1114. Accordingly, no such payments will be, or are required to be, made pursuant to Bankruptcy Code section 1129(a)(13).

8.4.    Debtors' Insurance Policies. Nothing in the Plan alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Debtors' insurance policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the insurance policies.

## ARTICLE 9
## CAUSES OF ACTION

9.1.    Preservation and Retention of Causes of Action. The Debtors (before the Effective Date) and the Liquidation Trustee (after the Effective Date), retain, reserve the right to and shall be deemed to have standing to assert, including after the Effective Date, any and all Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, including, without limitation, the Causes of Action set forth in **Schedule 9.1** appended to this Plan. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches, shall apply to such Claims or Causes of Action upon, after or as a consequence of the Confirmation Order or Effective Date. The Liquidation Trustee may pursue, abandon, settle or release any or all such Causes of Action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

9.2.    Reservation of Rights. Except as specifically provided in the Plan, nothing contained in the Plan or Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim. The Debtors (before the Effective Date) and the Liquidation Trustee (post-Effective Date) shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff or other legal or equitable defenses which the Debtors held immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtors respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced. The right of the Debtors (before the Effective Date) and the Liquidation Trustee (post-Effective Date) to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant to any Causes of Action brought by the Debtors or the Liquidation Trustee shall

be entitled to assert any defense based, in whole or in part, upon Confirmation of the Plan, and Confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of the Causes of Action.

9.3.    <u>Liquidation Trust Causes of Action</u>. All Causes of Action that the Debtors and their Estates may hold shall, on the Effective Date, automatically vest in the Liquidation Trust free and clear of liens, claims, encumbrances and interests, except for the interests of the Liquidation Trust Beneficiaries or as otherwise expressly set forth in this Plan. The Liquidation Trustee, on behalf of the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Liquidation Trust Agreement. From and after the Effective Date, the Liquidation Trustee, in accordance with Bankruptcy Code section 1123(b)(3), and on behalf of the Liquidation Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal.

9.4.    <u>No Waiver of Privilege</u>. To effectively investigate, defend or pursue the Causes of Action and the Liquidation Trust Assets, the Debtors, the Liquidation Trust, the Creditor Representatives and the Liquidation Trustee, and all counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege. Given the common interests of the parties and the Liquidation Trust's position as successor to the Causes of Action and the Liquidation Trust Assets, sharing such information among the Debtors, the Liquidation Trust, the Creditor Representatives or their respective counsel shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.

## ARTICLE 10
## MEANS FOR IMPLEMENTATION OF THE PLAN

10.1.    <u>Substantive Consolidation</u>. On the Effective Date, the Assets and liabilities of the Debtors shall be substantively consolidated for all purposes under the Plan, including distributions from the Liquidation Trust.

10.2.    <u>Corporate Action</u>. On the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtors shall be deemed authorized by the Confirmation Order and shall be deemed to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, shareholders or members of the Debtors. Upon and as of the Effective Date, the current officers and directors of the Debtors shall cease to serve immediately, and the Liquidation Trustee shall have the power and authority to file any documents or take any acts contemplated by Section 10.2. Upon the Effective Date, all professionals retained by the Debtors shall be deemed to have withdrawn their appearance for the Debtors in the Chapter 11 Case, and shall be authorized to file notices of withdrawal of appearance in the

Chapter 11 Case without need for any order of the Bankruptcy Court, except that the Debtors' professionals may prepare, file and seek approval of their respective applications for final allowances of compensation and reimbursement of expenses.

      10.3.    <u>Dissolution of Debtors</u>. Upon the Effective Date, the Debtors shall be dissolved, and any corporate action necessary to authorize such dissolution shall be deemed to have occurred. After the Effective Date, the Liquidation Trustee shall be authorized but not directed to take, in its sole and absolute discretion, all actions as reasonably practicable and necessary to evidence the dissolution of the Debtors under applicable laws, including under the laws of the jurisdictions in which the Debtors may be organized, registered, or licensed, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; *provided*, *however*, that the Liquidation Trustee shall not be compelled to take any of the foregoing action or to cancel any licenses if to do so would unduly burden the Liquidation Trust or otherwise may result in harm to the Liquidation Trust, in the sole discretion of the Liquidation Trustee. The Liquidation Trustee shall have no liability for using its discretion in connection with the foregoing.

      10.4.    <u>Dissolution of Creditors' Committee</u>. On the Effective Date, the Creditors' Committee shall be dissolved, and the Committee Members released and discharged of any further duties and responsibilities and the retention or employment of the Creditors' Committee's professionals shall also terminate, except that the Creditors' Committee and its professionals may prepare, file and seek approval of their respective applications for final allowances of compensation and reimbursement of expenses.

      10.5.    <u>Liquidation Trust</u>.

      10.5.1. <u>Establishment of the Liquidation Trust</u>. On the Effective Date, the Liquidation Trust shall be established and shall become effective, and the Liquidation Trustee shall execute the Liquidation Trust Agreement, and all other necessary steps shall be taken to establish the Liquidation Trust. In the event of any conflict between the terms of this Section 10.4 and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern. The Liquidation Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidation Trust as a liquidating trust for United States federal income tax purposes.

      10.5.2. <u>Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor in Interest</u>. The Liquidation Trust shall be established for the primary purpose of liquidating its Assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. The Liquidation Trust shall not be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code. Accordingly, the Liquidation Trustee shall in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, including the Causes of Action, make timely

distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement. The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such Assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

10.5.3. <u>Vesting of Assets in the Liquidation Trust</u>. On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Assets shall vest in the Liquidation Trust and constitute Liquidation Trust Assets, free and clear of all Claims, Liens, interests and encumbrances, other than the interests of the Liquidation Trust Beneficiaries, and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidation Trust in accordance with the terms of the Plan and the Liquidation Trust Agreement. Upon the election of the Liquidation Trustee to abandon any Assets included among the Liquidation Trust Assets, such Assets shall cease to be Liquidation Trust Assets.

10.5.4. <u>Distributions and Operating Expenses</u>. The Liquidation Trustee shall distribute the Available Cash to the Liquidation Trust Beneficiaries in accordance with the Plan and the Liquidation Trust Agreement. Except as otherwise provided in the Plan or the Liquidation Trust Agreement, the timing and amount of all Distributions payable by the Liquidation Trust shall be within the sole discretion of the Liquidation Trustee. The Liquidation Trustee may reserve and use Estimated Liquidation Expenses, in such amounts as the Liquidation Trustee shall deem reasonable in its sole discretion, for the payment of expenses of the Liquidation Trust and the Liquidation Trustee, including without limitation, professional fees and expenses, costs of Distributions, the prosecution and resolution of Causes of Action and objections to Claims.

10.5.5. <u>Rights, Powers and Duties of Liquidation Trustee</u>. The Liquidation Trustee shall have the rights, powers and duties set forth in the Plan and the Liquidation Trust Agreement. Beginning on the Effective Date and continuing through the date that a final decree closing the Case is entered under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidation Trustee shall possess the rights of a party in interest under § 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Case. Furthermore, the Liquidation Trustee will be a representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute all Causes of Action and object to and/or defend against any Disputed Claims in the name of the Liquidation Trust or as necessary in the name of any Debtor(s). The Liquidation Trustee shall administer the Liquidation Trust and the Liquidation Trust Assets and make Distributions in accordance with the Plan and the

-23-

Liquidation Trust Agreement. The Liquidation Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including without limitation the following:

(a) hold the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiaries that are entitled to distributions therefrom under the Plan and to otherwise make distributions as provided for under the Plan;

(b) administer, sell, liquidate, convert to Cash and distribute all Liquidation Trust Assets as specified in the Plan and the Liquidation Trust Agreement;

(c) object to Claims, and manage, control, prosecute and/or settle on behalf of the Liquidation Trust, objections to Claims on account of which the Liquidation Trustee will be responsible (if Allowed) for making distributions under the Plan;

(d) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidation Trust;

(e) pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidation Trust Assets or any part thereof or to preserve the Liquidation Trust;

(f) open, maintain, and administer bank accounts as necessary to discharge the duties of the Liquidation Trustee under the Plan and the Liquidation Trust Agreement;

(g) file all reports required under law, including state and federal tax returns, and pay all taxes incurred in connection with the activities of the Liquidation Trust;

(h) keep or cause to be kept books containing an accounting of all receipts and disbursements of the Liquidation Trust, which shall be open to inspection by any holder of an Allowed Claim at all reasonable times;

(i) sue and be sued and represent the Debtors, the Estates and the Liquidation Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to all Causes of Action, all Disputed Claims, and any other matters concerning the Plan or the Liquidation Trust; and

(j) exercise such other powers as may be vested in the Liquidation Trust or the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, or any Final Order of the Bankruptcy Court and do all other acts that may be necessary or appropriate for the final distribution of the Liquidation Trust Assets.

10.5.6. <u>Retention of Professionals</u>. The Liquidation Trustee may retain and compensate attorneys and other professionals to assist in its duties as the

Liquidation Trustee on such terms as it deems appropriate without Bankruptcy Court approval. Professionals may include legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other professionals whose retention and employment the Liquidation Trustee deems appropriate. Professionals do not need to be "disinterested" as defined by the Bankruptcy Code and may include the attorneys and financial advisors employed by any party in the Chapter 11 Cases. The Liquidation Trustee's retention of a Professional is deemed not to pose any conflict of interest, and no conflict shall exist by virtue of the filing of applications by Professionals for allowance of Administrative Expense Claims for professional fees and expenses.

10.5.7. <u>Costs, Fees and Expenses of the Liquidation Trust</u>. Compensation and expenses of the Liquidation Trustee and the costs and expenses of the Liquidation Trust, including the fees and expenses of its retained professionals, shall be paid out of the Liquidation Trust Assets, which payments shall not require approval or an order of the Bankruptcy Court. Fees and expenses incurred in connection with the prosecution, defense and/or settlement of any Disputed Claims or Causes of Action shall be considered costs and expenses of the Liquidation Trust. The Liquidation Trustee may deduct and/or reserve for all fees expenses reasonably incurred by the Liquidation Trustee or its professionals in administering, preserving, or maintaining the Liquidation Trust Assets from such Assets or the proceeds of such Assets before making any Distribution to Liquidation Trust Beneficiaries.

10.5.8. <u>Exculpation and Limitation of Liability</u>. With respect to administering the Liquidation Trust and performing under the Liquidation Trust Agreement, this Plan, and the Confirmation Order, the Liquidation Trustee, the Creditor Representatives, their respective employees, members, designees, professionals, agents, representatives, successors and assigns (collectively, the "<u>Liquidation Trust Exculpated Parties</u>") shall not be liable for any act or omission of any other Liquidation Trust Exculpated Party, nor shall any Liquidation Trust Exculpated Party be liable for any act or omission by that Liquidation Trust Exculpated Party, other than for specific acts or omissions resulting from that Liquidation Trust Exculpated Party's willful misconduct, gross negligence or fraud. The Liquidation Trustee and the Creditor Representatives may, in connection with performing their respective functions, and in their sole and absolute discretion (collectively or individually), consult with their respective attorneys, accountants, financial advisors and agents, and shall not be liable for any act or omission in accordance with advice or opinions rendered by such persons, regardless of whether the advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidation Trustee nor the Creditor Representatives shall be under any obligation to consult with their attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidation Trustee or Creditor Representatives or their respective members or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. Except as expressly provided herein, no recourse shall ever be had directly or indirectly against the Liquidation Trustee personally or against any employee, agent or professional of the Liquidation Trustee by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee pursuant to this Plan, or by

reason of the creation of any indebtedness by the Liquidation Trustee for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Liquidation Trustee or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Liquidation Trust Assets and every undertaking, contract, covenant or agreement entered into in writing by the Liquidation Trustee shall provide expressly against the personal liability of the Liquidation Trustee.

10.5.9. Indemnification; Insurance. The Liquidation Trustee shall be indemnified and held harmless, including the costs of defending such claims, by the Liquidation Trust against any and all claims arising out of the performance of its duties under the Plan, except to the extent its actions constitute actual fraud, gross negligence or willful misconduct. Nothing herein shall preclude the Liquidation Trustee from asserting as a defense to any Claim of actual fraud, gross negligence or willful misconduct that it reasonably relied upon the advice of counsel with respect to its duties and responsibilities. The Liquidation Trustee may obtain, at the expense of the Liquidation Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligation of the Liquidation Trust. The Liquidation Trustee may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party. The Liquidation Trustee may rely upon written information previously generated by the Debtors

10.5.10. Distributable Cash; Investment. All Cash held by the Liquidation Trustee in any accounts or otherwise shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by Order of the Bankruptcy Court; *provided, however*, that such investments shall be investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

10.5.11. Standing. The Liquidation Trustee shall have the right and standing to appear in the Bankruptcy Court or any other court of competent jurisdiction and be heard on any matter relating to the interpretation or implementation of the Plan or the Liquidation Trust Agreement or any of the Assets or Causes of Action which are to be transferred to it under the Plan.

10.5.12. Dissolution. The Liquidation Trustee and the Liquidation Trust shall be discharged and dissolved, respectively, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and the Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in his sole discretion, that the administration of the Liquidation Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, and (iii) all distributions required to be made by the Liquidation Trustee under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion at least one (1) month prior to the end of an extension period, determines that an extension (not to exceed three years,

together with any prior extensions, without an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a grantor trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. If at any time the Liquidation Trustee determines, in reliance upon such professionals as he may retain, that the expense of administering the Liquidation Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the remaining Liquidation Trust Assets, the Liquidation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Liquidation Trust, (ii) donate any balance to a charitable organization described in 28 U.S.C. § 501(c)(3) and exempt from United States federal income tax under 28 U.S.C. § 501(a) that is unrelated to the Debtors, the Liquidation Trust, the Liquidation Trustee and any of their insiders, and (iii) dissolve the Liquidation Trust.

10.6.   _Appointment of the Creditor Representatives_. Prior to the Confirmation Hearing, the Committee shall appoint up to three Committee Members to serve as Creditor Representatives under the Liquidation Trust Agreement. In the event a Committee Member is no longer willing or able to serve as the Creditor Representative, then the remaining Creditor Representatives may thereafter appoint any other Committee Member to serve as successor Creditor Representative by providing notice to the Liquidation Trustee. The Liquidation Trustee shall file notice of such appointment with the Bankruptcy Court. The Creditor Representatives shall: (i) have access to all reports, documents, memoranda and other work product of the Liquidation Trustee related to the Causes of Action and the Liquidation Trust Assets, and, to the extent such items are subject to any privilege or protection against disclosure, the Creditor Representatives and Liquidation Trustee shall be deemed to be subject to the common interest privilege, (ii) have the right to monitor the actions of the Liquidation Trustee and to receive status reports, upon reasonable request, from the Liquidation Trustee as to the status of the litigation, settlement, administration and pursuit of the Causes of Action, (iii) have the right of reimbursement from the Liquidation Trust Assets of any reasonable and necessary expenses incurred in connection with serving as Creditor Representatives under the Liquidation Trust Agreement, and (iv) have the right to monitor and receive periodic reports and updates, as reasonably requested, from the Liquidation Trustee regarding the status of the administration of the Liquidation Trust Assets, including the Causes of Action, and the Assets, liabilities and transfers of the Liquidation Trust. In the event no member of the Committee is willing to serve as Creditor Representative, or there shall have been no Creditor Representatives for a period of thirty (30) consecutive days, then such position shall be deemed null, and void and the Liquidation Trustee will continue to administer the Liquidation Trust under and subject to advice of counsel and the terms of the Liquidation Trust Agreement.

10.7.   _Direction to Parties_. From and after the Effective Date, the Liquidation Trustee may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to Bankruptcy Code section 1142(b).

10.8.    <u>Winding Up Affairs</u>. Following the Effective Date, the Debtors shall not engage in any business activities or take any actions, except those necessary to consummate the Plan and wind up the affairs of the Debtors. On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

10.9.    <u>Books and Records</u>. On or as soon as reasonably practicable after the Effective Date, the Debtors shall transfer, or cause to be transferred, dominion and control over its books and records, in whatever form, to the Liquidation Trustee.

**ARTICLE 11**
**<u>EFFECT OF CONFIRMATION OF PLAN</u>**

11.1.    <u>Term of Bankruptcy Injunction or Stays</u>. Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the dissolution of the Liquidation Trust.

11.2.    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against the Debtors and/or their Estates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (and any such actions or proceedings currently pending must promptly be dismissed), (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtor or against the property of the Debtors, (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action which are extinguished, dismissed or released pursuant to the Plan. Such injunction shall extend to the Liquidation Trust and the Liquidation Trust Assets.

**ARTICLE 12**
**<u>EFFECTIVENESS OF THE PLAN</u>**

12.1.    <u>Conditions Precedent to Effective Date</u>. The following are conditions precedent to the Effective Date of the Plan unless waived by the Plan Proponents pursuant to Section 12.2 of the Plan:

(a) The Bankruptcy Court shall have entered the Confirmation Order which shall be in form and substance reasonably satisfactory to the Plan Proponents;

-28-

(b) No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in this Section 12.1 are satisfied or waived;

(c) Execution and delivery of the Liquidation Trust Agreement, in form and substance satisfactory to the Committee, shall have occurred, as well as the occurrence of all conditions precedent to the effectiveness of the Liquidation Trust Agreement;

(d) delivery or effectuation of all other documents or agreements necessary to consummate the Plan shall have occurred;

(e) appointment of the Liquidation Trustee by the Plan Proponents upon notice to the Bankruptcy Court shall have occurred; and

(f) There shall exist sufficient Available Cash to satisfy all Effective Date obligations.

12.2.    <u>Waiver of Conditions</u>. The Plan Proponents may waive one or more of the conditions precedent set forth in Section 12.1 of the Plan.

12.3.    <u>Establishing the Effective Date</u>. The calendar date to serve as the Effective Date shall be a Business Day, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Plan Proponents. On or within three (3) Business Days of the Effective Date, the Debtor or Liquidation Trustee shall file and serve a notice of occurrence of the Effective Date.

**ARTICLE 13**
**RETENTION OF JURISDICTION**

13.1.    <u>Jurisdiction of Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Bankruptcy Code sections 105(a) and 1142 and for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of any Claims resulting therefrom;

(b) To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan;

(c) To hear and determine any objections to Administrative Expense Claims or Claims;

(d) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e) To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by Bankruptcy Code section 1142;

(f) To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g) To hear and determine all applications for compensation and reimbursement of expenses of professionals under Bankruptcy Code sections 330, 331 and 503(b);

(h) To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(i) To hear and determine matters and issue and enforce orders concerning the recovery all Assets of the Debtor, the Liquidation Trust, and property of the Debtors' Estates, wherever located;

(j) To hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(k) To hear and determine any requests by the Liquidation Trust to sell any Asset pursuant to Bankruptcy Code section 363;

(l) To hear any other matter not inconsistent with the Bankruptcy Code;

(m) To issue such orders as may be necessary or appropriate to expand or otherwise modify the powers and duties of the Liquidation Trustee; and

(n) To enter a final decree closing the Chapter 11 Case.

### ARTICLE 14
### MISCELLANEOUS PROVISIONS

14.1.   <u>Bar Date for Administrative Expense Claims</u>. The Confirmation Order will establish an Administrative Expense Claims bar date for filing Administrative Expense Claims other than for professional compensation and reimbursement claims incurred between December 30, 2022, and the Effective Date (which are governed by Section 2.3 of the Plan). Holders of Administrative Expense Claims not paid between December 30, 2022, and the Effective Date shall submit proofs of Claim on or before such Administrative Expense Claims bar date, or they shall be forever barred from doing so and their Administrative Expense Claims shall be deemed disallowed. The notice of Plan confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of such Administrative Expense Claims bar date. The Liquidation Trustee shall have ninety (90) days following the Effective Date (or such longer period as may be Allowed by order of the Bankruptcy Court) to review and object to all

Administrative Expense Claims submitted between the Petition Date and the Effective Date before a hearing to determine allowance of such Administrative Expense Claims.

14.2.    <u>Effectuating Documents and Further Transactions</u>. The Plan Proponents and Liquidation Trustee are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.3.    <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp or similar tax.

14.4.    <u>Limited Exculpation</u>. Neither the Debtors, the Creditors' Committee, the Liquidation Trustee, any Creditor Representative, nor any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the sale of the Debtors' Assets pursuant to Bankruptcy Code section 363, the negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for a breach of fiduciary duty, willful misconduct or gross negligence, and, in all respects, the Debtors, the Creditors' Committee, the Liquidation Trustee, any Creditor Representative, and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of doubt, nothing herein shall limit or affect any liability that the foregoing Persons may have with respect to acts or omissions arising or occurring prior to the Petition Date.

14.5.    <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Liquidation Trustee shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of all professional persons employed in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution and/or settlement of Causes of Action, or any other matters as to which such professionals are employed.

14.6.    <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter. The Liquidation Trustee shall prepare and submit such post-confirmation reports as may be required.

14.7.    <u>Amendment or Modification of the Plan</u>. Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Plan Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and the Plan Proponents shall have complied with Bankruptcy Code section 1125. The Plan may be

altered, amended or modified by the Plan Proponents at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Bankruptcy Code sections 1122 and 1123 and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Bankruptcy Code section 1129, and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Plan Proponents may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of holders of Claims.

14.8.   Severability. In the event that the Bankruptcy Court determines that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the re-solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

14.9.   Revocation or Withdrawal of the Plan. The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

14.10.   Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

14.11.   Notices. All notices, requests and demands to or upon the Plan Proponents to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

*If to the Debtors:*

Jeffrey D. Goetz, Esq.
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
Tel: (515) 246-5817

Fax: (515) 246-5808
goetz.jeffrey@bradshawlaw.com
roussell.tirzah@bradshawlaw.com
 - and -

Krystal R. Mikkilineni
Tirzah R. Roussell
Dentons Davis Brown
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com
tirzah.roussell@dentons.com

*If to the Creditors' Committee or Liquidation Trustee*

Francis J. Lawall
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Tel: (215) 981-4481
Fax: (215) 689-4693
francis.lawall@troutman.com

- and –

Deborah Kovsky-Apap
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Tel: (248) 359-7331
Fax: (313) 731-1572
deborah.kovsky@troutman.com


    14.12.   <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa, without giving effect to the principles of conflicts of law of such jurisdiction.

    14.13.   <u>Revised Bankruptcy Rule 2002 Service List</u>. After the Effective Date, any Entities or Persons that want to continue to receive notice in this Chapter 11 Case must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002 no later than thirty (30) days after the Effective Date. To the extent a renewed request is not timely

filed with the Bankruptcy Court, the Liquidation Trustee is authorized to limit notice and not include such Entities or Persons on any post-Effective Date Bankruptcy Rule 2002 service list.

14.14.    Withholding and Reporting Requirements. In connection with the consummation of the Plan, the Debtors and Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

14.15.    Headings. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

14.16.    Exhibits/Schedules. Any exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

14.17.    Filing of Additional Documents. On or before substantial consummation of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.18.    Plan Controls. To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of this Plan shall be controlling.

14.19.    Section 1125(e) of the Bankruptcy Code. The Plan Proponents have and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.20.    Return of Deposits. Unless the Plan Proponents have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all deposits provided by the Debtors to any Person or Entity at any time shall be returned to the Liquidation Trust within twenty-one (21) days after the Effective Date, without deduction or offset of any kind.

14.21.    Destruction of Documents. The Liquidation Trust may, from and after the Effective Date and without further approval of the Bankruptcy Court, destroy, or arrange for the destruction of, those documents in their possession, custody or control that it reasonably determines are no longer necessary to the implementation and consummation of the Plan, the pursuit of Causes of Actions and/or the Claims resolution process.

14.22.    Final Decree and Closing of Chapter 11 Case. The Liquidation Trustee shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court such documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

**QHC FACILITIES, LLC**


_/s/_Mark Hidlebaugh_
Mark Hidlebaugh
CEO/Managing Member

## <u>SCHEDULE 9.1</u>

1. All Causes of Action against former shareholders, officers, and directors.
2. All Causes of Action against Blue Care Homes, LLC, and its management for breach of prior agreements.
3. All preference claims listed as transfers in the Debtors' Statement of Financial Affairs and Schedules.
4. All Causes of Action against Cedar Healthgroup, LLC.
5. Any other Causes of Action set forth in the Debtors' Statement of Financial Affairs and Schedules.