**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-01643-als11 |
| **QHC FACILITIES**, *et al.*[1] | ) | Jointly Administered |
| | ) | |
| Debtors and Debtors in Possession | ) | Hon. Anita L. Shodeen |
| | ) | |
| | ) | **JOINT PLAN OF LIQUIDATION BY THE** |
| | ) | **DEBTORS AND OFFICIAL COMMITTEE** |
| | ) | **OF UNSECURED CREDITORS UNDER** |
| | ) | **CHAPTER 11 OF THE BANKRUPTCY** |
| | ) | **CODE** |
| | ) | |

**Dated: January 19, 2023**

**FOR THE DEBTORS**

**BRADSHAW FOWLER PROCTOR &**
**FAIRGRAVE, P.C.**

Jeffrey D. Goetz, Esq., AT0002832
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

-and-

**DENTONS DAVIS BROWN**

Krystal R. Mikkilineni, AT0011814
Tirzah R. Roussell, AT0014113

**FOR THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS**

**TROUTMAN PEPPER HAMILTON**
**SANDERS LLP**

Francis J. Lawall (admitted *pro hac vice*)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
francis.lawall@troutman.com

Deborah Kovsky-Apap (admitted *pro hac vice*)
4000 Town Center, Suite 1800
Southfield, MI 48075
deborah.kovsky@troutman.com

-and-

---

[1] The Jointly Administered Debtors in this proceeding are *In re QHC Management, LLC* (Case No. 21-01644-als11), *In re QHC Mitchellville, LLC* (Case No. 21-01645-als11), *In re QHC Winterset North, LLC* (Case No. 21-01646-als11), *In re QHC Madison Square, LLC* (Case No. 21-01647-als11), *In re QHC Fort Dodge Villa, LLC* (Case No. 21-01648-als11), *In re Crestridge, Inc.* (Case No. 21-01649-als11), *In re Crestview Acres, Inc.* (Case No. 21-01650-als11), *In re QHC Humboldt North, LLC* (Case No. 21-01651-als11), *In re QHC Humboldt South, LLC* (Case No. 21-01652-als11) and *In re QHC Villa Cottages, LLC* (Case No. 21-01653-als11).

The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com
tirzah.roussell@dentons.com

*Counsel to the Debtors*

**CUTLER LAW FIRM**
Robert C. Gainer
1307 50th St.
West Des Moines, IA 50266
Tel: (515) 223-6600
Fax:(515) 223-6787
rgainer@cutlerfirm.com

*Counsel to the Official Committee of
Unsecured Creditors*

# TABLE OF CONTENTS

**ARTICLE 1 DEFINITIONS AND CONSTRUCTION OF TERMS** ........................... 1

**ARTICLE 2 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS** ........................................................ 8

**ARTICLE 3 CLASSIFICATION OF CLAIMS** ............................................. 10

**ARTICLE 4 TREATMENT OF CLAIMS** ................................................... 11

**ARTICLE 5 ACCEPTANCE OR REJECTION OF THE PLAN** ........................... 15

**ARTICLE 6 PROVISIONS GOVERNING DISTRIBUTIONS** .............................. 16

**ARTICLE 7 PROCEDURES FOR RESOLVING AND TREATING DISPUTED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS** .............. 18

**ARTICLE 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............. 19

**ARTICLE 9 CAUSES OF ACTION** ........................................................ 20

**ARTICLE 10 MEANS FOR IMPLEMENTATION OF THE PLAN** ....................... 21

**ARTICLE 11 EFFECT OF CONFIRMATION OF PLAN** ................................. 28

**ARTICLE 12 EFFECTIVENESS OF THE PLAN** .......................................... 28

**ARTICLE 13 RETENTION OF JURISDICTION** ........................................... 29

**ARTICLE 14 MISCELLANEOUS PROVISIONS** ........................................... 30

**INTRODUCTION**

The Debtors and the Committee, as co-Plan Proponents, hereby propose the following plan of liquidation under Bankruptcy Code sections 1121(a) and 1123. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan constitutes a liquidating chapter 11 plan for the Debtors. The Plan provides for the substantive consolidation of the Debtors assets and liabilities for purposes of the Plan, including all distributions hereunder. The Plan contemplates the creation of a Liquidation Trust, which will be administered by the Liquidation Trustee. The Liquidation Trustee will, among other things, liquidate the Debtors' remaining Assets, evaluate, pursue or settle potential Causes of Action, as appropriate, review the universe of Claims in this Chapter 11 Case, fix the Allowed amount of those Claims, and then make distributions to the Liquidation Trust Beneficiaries. Once the Liquidation Trustee liquidates all Assets, fixes all Claims, and conveys all distributions, the Liquidation Trustee will dissolve the Liquidation Trust pursuant to the terms of this Plan.

**ARTICLE 1**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

Definitions. As used herein, the following terms have the respective meanings specified below:

1.1.    Administrative Expense Claim means any right to payment under Bankruptcy Code section 503(b), and any fees or charges assessed against the Estates of the Debtors under section 1930 of chapter 123 of Title 28 of the United States Code.

1.2.    Affiliate has the meaning ascribed to such term in Bankruptcy Code section 101(2).

1.3.    Allowed means, with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim listed on Schedule 1.3 to this Plan, in the amount and as classified on such schedule, which schedule may be amended from time to time in the discretion of the Plan Proponents up to five (5) days prior to the Voting Deadline, or (c) any Claim that is deemed "Allowed" in writing by the Plan Proponents or Liquidation Trust or by order of the Bankruptcy Court; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder solely by virtue of such order.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, punitive damages or any fine or penalty on such Administrative Expense Claim or Allowed Claim from and after the Petition Date. For purposes of determining the amount of

an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold or assert against the holder thereof, to the extent such claim may be set off pursuant to Bankruptcy Code sections 502(d) or 553.

1.4.    Assets means all assets of the Debtors' Estates, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Bankruptcy Code section 541, including Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

1.5.    Available Cash means all Cash of the Debtors' Estates to be distributed to the holders of Allowed Claims in accordance with the Plan, including those net recoveries realized from the prosecution and/or settlement of Causes of Action held by the Debtors or the Liquidation Trust, less (i) the Estimated Liquidation Expenses and (ii) the amount of Cash to be retained for the payment of Disputed Claims, from time to time; *provided*, *however*, that Available Cash shall not include collateral security or any proceeds of Collateral securing any Allowed Secured Claims.

1.6.    Ballot means the form distributed to each holder of an impaired Claim on which is to be indicated acceptance or rejection of the Plan.

1.7.    Bankruptcy Code means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*), as amended from time to time, as applicable to the Chapter 11 Case.

1.8.    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of Iowa having jurisdiction of and over the Chapter 11 Cases and, in the event the reference to the Bankruptcy Court is withdrawn, to the District Court for the Southern District of Iowa for the matter that is withdrawn.

1.9.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended.

1.10.    Blue Care means Blue Care Homes LLC.

1.11.    Blue Care Sale Order means the Order Authorizing (I) the Sale Of The Debtors' Assets Free And Clear Of Liens, Claims And Encumbrances; (II) The Assumption And Assignment of Certain Executory Contracts And Unexpired Leases; And (III) Approving the Settlement Agreement With The United States, which was entered on November 2, 2002.

1.12.    Blue Care APA means the APA as defined in and approved by the Blue Care Sale Order.

1.13.    Business Day means any day other than: Saturday, Sunday, any day on which commercial banks in Des Moines, Iowa are required or authorized to close by law or executive order, and the Friday after Thanksgiving.

1.14.    <u>Cash</u> means legal tender of the United States of America or wire transfer from a domestic bank.

1.15.    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action including Creditor Causes of Action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, avoidance actions arising under Chapter 5 of the Bankruptcy Code.

1.16.    <u>Chapter 11 Cases</u> means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors and jointly administered as *In re QHC Facilities, LLC et. al.,* Chapter 11 Case No. 21-01643-als11, currently pending before the Bankruptcy Court.

1.17.    <u>Claim</u> has the meaning set forth in Bankruptcy Code section 101(5).

1.18.    <u>Claims Objection Deadline</u> means the first Business Day that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by Order of the Bankruptcy Court upon motion of the Liquidation Trustee.

1.19.    <u>Class</u> means a category of holders of Claims as set forth in Article 3 of the Plan.

1.20.    <u>Collateral</u> means any property or interest in property of the Estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or otherwise invalidated under the Bankruptcy Code or applicable non-bankruptcy law.

1.21.    <u>Petition Date</u> means December 29, 2021, the date on which the Debtors commenced the Chapter 11 Cases.

1.22.    <u>Confirmation Date</u> means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.23.    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.24.    <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

1.25.    <u>Creditors' Committee</u> means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102.

1.26.    <u>Committee Members</u> means the current and any former members of the Creditors' Committee, each in their capacity as a member of the Creditors' Committee.

1.27.    Creditor Representative means a Committee Member or other Person selected by the Committee to serve as Creditor Representative.

1.28.    Debtor(s) means QHC Facilities, LLC, QHC Management, LLC, QHC Mitchellville, LLC, QHC Winterset North, LLC, QHC Madison Square, LLC, QHC Fort Dodge Villa, LLC, Crestridge, Inc., Crestview Acres Inc., QHC Humboldt North, LLC, QHC Humboldt South, LLC, and/or QHC Villa Cottages, LLC.

1.29.    Debtor(s) in Possession means one or more of the Debtors in its or their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

1.30.    Disbursing Agent means the Liquidation Trustee; *provided*, *however*, that the Liquidation Trustee may, in its discretion, retain a third party to act as Disbursing Agent.

1.31.    Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

1.32.    Disputed means every Claim which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent or which is not listed in the Debtors' Schedules, or which is disputed under the Plan or as to which any party in interest, including the Plan Proponents or the Liquidation Trust, has interposed a timely objection and/or request for estimation in accordance with Bankruptcy Code section 502(c) and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed. A Claim that is Disputed as to its amount only, shall be deemed Allowed in the amount the Debtors admit is owing, if any, and Disputed as to the excess. Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that (i) the amount of the Claim specified in a proof of Claim exceeds the amount listed in the Schedules and/or (ii) the Claim is classified differently in the proof of Claim than in the Schedules. To the extent an objection to the allowance of only a portion of a Claim has been timely filed, such Claim shall be a Disputed Claim only to the extent of the portion subject to objection.

1.33.    Disputed Claim Amount means the amount set forth in the proof of Claim relating to a Disputed Claim or, if an amount is estimated in respect of a Disputed Claim in accordance with Bankruptcy Code section 502(c) and Bankruptcy Rule 3018, the amount so estimated pursuant to an order of the Bankruptcy Court.

1.34.    Effective Date means the first Business Day on which all conditions in Article 12 of the Plan have been satisfied or waived in accordance with the Plan.

1.35.    Entity shall have the meaning set forth in Bankruptcy Code section 101(15).

1.36.   <u>Equity Interest</u> means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date.

1.37.   <u>Estates</u> means the estates created by the commencement of the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code section 541.

1.38.   <u>Estimated Liquidation Expenses</u> means the amount of Cash estimated by the Liquidation Trustee, from time to time, as necessary to fund adequately the liquidation of the remaining Assets and the winding up of the Liquidation Trust.

1.39.   <u>Filing Date</u> means December 29, 2021, which is the date the Debtors filed their voluntary chapter 11 petitions.

1.40.   <u>Final Distribution Date</u> means the date on which a final distribution of Available Cash is made pursuant to Article 6 of the Plan. The Final Distribution Date shall be a date, as determined by the Liquidation Trustee, (i) which is after the liquidation into Cash of all Liquidation Trust Assets (other than those Assets abandoned by the Liquidation Trustee) and the collection of other sums due or otherwise remitted or returned to the Liquidation Trust, and (ii) after the final resolution of all Disputed Claims.

1.41.   <u>Final Order</u> means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Liquidation Trust, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.42.   <u>First Distribution Date</u> means that date which is ninety (90) days after the Effective Date; unless the Liquidation Trustee determines, in his or her reasonable discretion, that an extension of such deadline is necessary to ensure an efficient and economical distribution to creditors.

1.43.    <u>General Unsecured Claim</u> means any Claim other than an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Secured Tax Claim, Other Secured Claim, Subordinated Claim, or Intercompany Claim.

1.44.    <u>Intercompany Claim</u> means a Claim held by a Debtor against another Debtor.

1.45.    <u>Lien</u> has the meaning set forth in Bankruptcy Code section 101(37).

1.46.    <u>Liquidation Trust</u> means that certain trust established pursuant to Article 10 of the Plan and the Liquidation Trust Agreement.

1.47.    <u>Liquidation Trust Agreement</u> means the trust agreement that, among other things, creates and establishes the Liquidation Trust, describes the powers, duties and responsibilities of the Liquidation Trustee, provides for the liquidation and distribution of proceeds of the Liquidation Trust Assets, and describes the powers, duties and responsibilities of the Creditor Representatives, which trust agreement shall be substantially in the form filed in the Plan Supplement.

1.48.    <u>Liquidation Trust Assets</u> means all Assets of the Debtors' Estates as of the Effective Date, including, without limitation, the Causes of Action and all rights of setoff and recoupment and other defenses that the Debtors and their Estates may have with respect to any Claim.

1.49.    <u>Liquidation Trust Beneficiaries</u> means holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed General Unsecured Claims.

1.50.    <u>Liquidation Trustee</u> means the individual identified prior to noticing out the Disclosure Statement as being initially selected by the Debtors and the Creditors' Committee to act as trustee of the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement to administer the Liquidation Trust, and any successors thereto.

1.51.    <u>Management Agreement(s)</u> means those management agreements identified in the Blue Care APA and Blue Care Sale Order entered into between Blue Care and the Debtors on March 28, 2022, including any and all amendments thereto.

1.52.    <u>Other Priority Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a), but only to the extent entitled to such priority.

1.53.    <u>Other Secured Claim</u> means any Secured Claim other than Secured Tax Claims.

1.54.    <u>Person</u> shall have the meaning set forth in Bankruptcy Code section 101(41).

1.55.    Plan means this joint chapter 11 plan of liquidation, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.56.    Plan Supplement means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Plan Proponents no later than three (3) calendar days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Plan Proponents.

1.57.    Plan Proponents means collectively, the Debtors and the Creditors' Committee.

1.58.    Post-petition Interest means interest, commencing on the Petition Date, on the then outstanding principal amount of an Allowed Claim, at an annual rate equal to the federal judgment rate in effect on the Petition Date.

1.59.    Priority Tax Claim means any Claim of a governmental unit of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8) that is not a Secured Tax Claim.

1.60.    Pro Rata Share means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

1.61.    Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through and including the Claims Objection Deadline.

1.62.    Secured Claim means any Claim, to the extent reflected in the Debtors' Schedules or a proof of Claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Bankruptcy Code section 506(a), or, in the event that such Claim is subject to a permissible setoff under Bankruptcy Code section 553, to the extent of such permissible setoff, including, without limitation, Secured Tax Claims and Other Secured Claims.

1.63.    Secured Tax Claim means any Secured Claim of a governmental unit arising from unpaid taxes that is secured by a Lien on property arising from operation of a statute.

1.64.    Settlement Agreement means that certain settlement agreement between Blue Care and the Debtors as approved by the Blue Care Sale Order.

1.65.    <u>Subordinated Claim</u> means a Claim that is subordinated pursuant to section 510(b) of the Bankruptcy Code.

1.66.    <u>Subsequent Distribution Date</u> means any date, as determined by the Liquidation Trustee, which is after the First Distribution Date and prior to the Final Distribution Date, but no more frequently than quarterly, on which a distribution of Cash is made to the holders of Allowed Claims in accordance with Article 6 of the Plan.

1.67.    <u>Voting Deadline</u> means the deadline set by the Court for the submission of ballots to vote for or against the Plan.

1.68.    <u>Interpretation; Application of Definitions and Rules of Construction.</u> Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1.    <u>Non-Classification.</u> As provided in Bankruptcy Code section 1123(a), Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately pursuant to the terms set forth in this Article 2.

2.2.    <u>Administrative Expense Claims</u>. Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment or as otherwise provided herein, each holder of an Allowed Administrative Expense Claim (save only Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses, which are specifically addressed in Section 2.3 below) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; <u>provided,</u> however, that (i) Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor in Possession shall be paid in full and performed by the Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such

transactions[2]; and (ii) Allowed Administrative Expense Claims arising from a personal injury arising after the Filing Date shall be satisfied solely from the Debtors' post-petition general liability insurance policies.

2.3.    <u>Professional Compensation and Reimbursement Claims</u>.  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under Bankruptcy Code sections 330 or 331 or entitled to the priorities established pursuant to Bankruptcy Code sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is sixty (60) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, (i) on the later of the Effective Date and the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Liquidation Trust, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

2.4.    <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, at the option of the Plan Proponents or the Liquidation Trustee, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, (b) in accordance with Bankruptcy Code section 1129(a)(9)(C), equal annual Cash payments commencing on the first anniversary of the Effective Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest on any outstanding balance from the Effective Date at the applicable rate under non-bankruptcy law, over a period not exceeding five years after the Petition Date or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; provided, however, that the Debtors or Liquidation Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

2.4.1.    Under the Plan, no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any interest accrued on such Claims from

---

[2] Pursuant to the Blue Care Sale Order, Blue Care assumed and became obligated to timely pay all obligations incurred by the Manager and required to be paid by the Manager under the Blue Care APA and Management Agreement, and the Debtors were released from such obligations.

and after the Petition Date or other Post-petition Interest or penalty with respect to or in connection with an Allowed Priority Tax Claim, except as expressly set forth in Section 2.4 above.

        2.4.2.   The Department of Treasury – Internal Revenue Service ("IRS") filed proofs of Claim in the following Estates: (1) QHC Villa Cottages, LLC (POC 5); (2) QHC Madison Square, LLC (POC 10); (3) QHC Management, LLC (POC 11 & 12); (4) Crestridge, Inc. (POC 17); (5) QHC Facilities, LLC (POC 19); (6) QHC Mitchellville, LLC (POC 20); (7) QHC Winterset North, LLC (POC 20); (8) Crestview Acres, Inc. (POC 22); (9) QHC Humboldt North, LLC (POC 22); (10) QHC Humboldt South, LLC (POC 22); and (11) QHC Fort Dodge Villa, LLC (POC 25). The IRS' proofs of Claim total $1,089,436.30 (the "IRS Proofs of Claim"). The Debtors are currently owed refunds (the "Refunds") from the IRS for employee retention tax credits from the first and second quarters of 2021 that are in excess of the amounts set forth in the IRS Proofs of Claim. Therefore, as of the Effective Date, the Refunds will be deemed offset against the IRS' Proofs of Claim resulting in full satisfaction of any amounts owed by the Debtors to the IRS. Any refunds owed to the Debtors in excess of the IRS Proofs of Claim will remain due and owing to the Debtors.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS

        3.1.   Classification. Generally, for voting and distribution purposes, a Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent the Claim qualifies within the description of such different Class. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class. Claims, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| **Class** | **Status** | **Voting Rights** |
| --- | --- | --- |
| Class 1 – Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 – Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 – Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 – Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 – Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Status | Voting Rights |
|---|---|---|
| Class 7 – Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

3.2. **SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES.** Prior to bankruptcy, the Webb Trust and Lincoln Savings Bank asserted secured claims in excess of $25 million against all of the Debtors' Assets. As a result of a recent Court-approved settlement reached with both creditors, the Claims of each were fully resolved, thereby benefitting creditors across all of the Debtors' Estates. Therefore, for purposes of the Plan, all remaining Assets and liabilities of the Debtors shall be deemed the Assets and liabilities of a single consolidated entity. On the Effective Date: (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Allowed Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors. Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes.

**ARTICLE 4**
**TREATMENT OF CLAIMS**

4.1. Class 1 – Other Priority Claims.

(a) Description. Class 1 consists of Claims entitled to priority under the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

(b) Treatment and Distribution. Except to the extent that a holder of an Allowed Other Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each such holder shall receive, in full and complete settlement, satisfaction and discharge of such Claim, Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

(c) <u>Impairment and Voting</u>. Class 1 is unimpaired by the Plan. Each holder of a Class 1 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.2.    <u>Class 2 – Secured Tax Claims</u>.

(a) <u>Description</u>. Class 2 consists of tax Claims secured by property of the Estates.

(b) <u>Treatment and Distributions</u>. Except to the extent that a holder of an Allowed Secured Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Secured Tax Claim, at the option of the Plan Proponents or the Liquidation Trustee, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to Bankruptcy Code section 506(b), on the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable, (ii) commencing on the first anniversary of the Effective Date and continuing on each anniversary thereafter over a period not exceeding five years after the Petition Date, equal annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the option of the Plan Proponents or the Liquidation Trustee to prepay the entire amount of the Allowed Secured Tax Claim or any remaining balance at any time, or (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

(c) <u>Retention of Liens</u>. Except to the extent that a holder of an Allowed Secured Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall retain the Liens (or replacement Liens), if any, securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Liens shall be deemed null and void and shall be unenforceable for all purposes. As to any holder of an Allowed Secured Tax Claim that has been paid prior to the Effective Date, such Liens shall be deemed null and void and shall be unenforceable for all purposes.

(d) <u>Classification</u>. Unless otherwise ordered by the Bankruptcy Court, each Allowed Secured Claim in Class 2 shall be considered a separate subclass within Class 2, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

(e) <u>Impairment and Voting</u>. Class 2 is unimpaired by the Plan. Each holder of a Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

The Plan Proponents do not believe that any Class 2 Claims exist.

  4.3. Class 3 - Other Secured Claims.

    (a) Description. Class 3 consists of the secured Claims of Persons or Entities other than taxing authorities.

    (b) Treatment and Distributions. Except to the extent that a holder of an Allowed Other Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Secured Claim, at the option of the Plan Proponents or the Liquidation Trustee, (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, or (ii) the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable.

    (c) Retention of Liens. Except to the extent that a holder of an Allowed Other Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall retain the Liens (or replacement Liens), if any, securing its Allowed Other Secured Claim as of the Effective Date until any distribution(s) shall have been made to such holder hereunder, at which time such Liens shall be deemed null and void and shall be unenforceable for all purposes. As to any holder of an Allowed Other Secured Claim that has been paid prior to the Effective Date, such Liens shall be deemed null and void and shall be unenforceable for all purposes.

    (d) Classification. Unless otherwise ordered by the Bankruptcy Court, each Allowed Other Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

    (e) Impairment and Voting. Class 3 is unimpaired by the Plan. Each holder of a Class 3 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

The Plan Proponents do not believe that any Class 3 Claims exist.

  4.4. Class 4 – General Unsecured Claims.

    (a) Description. Class 4 consists of general unsecured Claims.

(b) <u>Treatment and Distributions</u>. Except as otherwise set forth herein, the holder of an Allowed General Unsecured Claim shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Claim, (i) on the First Distribution Date, after full satisfaction of (or the establishment of an appropriate reserve therefor) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims, its Pro Rata Share of Available Cash, and (ii) on each Subsequent Distribution Date, and the Final Distribution Date, its Pro Rata Share of Available Cash; <u>provided</u>, <u>however</u>, that the aggregate distributions received pursuant to the Plan shall not exceed the amount of Allowed General Unsecured Claims plus, if applicable, Post-petition Interest thereon.  For purposes of this Plan, all Claims of the state of Iowa for Quality Assurance and Assessment Fees or similar charges ("QAAF") shall be treated and paid as Class 4 General Unsecured Claims.  Allowed General Unsecured Claims related to a personal injury which occurred and arose prior to the Filing Date shall be satisfied solely from the policies of insurance the Debtors maintained during the relevant claims period.

(c) <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

4.5.    <u>Class 5 – Subordinated Claims</u>.

(a) <u>Description</u>. Class 5 consists of Claims that are subordinated pursuant to section 510(b) of the Bankruptcy Code.

(b) <u>Treatment and Distributions</u>. On the Effective Date, or on such later date as a Claim is determined by the Bankruptcy Court to be a Subordinated Claim, each Subordinated Claim shall be extinguished. Holders of Subordinated Claims will receive no distributions under the Plan.

(c) <u>Impairment and Voting</u>. Class 5 is impaired by the Plan. Each holder of a Class 5 Claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.6.    <u>Class 6 – Intercompany Claims</u>.

(a) <u>Description</u>. Class 6 consists of Claims of any Debtor against another Debtor.

(b) <u>Treatment and Distributions</u>. On the Effective Date, all Intercompany Claims shall be extinguished. Holders of Intercompany Claims will receive no distributions under the Plan.

(c) <u>Impairment and Voting</u>. Class 6 is impaired by the Plan. Each holder of a Class 6 Claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan

4.7.    Class 7 – Equity Interests.

(a) Description. Class 7 consists of equity interests in any of the Debtors.

(b) Treatment and Distributions. On the Effective Date, all Equity Interests shall be extinguished and cancelled. Holders of Equity Interests will receive no distributions or other recovery under the Plan.

(c) Impairment and Voting. Class 7 is impaired by the Plan. Each holder of a Class 7 Equity Interest is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.8.    Effect of Bar Dates. Upon the Effective Date of the Plan, any Claim of any sort filed or asserted after the relevant bar date (deadline) for filing such Claim shall be deemed disallowed in full and with prejudice without need for further order of the Court.

# ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1.    Voting of Claims. Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article 4 of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity shall be aggregated and treated as one Allowed Claim in such Class.

5.2.    Procedure/Voting Deadline. In order for a Ballot to count, it must be (i) completed, dated, and properly executed, and (ii) delivered to the Voting Agent by first class mail, postage prepaid, or by overnight courier, to the following address: Attn: Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309 or by email to the following address: krystal.mikkilineni@dentons.com. The Voting Agent must ACTUALLY RECEIVE Ballots on or before the Voting Deadline. Except as otherwise ordered by the Bankruptcy Court or agreed to by the Debtors, a vote may not be changed once a Ballot is submitted to the Voting Agent.

5.3.    Elimination of Vacant Classes. Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

5.4.    Nonconsensual Confirmation. If any impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), the Plan Proponents reserve the right to amend the Plan in accordance with Section 14.7 hereof or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b), or both.

## ARTICLE 6
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1.    Method of Distributions Under the Plan.

(a) Distributions of Cash. All distributions under the Plan shall be made pursuant to the terms and conditions of the Plan. At the option of the Liquidation Trustee, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

(b) Delivery of Distributions. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of claim filed by such holders (or at the last known addresses of such a holder if no proof of claim is filed or if the Liquidation Trustee has been notified in writing of a change of address), except as provided below. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidation Trustee is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidation Trustee until such distributions are claimed. However, if such undeliverable distributions are not claimed within sixty (60) days following the date the distributions were initially disbursed, the persons otherwise entitled to such distributions shall have waived and forfeited all rights to such distributions. Such distributions shall be used to pay any outstanding fees and expenses of the Liquidation Trustee and its professionals, and then as an additional distribution to holders of Allowed Class 4 Claims provided there are reasonably sufficient remaining funds to do so, as determined in the Liquidation Trustee's discretion, after taking into account the cost of the distribution. For the avoidance of doubt, nothing contained in this Plan shall require the Liquidation Trustee to attempt to locate any person entitled to receive a distribution under the Plan. It is the obligation of each person claiming rights under the Plan to keep the Liquidation Trustee advised of such person's current address by sending written notice of any changes to the Liquidation Trustee.

(c) Time Bar for Distributions. Checks issued by the Liquidation Trustee in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. The Trustee, may, but shall have no obligation to reissue a distribution once the distribution check becomes void. All Claims in respect of void checks shall be discharged and forever barred.

-16-

(d) <u>Unclaimed Property</u>. Any distribution unclaimed within sixty (60) days after the last distribution to Holders of Allowed Claims in Class 4 shall be deemed "unclaimed property" under § 347 of the Bankruptcy Code. Unclaimed property shall be returned to the Liquidation Trustee and shall be distributed *pro rata* to holders of Allowed Claims in Class 4, excluding any payment to holders of Allowed Claims in Class 4 whose distributions were unclaimed.  Such unclaimed property shall not be subject to escheat or any similar law.

(e) <u>Allocation of Plan Distributions</u>. All distributions in respect of Allowed Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), with any excess allocated to the remaining portion of such Claims, if any.

6.2.    <u>Liquidation Trust Distributions</u>. The Disbursing Agent will make the distributions to Liquidation Trust Beneficiaries required under the Plan in accordance with the Liquidation Trust Agreement and in accordance with the priorities set forth in and the other provisions of the Plan.

(a) <u>Distributions Subsequent to the First Distribution Date</u>. To the extent that there is Available Cash subsequent to the First Distribution Date from, among other things, (i) the liquidation and conversion to Cash of the Liquidation Trust's Assets, (ii) the prosecution and enforcement of Causes of Action, (iii) funds no longer needed to be retained in respect of Disputed Claims in accordance with Section 7.5 of the Plan, (iv) funds no longer needed to be retained in respect of Estimated Liquidation Expenses, and/or (v) the return of undeliverable, time-barred or unclaimed distributions to holders of Allowed Claims as set forth in Section 6.1(c), the Disbursing Agent shall, on each Subsequent Distribution Date, and the Final Distribution Date, distribute to holders of Allowed General Unsecured Claims an amount of Available Cash so that after giving effect to the amounts required to be retained in respect of Disputed Claims in accordance with Section 7.5 of the Plan, holders of Allowed General Unsecured Claims shall have received in respect of such Allowed Claims the distribution that such holders would have received under the Plan in respect of such Allowed Claims on the Effective Date if (x) such Available Cash had been available for distribution on the Effective Date, and (y) such Allowed Claims had been Allowed on the Effective Date in the amounts in which they are Allowed on the Subsequent Distribution Date or the Final Distribution Date, as the case may be. Notwithstanding the foregoing, a Subsequent Distribution Date shall not be scheduled if the amount of Available Cash is less than $50,000.00, unless such would be a final distribution.

(b) <u>Remaining Available Cash</u>. If, in connection with closing the Chapter 11 Case, the Available Cash remaining is less than $25,000, the Liquidation Trustee, in its sole discretion, may donate such amount to a charity of its choice.

(c) *<u>De Minimis Distributions</u>*. No payment of Cash less than $50.00 need be made by the Liquidation Trustee in the exercise of its discretion to any holder of a Claim. Any undistributed amount shall be held over to the next Subsequent

Distribution Date or Final Distribution Date, or may be donated in accordance with Section 6.2(b), as applicable.

## ARTICLE 7
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS

7.1.    <u>Objections to and Resolution of Claims</u>. Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, the Liquidation Trustee, on and after the Effective Date, shall have the exclusive right to object to Claims. The Liquidation Trustee shall have the exclusive right to file objections and/or motions to estimate any and all Claims after the Effective Date. The Liquidation Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court. The Liquidation Trustee shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

7.2.    <u>Claims Objection Deadline</u>. The Liquidation Trustee shall file and serve any objection to any Claims, including Administrative Expense Claims, no later than the Claims Objection Deadline; *provided*, *however,* the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion (on notice) by the Liquidation Trustee.

7.3.    <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is deemed Allowed.

7.4.    <u>Estimation</u>. The Liquidation Trustee may, at any time prior to the Claims Objection Deadline, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors or Liquidation Trustee previously objected to such Claim. In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding this, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim. All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

7.5.    <u>Claims Reserve</u>. On any date that distributions are to be made under the terms of the Plan, the Liquidation Trustee shall reserve Cash equal to one-hundred percent (100%) of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, unless otherwise ordered by the Bankruptcy Court following notice to the affected Claim holder. Such Cash shall be held for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

7.6.    <u>Allowance of Disputed Claims</u>. If, on or after the Effective Date, any Disputed General Unsecured Claim is deemed Allowed, the Disbursing Agent shall, on the Subsequent Distribution Date that is at least fifteen (15) Business Days following the date on which the Disputed Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim the amount of Cash that would have been distributed to such holder under the Plan on the dates distributions previously were made to holders of Allowed General Unsecured Claims had such Claim been an Allowed Claim on such dates, which amount shall not exceed the amount of Cash reserved on account of such Claim.

7.7.    <u>Setoff and Recoupment</u>. The Liquidation Trustee shall retain the right to reduce any Claim by way of setoff and/or recoupment.

7.8.    <u>Subordination Rights Preserved</u>. All rights and claims of the Debtors to subordinate the Claim of any Beneficiary under section 510 of the Bankruptcy Code shall remain valid and enforceable and may be asserted by the Liquidation Trustee.

7.9.    <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Plan, the Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Liquidation Trustee has the right, but not the obligation, not to make a distribution until such holder has made satisfactory arrangements for payment of any such tax obligations. The Liquidation Trustee may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such holder. If the Liquidation Trustee makes such a request and the Allowed Claim holder fails to comply before the date that is 90 days after the request is made, any Claim in respect of such distribution shall be disallowed and forever barred from asserting a Claim in respect of such distribution against the Debtors, Liquidation Trustee or their property.

## ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    <u>Executory Contracts and Unexpired Leases</u>. Pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity that have not been assumed or rejected pursuant to a Bankruptcy Court order entered prior to the Confirmation Date shall be deemed rejected by the Debtors on the Confirmation Date, effective as of the Confirmation Date.

8.2.    <u>Bar Date for Filing Proofs of Claim Relating to Rejection of Executory Contracts and Unexpired Leases</u>. Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served

upon the Debtors by the earlier of (i) 30 days after the notice of Plan confirmation and (ii) such other date as may be or has already been fixed by order of the Bankruptcy Court.  All such Claims not filed within such time will be forever barred from assertion against the Debtors, their Estate and their property, or the Liquidation Trust and the Liquidation Trust Assets, as applicable.

        8.3.    <u>Retiree Benefits</u>. The Debtors do not maintain any retiree benefit plans, funds or programs, as defined in Bankruptcy Code section 1114. Accordingly, no such payments will be, or are required to be, made pursuant to Bankruptcy Code section 1129(a)(13).

        8.4.    <u>Debtors' Insurance Policies</u>. Nothing in the Plan alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Debtors' insurance policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the insurance policies.

**ARTICLE 9**
**<u>CAUSES OF ACTION</u>**

        9.1.    <u>Preservation and Retention of Causes of Action</u>. The Debtors (before the Effective Date) and the Liquidation Trustee (after the Effective Date), retain, reserve the right to and shall be deemed to have standing to assert, including after the Effective Date, any and all Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, including, without limitation, the Causes of Action set forth in **<u>Schedule 9.1</u>** appended to this Plan. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches, shall apply to such Claims or Causes of Action upon, after or as a consequence of the Confirmation Order or Effective Date. The Liquidation Trustee may pursue, abandon, settle or release any or all such Causes of Action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

        9.2.    <u>Reservation of Rights</u>. Except as specifically provided in the Plan, nothing contained in the Plan or Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim. The Debtors (before the Effective Date) and the Liquidation Trustee (post-Effective Date) shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff or other legal or equitable defenses which the Debtors held immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtors respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced. The right of the Debtors (before the Effective Date) and the Liquidation Trustee (post-Effective Date) to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant to any Causes of Action brought by the Debtors or the Liquidation Trustee shall

be entitled to assert any defense based, in whole or in part, upon Confirmation of the Plan, and Confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of the Causes of Action.

       9.3.    <u>Liquidation Trust Causes of Action</u>. All Causes of Action that the Debtors and their Estates may hold shall, on the Effective Date, automatically vest in the Liquidation Trust free and clear of liens, claims, encumbrances and interests, except for the interests of the Liquidation Trust Beneficiaries or as otherwise expressly set forth in this Plan. The Liquidation Trustee, on behalf of the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Liquidation Trust Agreement. From and after the Effective Date, the Liquidation Trustee, in accordance with Bankruptcy Code section 1123(b)(3), and on behalf of the Liquidation Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal.

       9.4.    <u>No Waiver of Privilege</u>. To effectively investigate, defend or pursue the Causes of Action and the Liquidation Trust Assets, the Debtors, the Liquidation Trust, the Creditor Representatives and the Liquidation Trustee, and all counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege. Given the common interests of the parties and the Liquidation Trust's position as successor to the Causes of Action and the Liquidation Trust Assets, sharing such information among the Debtors, the Liquidation Trust, the Creditor Representatives or their respective counsel shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.

## ARTICLE 10
## MEANS FOR IMPLEMENTATION OF THE PLAN

       10.1.    <u>Substantive Consolidation</u>. On the Effective Date, the Assets and liabilities of the Debtors shall be substantively consolidated for all purposes under the Plan, including distributions from the Liquidation Trust.

       10.2.    <u>Corporate Action</u>. On the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtors shall be deemed authorized by the Confirmation Order and shall be deemed to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, shareholders or members of the Debtors. Upon and as of the Effective Date, the current officers and directors of the Debtors shall cease to serve immediately, and the Liquidation Trustee shall have the power and authority to file any documents or take any acts contemplated by Section 10.2. Upon the Effective Date, all professionals retained by the Debtors shall be deemed to have withdrawn their appearance for the Debtors in the Chapter 11 Case, and shall be authorized to file notices of withdrawal of appearance in the

Chapter 11 Case without need for any order of the Bankruptcy Court, except that the Debtors' professionals may prepare, file and seek approval of their respective applications for final allowances of compensation and reimbursement of expenses.

10.3.    Dissolution of Debtors. Upon the Effective Date, the Debtors shall be dissolved, and any corporate action necessary to authorize such dissolution shall be deemed to have occurred. After the Effective Date, the Liquidation Trustee shall be authorized but not directed to take, in its sole and absolute discretion, all actions as reasonably practicable and necessary to evidence the dissolution of the Debtors under applicable laws, including under the laws of the jurisdictions in which the Debtors may be organized, registered, or licensed, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; *provided*, *however*, that the Liquidation Trustee shall not be compelled to take any of the foregoing action or to cancel any licenses if to do so would unduly burden the Liquidation Trust or otherwise may result in harm to the Liquidation Trust, in the sole discretion of the Liquidation Trustee. The Liquidation Trustee shall have no liability for using its discretion in connection with the foregoing.

10.4.    Dissolution of Creditors' Committee. On the Effective Date, the Creditors' Committee shall be dissolved, and the Committee Members released and discharged of any further duties and responsibilities and the retention or employment of the Creditors' Committee's professionals shall also terminate, except that the Creditors' Committee and its professionals may prepare, file and seek approval of their respective applications for final allowances of compensation and reimbursement of expenses.

10.5.    Liquidation Trust.

10.5.1. Establishment of the Liquidation Trust. On the Effective Date, the Liquidation Trust shall be established and shall become effective, and the Liquidation Trustee shall execute the Liquidation Trust Agreement, and all other necessary steps shall be taken to establish the Liquidation Trust. In the event of any conflict between the terms of this Section 10.4 and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern. The Liquidation Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidation Trust as a liquidating trust for United States federal income tax purposes.  A form of the Liquidation Trust Agreement is attached hereto as *Exhibit A*.

10.5.2. Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor in Interest. The Liquidation Trust shall be established for the primary purpose of liquidating its Assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. The Liquidation Trust shall not be considered a "business trust" for purposes of Bankruptcy Code section 101(9)(A)(v) or otherwise an entity eligible to commence or be the subject of a proceeding under the Bankruptcy Code. Accordingly, the Liquidation Trustee shall in an expeditious but orderly manner, liquidate and convert to

Cash the Liquidation Trust Assets, including the Causes of Action, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement. The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such Assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

10.5.3. <u>Vesting of Assets in the Liquidation Trust</u>. On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Assets shall vest in the Liquidation Trust and constitute Liquidation Trust Assets, free and clear of all Claims, Liens, interests and encumbrances, other than the interests of the Liquidation Trust Beneficiaries, and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidation Trust in accordance with the terms of the Plan and the Liquidation Trust Agreement. Upon the election of the Liquidation Trustee to abandon any Assets included among the Liquidation Trust Assets, such Assets shall cease to be Liquidation Trust Assets.

10.5.4. <u>Distributions and Operating Expenses</u>. The Liquidation Trustee shall distribute the Available Cash to the Liquidation Trust Beneficiaries in accordance with the Plan and the Liquidation Trust Agreement. Except as otherwise provided in the Plan or the Liquidation Trust Agreement, the timing and amount of all Distributions payable by the Liquidation Trust shall be within the sole discretion of the Liquidation Trustee. The Liquidation Trustee may reserve and use Estimated Liquidation Expenses, in such amounts as the Liquidation Trustee shall deem reasonable in its sole discretion, for the payment of expenses of the Liquidation Trust and the Liquidation Trustee, including without limitation, professional fees and expenses, costs of Distributions, the prosecution and resolution of Causes of Action and objections to Claims.

10.5.5. <u>Rights, Powers and Duties of Liquidation Trustee</u>. The Liquidation Trustee shall have the rights, powers and duties set forth in the Plan and the Liquidation Trust Agreement. Beginning on the Effective Date and continuing through the date that a final decree closing the Case is entered under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidation Trustee shall possess the rights of a party in interest under § 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Case. Furthermore, the Liquidation Trustee will be a representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute all Causes of Action and object to and/or defend against any Disputed Claims in the name of the Liquidation Trust or as necessary in the name of any Debtor(s). The Liquidation Trustee shall administer the Liquidation Trust and the

Liquidation Trust Assets and make Distributions in accordance with the Plan and the Liquidation Trust Agreement. The Liquidation Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including without limitation the following:

(a) hold the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiaries that are entitled to distributions therefrom under the Plan and to otherwise make distributions as provided for under the Plan;

(b) administer, sell, liquidate, convert to Cash and distribute all Liquidation Trust Assets as specified in the Plan and the Liquidation Trust Agreement;

(c) object to Claims, and manage, control, prosecute and/or settle on behalf of the Liquidation Trust, objections to Claims on account of which the Liquidation Trustee will be responsible (if Allowed) for making distributions under the Plan;

(d) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidation Trust;

(e) pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidation Trust Assets or any part thereof or to preserve the Liquidation Trust;

(f) open, maintain, and administer bank accounts as necessary to discharge the duties of the Liquidation Trustee under the Plan and the Liquidation Trust Agreement;

(g) file all reports required under law, including state and federal tax returns, and pay all taxes incurred in connection with the activities of the Liquidation Trust;

(h) keep or cause to be kept books containing an accounting of all receipts and disbursements of the Liquidation Trust, which shall be open to inspection by any holder of an Allowed Claim at all reasonable times;

(i) sue and be sued and represent the Debtors, the Estates and the Liquidation Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to all Causes of Action, all Disputed Claims, and any other matters concerning the Plan or the Liquidation Trust; and

(j) exercise such other powers as may be vested in the Liquidation Trust or the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, or any Final Order of the Bankruptcy Court and do all other acts that may be necessary or appropriate for the final distribution of the Liquidation Trust Assets.

10.5.6. <u>Retention of Professionals</u>. The Liquidation Trustee may retain and compensate attorneys and other professionals to assist in its duties as the Liquidation Trustee on such terms as it deems appropriate without Bankruptcy Court approval. Professionals may include legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other professionals whose retention and employment the Liquidation Trustee deems appropriate. Professionals do not need to be "disinterested" as defined by the Bankruptcy Code and may include the attorneys and financial advisors employed by any party in the Chapter 11 Cases. The Liquidation Trustee's retention of a Professional is deemed not to pose any conflict of interest, and no conflict shall exist by virtue of the filing of applications by Professionals for allowance of Administrative Expense Claims for professional fees and expenses.

10.5.7. <u>Costs, Fees and Expenses of the Liquidation Trust</u>. Compensation and expenses of the Liquidation Trustee and the costs and expenses of the Liquidation Trust, including the fees and expenses of its retained professionals, shall be paid out of the Liquidation Trust Assets, which payments shall not require approval or an order of the Bankruptcy Court. Fees and expenses incurred in connection with the prosecution, defense and/or settlement of any Disputed Claims or Causes of Action shall be considered costs and expenses of the Liquidation Trust. The Liquidation Trustee may deduct and/or reserve for all fees expenses reasonably incurred by the Liquidation Trustee or its professionals in administering, preserving, or maintaining the Liquidation Trust Assets from such Assets or the proceeds of such Assets before making any Distribution to Liquidation Trust Beneficiaries.

10.5.8. <u>Exculpation and Limitation of Liability</u>. With respect to administering the Liquidation Trust and performing under the Liquidation Trust Agreement, this Plan, and the Confirmation Order, the Liquidation Trustee, the Creditor Representatives, their respective employees, members, designees, professionals, agents, representatives, successors and assigns (collectively, the "<u>Liquidation Trust Exculpated Parties</u>") shall not be liable for any act or omission of any other Liquidation Trust Exculpated Party, nor shall any Liquidation Trust Exculpated Party be liable for any act or omission by that Liquidation Trust Exculpated Party, other than for specific acts or omissions resulting from that Liquidation Trust Exculpated Party's willful misconduct, gross negligence or fraud. The Liquidation Trustee and the Creditor Representatives may, in connection with performing their respective functions, and in their sole and absolute discretion (collectively or individually), consult with their respective attorneys, accountants, financial advisors and agents, and shall not be liable for any act or omission in accordance with advice or opinions rendered by such persons, regardless of whether the advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidation Trustee nor the Creditor Representatives shall be under any obligation to consult with their attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidation Trustee or Creditor Representatives or their respective members or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. Except as expressly provided herein, no recourse shall ever be had directly or indirectly against the Liquidation Trustee personally or against any employee, agent or professional of the Liquidation Trustee by legal or equitable proceedings or by virtue of any statute or

otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee pursuant to this Plan, or by reason of the creation of any indebtedness by the Liquidation Trustee for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Liquidation Trustee or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Liquidation Trust Assets and every undertaking, contract, covenant or agreement entered into in writing by the Liquidation Trustee shall provide expressly against the personal liability of the Liquidation Trustee.

10.5.9. <u>Indemnification; Insurance</u>. The Liquidation Trustee shall be indemnified and held harmless, including the costs of defending such claims, by the Liquidation Trust against any and all claims arising out of the performance of its duties under the Plan, except to the extent its actions constitute actual fraud, gross negligence or willful misconduct. Nothing herein shall preclude the Liquidation Trustee from asserting as a defense to any Claim of actual fraud, gross negligence or willful misconduct that it reasonably relied upon the advice of counsel with respect to its duties and responsibilities. The Liquidation Trustee may obtain, at the expense of the Liquidation Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligation of the Liquidation Trust. The Liquidation Trustee may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party. The Liquidation Trustee may rely upon written information previously generated by the Debtors

10.5.10.   <u>Distributable Cash; Investment</u>. All Cash held by the Liquidation Trustee in any accounts or otherwise shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by Order of the Bankruptcy Court; *provided, however*, that such investments shall be investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

10.5.11.   <u>Standing</u>. The Liquidation Trustee shall have the right and standing to appear in the Bankruptcy Court or any other court of competent jurisdiction and be heard on any matter relating to the interpretation or implementation of the Plan or the Liquidation Trust Agreement or any of the Assets or Causes of Action which are to be transferred to it under the Plan.

10.5.12.   <u>Dissolution.</u> The Liquidation Trustee and the Liquidation Trust shall be discharged and dissolved, respectively, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and the Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in his sole discretion, that the administration of the Liquidation Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, and (iii) all distributions required to be made by the Liquidation Trustee under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the

Effective Date unless the Bankruptcy Court, upon motion at least one (1) month prior to the end of an extension period, determines that an extension (not to exceed three years, together with any prior extensions, without an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a grantor trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. If at any time the Liquidation Trustee determines, in reliance upon such professionals as he may retain, that the expense of administering the Liquidation Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the remaining Liquidation Trust Assets, the Liquidation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Liquidation Trust, (ii) donate any balance to a charitable organization described in 28 U.S.C. § 501(c)(3) and exempt from United States federal income tax under 28 U.S.C. § 501(a) that is unrelated to the Debtors, the Liquidation Trust, the Liquidation Trustee and any of their insiders, and (iii) dissolve the Liquidation Trust.

10.6.    <u>Appointment of the Creditor Representatives</u>. Prior to the Confirmation Hearing, the Committee shall appoint up to three Committee Members to serve as Creditor Representatives under the Liquidation Trust Agreement. In the event a Committee Member is no longer willing or able to serve as the Creditor Representative, then the remaining Creditor Representatives may thereafter appoint any other Committee Member to serve as successor Creditor Representative by providing notice to the Liquidation Trustee. The Liquidation Trustee shall file notice of such appointment with the Bankruptcy Court. The Creditor Representatives shall: (i) have access to all reports, documents, memoranda and other work product of the Liquidation Trustee related to the Causes of Action and the Liquidation Trust Assets, and, to the extent such items are subject to any privilege or protection against disclosure, the Creditor Representatives and Liquidation Trustee shall be deemed to be subject to the common interest privilege, (ii) have the right to monitor the actions of the Liquidation Trustee and to receive status reports, upon reasonable request, from the Liquidation Trustee as to the status of the litigation, settlement, administration and pursuit of the Causes of Action, (iii) have the right of reimbursement from the Liquidation Trust Assets of any reasonable and necessary expenses incurred in connection with serving as Creditor Representatives under the Liquidation Trust Agreement, and (iv) have the right to monitor and receive periodic reports and updates, as reasonably requested, from the Liquidation Trustee regarding the status of the administration of the Liquidation Trust Assets, including the Causes of Action, and the Assets, liabilities and transfers of the Liquidation Trust. In the event no member of the Committee is willing to serve as Creditor Representative, or there shall have been no Creditor Representatives for a period of thirty (30) consecutive days, then such position shall be deemed null, and void and the Liquidation Trustee will continue to administer the Liquidation Trust under and subject to advice of counsel and the terms of the Liquidation Trust Agreement.

10.7.    <u>Direction to Parties</u>. From and after the Effective Date, the Liquidation Trustee may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, and to perform any other act, including

the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to Bankruptcy Code section 1142(b).

10.8.    <u>Winding Up Affairs</u>. Following the Effective Date, the Debtors shall not engage in any business activities or take any actions, except those necessary to consummate the Plan and wind up the affairs of the Debtors. On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

10.9.    <u>Books and Records</u>. On or as soon as reasonably practicable after the Effective Date, the Debtors shall transfer, or cause to be transferred, dominion and control over its books and records, in whatever form, to the Liquidation Trustee.

## ARTICLE 11
## EFFECT OF CONFIRMATION OF PLAN

11.1.    <u>Term of Bankruptcy Injunction or Stays</u>. Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the dissolution of the Liquidation Trust.

11.2.    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against the Debtors and/or their Estates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (and any such actions or proceedings currently pending must promptly be dismissed), (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtor or against the property of the Debtors, (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action which are extinguished, dismissed or released pursuant to the Plan. Such injunction shall extend to the Liquidation Trust and the Liquidation Trust Assets.

## ARTICLE 12
## EFFECTIVENESS OF THE PLAN

12.1.    <u>Conditions Precedent to Effective Date</u>. The following are conditions precedent to the Effective Date of the Plan unless waived by the Plan Proponents pursuant to Section 12.2 of the Plan:

(a) The Bankruptcy Court shall have entered the Confirmation Order which shall be in form and substance reasonably satisfactory to the Plan Proponents;

(b) No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in this Section 12.1 are satisfied or waived;

(c) Execution and delivery of the Liquidation Trust Agreement, in form and substance satisfactory to the Committee, shall have occurred, as well as the occurrence of all conditions precedent to the effectiveness of the Liquidation Trust Agreement;

(d) delivery or effectuation of all other documents or agreements necessary to consummate the Plan shall have occurred;

(e) appointment of the Liquidation Trustee by the Plan Proponents upon notice to the Bankruptcy Court shall have occurred; and

(f) There shall exist sufficient Available Cash to satisfy all Effective Date obligations.

12.2.    Waiver of Conditions. The Plan Proponents may waive one or more of the conditions precedent set forth in Section 12.1 of the Plan.

12.3.    Establishing the Effective Date. The calendar date to serve as the Effective Date shall be a Business Day, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Plan Proponents. On or within three (3) Business Days of the Effective Date, the Debtor or Liquidation Trustee shall file and serve a notice of occurrence of the Effective Date.

## ARTICLE 13
## RETENTION OF JURISDICTION

13.1.    Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Bankruptcy Code sections 105(a) and 1142 and for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of any Claims resulting therefrom;

(b) To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan;

(c) To hear and determine any objections to Administrative Expense Claims or Claims;

(d) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e) To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by Bankruptcy Code section 1142;

(f) To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g) To hear and determine all applications for compensation and reimbursement of expenses of professionals under Bankruptcy Code sections 330, 331 and 503(b);

(h) To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(i) To hear and determine matters and issue and enforce orders concerning the recovery all Assets of the Debtor, the Liquidation Trust, and property of the Debtors' Estates, wherever located;

(j) To hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(k) To hear and determine any requests by the Liquidation Trust to sell any Asset pursuant to Bankruptcy Code section 363;

(l) To hear any other matter not inconsistent with the Bankruptcy Code;

(m) To issue such orders as may be necessary or appropriate to expand or otherwise modify the powers and duties of the Liquidation Trustee; and

(n) To enter a final decree closing the Chapter 11 Case.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1.    <u>Bar Date for Administrative Expense Claims</u>. The Confirmation Order will establish an Administrative Expense Claims bar date for filing Administrative Expense Claims other than for professional compensation and reimbursement claims incurred between December 30, 2022, and the Effective Date (which are governed by Section 2.3 of the Plan). Holders of Administrative Expense Claims not paid between December 30, 2022, and the Effective Date shall submit proofs of Claim on or before such Administrative Expense Claims bar date, or they shall be forever barred from doing so and their Administrative Expense Claims shall be deemed disallowed. The notice of Plan confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set

forth such date and constitute notice of such Administrative Expense Claims bar date. The Liquidation Trustee shall have ninety (90) days following the Effective Date (or such longer period as may be Allowed by order of the Bankruptcy Court) to review and object to all Administrative Expense Claims submitted between the Petition Date and the Effective Date before a hearing to determine allowance of such Administrative Expense Claims.

14.2.    <u>Effectuating Documents and Further Transactions</u>. The Plan Proponents and Liquidation Trustee are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.3.    <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp or similar tax.

14.4.    <u>Limited Exculpation</u>. Neither the Debtors, the Creditors' Committee, the Liquidation Trustee, any Creditor Representative, nor any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the sale of the Debtors' Assets pursuant to Bankruptcy Code section 363, the negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for a breach of fiduciary duty, willful misconduct or gross negligence, and, in all respects, the Debtors, the Creditors' Committee, the Liquidation Trustee, any Creditor Representative, and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of doubt, nothing herein shall limit or affect any liability that the foregoing Persons may have with respect to acts or omissions arising or occurring prior to the Petition Date.

14.5.    <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Liquidation Trustee shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of all professional persons employed in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution and/or settlement of Causes of Action, or any other matters as to which such professionals are employed.

14.6.    <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter. The Liquidation Trustee shall prepare and submit such post-confirmation reports as may be required.

14.7.    <u>Amendment or Modification of the Plan</u>. Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Plan Proponents at any

time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and the Plan Proponents shall have complied with Bankruptcy Code section 1125. The Plan may be altered, amended or modified by the Plan Proponents at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Bankruptcy Code sections 1122 and 1123 and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Bankruptcy Code section 1129, and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Plan Proponents may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of holders of Claims.

14.8.    _Severability_. In the event that the Bankruptcy Court determines that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the re-solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

14.9.    _Revocation or Withdrawal of the Plan_. The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

14.10.    _Binding Effect_. The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

14.11.    _Notices_. All notices, requests and demands to or upon the Plan Proponents to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

_If to the Debtors:_

Jeffrey D. Goetz, Esq.
Bradshaw Fowler Proctor & Fairgrave, P.C.

801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
Tel: (515) 246-5817
Fax: (515) 246-5808
goetz.jeffrey@bradshawlaw.com
roussell.tirzah@bradshawlaw.com
 - and -

Krystal R. Mikkilineni
Tirzah R. Roussell
Dentons Davis Brown
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com
tirzah.roussell@dentons.com

*If to the Creditors' Committee or Liquidation Trustee*

Francis J. Lawall
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Tel: (215) 981-4481
Fax: (215) 689-4693
francis.lawall@troutman.com

 - and –

Deborah Kovsky-Apap
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Tel: (248) 359-7331
Fax: (313) 731-1572
deborah.kovsky@troutman.com

14.12.    <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa, without giving effect to the principles of conflicts of law of such jurisdiction.

-33-

14.13.   Revised Bankruptcy Rule 2002 Service List. After the Effective Date, any Entities or Persons that want to continue to receive notice in this Chapter 11 Case must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002 no later than thirty (30) days after the Effective Date. To the extent a renewed request is not timely filed with the Bankruptcy Court, the Liquidation Trustee is authorized to limit notice and not include such Entities or Persons on any post-Effective Date Bankruptcy Rule 2002 service list.

14.14.   Withholding and Reporting Requirements. In connection with the consummation of the Plan, the Debtors and Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

14.15.   Headings. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

14.16.   Exhibits/Schedules. Any exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

14.17.   Filing of Additional Documents. On or before substantial consummation of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.18.   Plan Controls. To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of this Plan shall be controlling.

14.19.   Section 1125(e) of the Bankruptcy Code. The Plan Proponents have and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.20.   Return of Deposits. Unless the Plan Proponents have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all deposits provided by the Debtors to any Person or Entity at any time shall be returned to the Liquidation Trust within twenty-one (21) days after the Effective Date, without deduction or offset of any kind.

14.21.   Destruction of Documents. The Liquidation Trust may, from and after the Effective Date and without further approval of the Bankruptcy Court, destroy, or arrange for the destruction of, those documents in their possession, custody or control that it reasonably determines are no longer necessary to the implementation and consummation of the Plan, the pursuit of Causes of Actions and/or the Claims resolution process.

14.22.   Final Decree and Closing of Chapter 11 Case. The Liquidation Trustee shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court such documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

**QHC FACILITIES, LLC**


*/s/ Mark Hidlebaugh*
Mark Hidlebaugh
CEO/Managing Member


Prepared by:

Jeffrey D. Goetz, Esq., AT0002832
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel for
Debtors and Debtors in Possession


*/s/ Krystal R. Mikkilineni*
Krystal R. Mikkilineni, AT0011814
Tirzah R. Roussell, AT0014113
Dentons Davis Brown, P.C.
The Davis Brown Tower
215 10th ST. Suite 1300
Des Moines, IA 50309
(515) 246-7943
krystal.mikkilineni@dentons.com
tirzah.roussell@dentons.com

*General Reorganization Co-Counsel for*
*Debtors and Debtors in Possession*


*/s/ Francis J. Lawall*

Francis J. Lawall (admitted pro hac vice)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4481
Fax: (215) 689-4693
lawallf@pepperlaw.com

Deborah Kovsky-Apap (admitted pro hac vice)
Suite 1800
4000 Town Center
Southfield, MI 48075
Tel: (248) 359-7300
Fax: (248) 359-7700
kovskyd@pepperlaw.com

Robert C. Gainer
1307 50th St.
West Des Moines, IA 50266
Tel: (515) 223-6600
Fax:(515) 223-6787
rgainer@cutlerfirm.com

*Counsel to the Official Committee
of Unsecured Creditors*

## **SCHEDULE 9.1**

1. All Causes of Action against former shareholders, officers, and directors.
2. All Causes of Action against Blue Care Homes, LLC, and its management for breach of prior agreements.
3. All preference claims listed as transfers in the Debtors' Statement of Financial Affairs and Schedules.
4. All Causes of Action against Cedar Healthgroup, LLC.
5. Any other Causes of Action set forth in the Debtors' Statement of Financial Affairs and Schedules.

## LIQUIDATION TRUST AGREEMENT

LIQUIDATION TRUST AGREEMENT, dated as of January __, 2023 (the "Agreement"), between the Debtors (as hereinafter defined),  and _____, as the trustee (the "Liquidation Trustee") of the Liquidation Trust (as defined in the *Joint Plan of Liquidation by The Debtors and Official Committee of Unsecured Creditors Under Chapter 11 of The Bankruptcy Code* (as may be amended from time to time, the "Plan") [Docket No. ____].

## RECITALS

**WHEREAS**, on December 29, 2021 (the "Petition Date") QHC Facilities and its affiliated debtors. (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court") for relief under Chapter 11 of the United States Bankruptcy Code;

**WHEREAS**, on January __, 2023, the Debtors filed the Plan with the Bankruptcy Court;

**WHEREAS**, by the Confirmation Order dated _____, 2023, the Bankruptcy Court confirmed the Plan;

**WHEREAS**, the Plan, among other things, provides for the creation of the Liquidation Trust, for the primary purpose of monetizing and distributing the "Liquidation Trust Assets" (as defined in the Plan) to the "Beneficiaries" (also as defined in the Plan);

**WHEREAS**, the purpose of the Liquidation Trust is to (a) pursue or liquidate the Liquidation Trust Assets; (b) reconcile and object to Claims, as provided for in the Plan; and (c) make distributions to the Beneficiaries in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Liquidation Trust purpose of the Liquidation Trust;

**WHEREAS**, the Liquidation Trust is to be administered by the Liquidation Trustee;

**WHEREAS**, the Liquidation Trustee has accepted such appointment and has agreed to serve in such capacity under the terms and conditions set forth in the Plan and herein;

**WHEREAS**, the Liquidation Trust is intended to qualify as a Liquidation Trust within the meaning of United States Treasury Regulations (the "Treasury Regulations") Section 301.7701-4(d), and this Agreement, the Liquidation Trust, the Confirmation Order, the Plan and the Disclosure Statement are intended to comply with the advance ruling guidelines contained in Revenue Procedure 94-45;

**NOW THEREFORE**, in consideration of the premises and mutual covenants and agreements contained herein, Debtors, the LTOC, and the Liquidation Trustee agree as follows:

# ARTICLE I

## DEFINITIONS

Section 1.1   *Certain Terms Defined*.  Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to such terms in the Plan.  As used herein, the following terms have the respective meanings specified below:

"Available Cash" shall mean all Cash held by the Liquidation Trust from time to time on and after the Effective Date.

"Claims Objections" shall mean objections, motions or adversary proceedings challenging the validity, priority, and amount of any Claims, including, without limitation, requests to recharacterize or subordinate filed or that may be filed with the Bankruptcy Court.

"Liquidation Trust" shall mean the trust created by this Agreement, the Plan, and the Confirmation Order.

"Liquidation Trust Obligations" shall mean any and all financial obligations of the Liquidation Trust, including, without limitation, the Liquidation Trust Expenses.

"Liquidation Trust Oversight Committee" shall have the meaning ascribed to such term below in Section 3.1. The Trust Oversight Committee may be referred to as the "LTOC."

"Pro Rata Share" shall mean with respect to each holder of an Allowed Claim the proportion that the amount of that holder's Allowed Claim bears to the aggregate amount of all Claims of the same Class, including Disputed Claims, but not including Disallowed Claims, (i) as calculated by the Disbursing Agent on or before any Distribution Date; or (ii) as determined by the Bankruptcy Court.

Section 1.2   *Interpretation*.  When a reference is made in this Agreement to a section or article, such reference shall be to a section or article of this Agreement unless otherwise clearly indicated to the contrary.

(a)   Whenever the words "include" "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(b)   The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, paragraph, exhibit and schedule references are to the articles, sections, paragraphs, exhibits and schedules of this Agreement unless otherwise specified.

(c)   The meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term.  Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(d)      A reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns.

(e)      A reference to any legislation or to any provision of any legislation shall include any amendment to, and any modification or reenactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(f)      When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

(g)      Any reference in this Agreement to "$" shall mean U.S. dollars.

## ARTICLE II

## CREATION/TERMINATION OF LIQUIDATION TRUST

Section 2.1      *Creation of the Liquidation Trust*.  The Liquidation Trust is hereby constituted and created, in accordance with Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, to (i) contest, object to, compromise, or settle Claims in accordance with the Plan, (ii) liquidate and monetize the Liquidation Trust Assets; (iii) make distributions under the Plan; (iv) make distributions of the proceeds of the Liquidation Trust Assets to the Beneficiaries, in all cases in accordance with Article IX of the Plan; and (v) take such other action consistent with the terms of this Agreement, the Plan, the Confirmation Order, and any other agreement executed by the Liquidation Trust and/or the Liquidation Trustee on behalf of the Liquidation Trust pursuant to the Plan, or as directed by the LTOC as is necessary and appropriate to administer and implement the Plan and this Agreement.

(a)      *Purpose of Liquidation Trust.*  The Liquidation Trust is established for the primary purpose of monetizing and distributing the Liquidation Trust Assets to the Beneficiaries, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.  Accordingly, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Liquidation Trust Assets, make timely distributions to the Beneficiaries, and not unduly prolong the duration of the Liquidation Trust.  The Liquidation Trustee shall be charged with liquidating the Liquidation Trust Assets in the most cost-effective manner possible in the shortest reasonable time, with due regard for the risk that undue haste may reduce the liquidation proceeds of any portion of the Liquidation Trust Assets, and in all instances in accordance with the Plan and the Confirmation Order.  In selling or otherwise monetizing the Liquidation Trust Assets, the Liquidation Trustee shall use commercially reasonable efforts to maximize the amount of the net proceeds derived therefrom.

(b)    This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Liquidation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidation Trustee or the Beneficiaries, or any of them, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Beneficiaries to the Liquidation Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

Section 2.2    *Appointment and Acceptance of the Liquidation Trustee*.  _____ is hereby appointed as the Liquidation Trustee, to act and serve as the trustee of the Liquidation Trust.  _____ hereby accepts the appointment as the trustee of the Liquidation Trust, and, in such capacity, agrees to hold the Liquidation Trust Assets, in trust, in accordance with the terms of this Agreement, the Plan, and the Confirmation Order, and to administer the Liquidation Trust pursuant to the terms and conditions of this Agreement, the Plan, and the Confirmation Order.

Section 2.3    *Name of the Trust*.  The trust established through the Plan, the Confirmation Order, and pursuant to this Agreement shall bear the name "QHC Liquidation Trust."  In connection with the exercise of the Liquidation Trustee's powers under this Agreement, the Liquidation Trustee may use this name or such variation thereof as the Liquidation Trustee, in the Liquidation Trustee's discretion, may determine.

Section 2.4    *Transfer of Assets to the Trust*.  Pursuant to the Plan and the Confirmation Order, on the Effective Date, all right, title, and interest in and to the Liquidation Trust Assets shall be deemed to have been irrevocably transferred, assigned, conveyed and delivered by the Debtors to the Liquidation Trust free and clear of all encumbrances, liens and Claims of any Person, but subject to the provisions of this Agreement, the Plan, and the Confirmation Order, in trust for the benefit of the Beneficiaries for the uses and purposes stated therein and herein.  The Liquidation Trust hereby accepts all such Liquidation Trust Assets free and clear of all Claims and Interests, except as provided in this Agreement, the Plan, the Confirmation Order, and agrees to hold and administer the Liquidation Trust Assets and the remainder of the Liquidation Trust for the benefit of the Beneficiaries, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order.  Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' right, title, and interest in and to the Liquidation Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

Section 2.5    *Maintenance of Cash and Proceeds*.  Funds in the Liquidation Trust shall be invested in demand-and-time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Liquidation Trust as determined by the Liquidation Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; *provided, however*, that such investments are investments permitted to be made by a "Liquidation Trust" within the meaning of Treasury Regulations Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

Section 2.6      *Fiscal Year*.  The fiscal year of the Liquidation Trust shall be the calendar year.

Section 2.7      *Termination of Liquidation Trust*.  The Liquidation Trust may be dissolved or otherwise terminated at such time as (i) all Disputed Claims have been resolved; (ii) all of the Liquidation Trust Assets have been liquidated, resolved, or abandoned pursuant to, and in accordance with, the Plan and this Agreement; (iii) all duties and obligations of the Liquidation Trust under the Plan, the Confirmation Order, and this Agreement have been fulfilled; (iv) all distributions required under the Plan and this Agreement have been made; (v) the Liquidation Trustee shall have filed a notice with the Bankruptcy Court that the foregoing conditions (i) through (iv) have been met; and (v) the Chapter 11 Cases have been closed; *provided, however*, in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court determines that a fixed period extension (not to exceed two (2) years, including any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.  Subject to the requirements of the preceding sentence, upon dissolution or termination of the Liquidation Trust, any remaining Liquidation Trust Assets may be transferred by the Liquidation Trustee to a charitable organization(s).

Section 2.8      *Creation of the Disputed Claim Reserve*.  The Liquidation Trustee may establish a Disputed Claim Reserve in accordance with the terms of the Plan.  The amount held back in the Disputed Claim Reserve shall be equal to the amount necessary to satisfy the distributions to which the holders of the relevant Disputed Claims would be entitled if all such Disputed Claims were to be subsequently Allowed.

Section 2.9      *Status of Liquidation Trust.* The Liquidation Trust will be the successor-in-interest to the Debtors with respect to the Liquidation Trust Assets.  The Liquidation Trustee shall step into the shoes of the Debtors when making distributions to the Beneficiaries, or objecting to any Disputed Claims.  The Liquidation Trustee, on behalf of the Liquidation Trust, will be the representative of the Debtors' estates and will have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in this Agreement and in the Plan and Confirmation Order when making distributions to the Beneficiaries, or objecting to any Disputed Claims.

## ARTICLE III

## LIQUIDATION TRUST OVERSIGHT COMMITTEE

Section 3.1      *Liquidation Trust Oversight Committee*.

(a)      There is hereby established and created a special advisory board (the "Liquidation Trust Oversight Committee" or "LTOC") to monitor and oversee the Liquidation Trustee and other activities required in connection with the management and distribution of the Liquidation Trust Assets, including the performance of the Liquidation Trustee's obligations under the Plan, the Confirmation Order, and this Agreement.  Subject to the provisions of Article VIII of this Agreement, the LTOC shall be responsible for any termination and replacement of the Liquidation Trustee pursuant to the terms of this Agreement.

(b)      As of the Effective Date, the members of the LTOC shall be (i) _____;
(ii) _____; and (iii) _____.  Any or all members of the LTOC may resign
from the LTOC at any time by written notice of resignation to the other members of the LTOC.
A member of the LTOC shall be deemed to be immediately removed as a member of the LTOC
in the event that a LTOC member (i) sells, transfers, or assigns all of that member's rights to or
interest in that member's Claim and no longer holds such Claim, (ii) dies, resigns, or becomes
incapacitated, (iii) otherwise fails or refuses to serve or (iv) receives all payments of its Allowed
Claim that are to be made by the Liquidation Trust.  In the event of a LTOC member's
resignation or removal, the remaining LTOC members may, but are not required to, elect a
replacement member.  In the event that there are no members of the LTOC, the Liquidation
Trustee may, but is not required to, appoint one or more Persons to serve as member(s) of the
LTOC.  There shall be no minimum number of members of the LTOC to retain its function;
*provided, however*, if there shall have been no members of the LTOC for a period of thirty (30)
consecutive days, then the Liquidation Trustee may, during such vacancy, and thereafter, ignore
any reference in the Plan, this Agreement, or the Confirmation Order to the LTOC, and all such
references in the Plan, this Agreement or the Confirmation Order shall be null and void.  Any
deadlock in a vote by the members of the LTOC may be broken by a vote cast by the Liquidation
Trustee. If the Liquidation Trustee determines not to vote, the matter shall be decided by the
Bankruptcy Court by submission of a motion on proper notice. For the avoidance of doubt, the
Liquidation Trustee shall not be entitled to vote with respect to its own removal or termination.

(c)      The Liquidation Trustee shall provide the LTOC with such reports as the
LTOC shall reasonably request from time to time.  Members of the LTOC shall not be entitled to
receive compensation for their service. The LTOC may, but shall not be required to, adopt by-
laws addressing the conduct of the LTOC.

(d)      The LTOC, any of the LTOC's members or designees, attorneys,
accountants, or other professionals, any duly designated agent or representative of the LTOC,
and the respective employees of any of the foregoing, shall not be liable for any act or omission
of any other member, designee, agent, or representative of the LTOC, nor shall any member be
liable for any act or omission taken or to be taken in that member's capacity as a member of the
LTOC, other than acts resulting from such member's intentional misconduct, actual fraud,
willful misconduct, or gross negligence.  The LTOC may, in connection with the performance of
the LTOC's functions, and in the LTOC's sole and absolute discretion, consult with counsel,
accountants, and any other professionals, and shall not be liable for any act taken, omitted to be
taken, or suffered to be done in accordance with advice or opinions rendered by such counsel,
accountants, or other professionals, regardless of whether such advice or opinions are provided
in writing.  Notwithstanding such authority, the LTOC shall be under no obligation to consult
with counsel, accountants or other professionals, and the LTOC's determinations to not do so
shall not result in the imposition of liability on the LTOC or the LTOC's members or designees,
unless such determination is based on intentional misconduct, actual fraud, willful misconduct,
or gross negligence.

## ARTICLE IV

## BENEFICIARIES

Section 4.1    *Liquidation Trust Interests*.  The QHC Beneficiaries shall have undivided beneficial interests in the QHC Liquidation Trust Assets.   The ownership of a beneficial interest in any Liquidation Trust Assets hereunder shall not entitle any Beneficiary to (a) any title in or to the Liquidation Trust Assets, (b) any right to call for a partition or division of Liquidation Trust Assets, (c) require an accounting, or (d) any management of or control of the Liquidation Trust or the Liquidation Trust Assets.

Section 4.2    *No Suits by Beneficiaries*.  No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding, at law or in equity, against any Person, including the Liquidation Trustee or LTOC, with respect to the Liquidation Trust Assets, any cause of action, or Claims Objections; *provided, however*, that a Beneficiary shall be permitted to institute in the Bankruptcy Court an action or proceeding, in law or in equity, against the LTOC or the Liquidation Trustee with respect to this Agreement, the Plan, the Confirmation Order, or the Liquidation Trust Assets for acts or omissions arising from the Liquidation Trustee's or LTOC's gross negligence, intentional misconduct, actual fraud, or willful misconduct.

Section 4.3    *Recording of Liquidation Trust Interests*.  As soon as practical after the creation of the Liquidation Trust, the Liquidation Trustee or a duly authorized agent of the Liquidation Trustee shall record all ownership and permitted transfers (if any) of interests in Liquidation Trust Assets in a register (the "Register") maintained by the Liquidation Trustee (or a duly authorized agent of the Liquidation Trustee) for such purpose.

Section 4.4    *Non-Transferability of Interests in Liquidation Trust Assets*. Interests in the Liquidation Trust Assets shall not be certificated and no physical certificates shall be issued representing such interests. Interests in the Liquidation Trust Assets shall not be transferable, assignable, pledged, sold, or hypothecated, in whole or in part, except with respect to a transfer by operation of law, by will or under the laws of descent and distribution.  Any such transfer, however, will not be effective until and unless the Liquidation Trustee receives written notice of and approves such transfer as satisfying the limited exceptions to transfer in the preceding sentence.  Other than with respect to transfers by operation of law, will or under the laws of descent and distribution, neither the Liquidation Trustee nor any Persons affiliated with the Liquidation Trust or the Debtors will take any action to cause, facilitate or encourage any trading in or transfer of interests in the Liquidation Trust Assets or support or take any action to support the establishment of an active trading market for such interests.

Section 4.5    *Notice of Change of Address; Undeliverable Property*.  Each Beneficiary shall be responsible for providing the Liquidation Trustee with written notice of any change in address.  The Liquidation Trustee is not obligated to make any effort to determine the correct address of a Beneficiary.

(a)    Subject to Bankruptcy Rule 9010 and the Plan and the Confirmation Order, all distributions under the Plan and this Agreement shall be made to the holder of each

7

Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Liquidation Trustee has been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of Claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  In the event that any distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Liquidation Trustee has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder without interest.  Undeliverable distributions shall remain in the possession of the Liquidation Trust until the earlier of (i) such time as the relevant distribution becomes deliverable and (ii) the time period specified in subsection (b) hereof.

(b)    Distributions that are unclaimed for a period of ninety (90) days after distribution thereof shall be deemed unclaimed property and shall re-vest in the Liquidation Trust and be distributed to the other Beneficiaries or used to satisfy any Liquidation Trust Expenses, in accordance with the Confirmation Order, the Plan, and this Agreement, or as otherwise ordered by the Bankruptcy Court.

Section 4.6    *Notices*. The Liquidation Trustee shall distribute such notices to the Beneficiaries as the Liquidation Trustee determines are necessary or desirable.

## ARTICLE V

## TAX AND SECURITIES MATTERS

Section 5.1    *Income Tax Status*.  The Liquidation Trust is established for the sole purpose of liquidating, monetizing, and distributing the Liquidation Trust Assets, and any proceeds therefrom, in accordance with Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business.  It is intended that the Liquidation Trust qualify as a grantor trust pursuant to Sections 671-677 of the United States Internal Revenue Code of 1986, as amended (the "Code"), or any successor provisions thereof for federal income tax purposes, and that the Beneficiaries are treated as grantors.  To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Agreement, this Agreement shall be construed so as to satisfy the requirements for Liquidation Trust status.  Except with respect to the Liquidation Trust Assets allocable to the Disputed Claim Reserve, (i) the Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Liquidation Trust, and (ii) any items of income, gain, loss, deduction and credit of the Liquidation Trust shall be allocated for United States federal income tax purposes to the Beneficiaries. The Liquidation Trust shall at all times be administered so as to constitute a domestic trust for United States federal income tax purposes.

Section 5.2    *Treatment of Liquidation Trust Assets Transfer.*  The transfer of the Liquidation Trust Assets will be treated for United States federal income tax purposes, including any amounts or other assets subsequently transferred to the Liquidation Trust (but only at such time as actually transferred), as a transfer (other than amounts set aside as Disputed Claim Reserves if the Disputed Claim Reserves are subject to any entity level tax) to the Beneficiaries, followed by a deemed transfer from such Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests; *provided, however*, that the Liquidation Trust

8

Assets will be subject to any post-Effective Date obligations incurred by the Liquidation Trust relating to the pursuit of Liquidation Trust Assets.  Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidation Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.  Subject to Article XI of the Plan, all items of income, gain, loss, deduction and credit will be included in the income of the Beneficiaries as if such items had been recognized directly by the Beneficiaries in the proportions in which they own the Liquidation Trust Interests.

       Section 5.3      *Valuation.* Except to the extent definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidation Trust as a Liquidation Trust for purposes of the Code and applicable Treasury Regulations, as soon as reasonably practicable after the Liquidation Trust Assets are transferred to the Liquidation Trust, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets.  Such valuation shall be made available from time to time to all parties to this Agreement and to all Beneficiaries, to the extent relevant to such parties for tax purposes, and subject to any lawful objection thereto, shall be used consistently by such parties for all United States federal income tax purposes, including for determining tax basis and gain or loss.  For the avoidance of doubt, the Liquidation Trustee's final valuation shall not be binding on the Beneficiaries, the Liquidation Trust or the Liquidation Trustee for any purpose other than United States federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority, and privileges of the Beneficiaries, the Liquidation Trust or the Liquidation Trustee except with respect to United States federal income tax purposes.  The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Liquidation Trust that are required by governmental unit.

       Section 5.4      *Tax Basis*.  For all United States federal income tax purposes, a distribution will be allocated to the principal amount of a Claim first and then, to the extent the distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

       Section 5.5      *Tax Identification Numbers*.  Subject to the Plan and the Confirmation Order, the Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee necessary information for tax and reporting purposes, including such Beneficiary's Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service or the Social Security Administration, as the case may be, and to complete any related documentation (including but not limited to a Form W-8 or Form W-9).  The Liquidation Trustee may condition any distribution to any Beneficiary upon the receipt of such information and the receipt of such other documents as the Liquidation Trustee reasonably requests.  If after reasonable inquiry, any Beneficiary fails to provide such identification number to the Liquidation Trustee, the Liquidation Trustee shall deem such Beneficiary's Claim as Disallowed and no distribution shall be made on account of such Beneficiary's Claim.

       Section 5.6      *Withholding Taxes*.  Subject to the Plan and the Confirmation order, any federal, state, or local withholding taxes or other amounts required to be withheld

under applicable law shall be deducted from distributions hereunder and treated as amounts distributed to such Beneficiaries for all purposes under this Agreement, the Plan, and the Confirmation Order. All Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes. If the Liquidation Trustee fails to withhold in respect of amounts received or distributable with respect to any Beneficiary and the Liquidation Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Liquidation Trustee for such liability.

Section 5.7    *Tax Returns*. The Liquidation Trustee shall file United States federal income tax returns for the Liquidation Trust as a grantor trust in accordance with Treasury Regulations Section 1.671-4 and report, but not pay tax on, the Liquidation Trust's tax items of income, gain, loss, deduction and credit, other than such tax items allocable to the Dispute Claim Reserve (the "Reserve Tax Items"). Each Beneficiary shall report such Reserve Tax Items on its United States federal income tax returns and pay any resulting United States federal income tax liability. In addition, the Liquidation Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Liquidation Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of Reserve Tax Items and will instruct each such Beneficiary to report such items on its applicable income tax return. The Liquidation Trust may provide each Beneficiary with a copy of the Form 1041 for the Liquidation Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

Section 5.8    *Expedited Determination of Taxes*. The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust under applicable law for all returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

Section 5.9    *Tax Treatment of Dispute Claim Reserves*. Notwithstanding any other provision of this Agreement to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, with respect to any Liquidation Trust Assets allocable to the Disputed Claim Reserves, the Liquidation Trustee may in the Liquidation Trustee's discretion, for United States federal income tax purposes (and to the extent permitted by law, for state and local income tax purposes), either (i) make an election to treat such assets as held in a "disputed ownership fund" within the meaning of Treasury Regulations Section 1.468B-9, or (ii) treat such assets as held in a discrete trust (which may consist of separate and independent shares) in accordance with the trust provisions of the Code (Section 641, *et seq*.). In either case, the Liquidation Trustee shall treat as taxable income or loss of such fund or separate trust with respect to each taxable year, the portion of the taxable income or loss and other tax items for such year that would have been allocated to holders of Disputed Claims had such Claims been allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved). Any separate entity level tax incurred with respect to the Disputed Claim Reserves shall be paid by the Liquidation Trustee out of the Disputed Claim Reserves. All parties (and the Beneficiaries) must report consistently with the income tax treatment determined by the Liquidation Trustee in the Liquidation Trustee's discretion.

10

Section 5.10    *Securities Laws*.  It is the intention of the parties hereto that the rights of the Beneficiaries under this Agreement and the interests in the Liquidation Trust Assets do not constitute "securities" under the Securities Act of 1933, the Securities Exchange Act of 1934, or any state securities law; however, if the rights of the Beneficiaries under this Agreement or the Liquidation Trust Interests do constitute "securities," the parties hereto intend that the exemption from registration for the issuance and distribution of the interests in the Liquidation Trust Assets provided in section 1145 of the Bankruptcy Code shall apply.  If the Liquidation Trustee determines, with the advice of counsel and approval of the LTOC, that the Liquidation Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidation Trustee shall take any and all actions reasonably necessary or appropriate to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

## ARTICLE VI

## POWERS OF AND LIMITATIONS ON THE LIQUIDATION TRUSTEE

Section 6.1    *Powers of the Liquidation Trustee*.  In connection with the administration of the Liquidation Trust, and subject to the Plan and the Confirmation Order, the Liquidation Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Liquidation Trust.  The Liquidation Trustee will act for the Liquidation Trust, subject to the provisions of the Plan, the Confirmation Order and this Agreement. On the Effective Date, the Liquidation Trustee shall succeed to all rights of the Debtors with respect to the Liquidation Trust Assets necessary to protect, conserve and liquidate all the Liquidation Trust Assets.  Without limiting, but subject to, the foregoing, subject to the Plan and the Confirmation Order, the Liquidation Trustee shall be expressly authorized to:

(a)    file, prosecute, compromise or settle Claim Objections without further approval of or application to the Bankruptcy Court;

(b)    appear and have standing in the Bankruptcy Court (or any other court having jurisdiction over the Liquidation Trust Assets) to be heard with regard to Claim Objections and other matters that may affect or relate to the Liquidation Trust Assets;

(c)    act on behalf of the Debtors, the Debtors' Estates, or the Liquidation Trust in commencing, prosecuting, compromising, settling, or defending any litigation or rights (whether legal or equitable) pertaining to the Liquidation Trust Assets, including the Retained Actions, which shall include asserting or waiving any privilege or defense on behalf of the Liquidation Trust;

(d)    receive, manage, invest, supervise, and protect the Liquidation Trust Assets, including paying taxes, if any, or other obligations incurred in connection therewith;

(e)    open and maintain bank accounts in the name of the Liquidation Trust, draw checks and drafts thereon on the sole signature of the Liquidation Trustee, and terminate such accounts as the Liquidation Trustee deems appropriate;

11

(f)     liquidate and monetize the Liquidation Trust Assets;

(g)     execute any documents and pleadings, and take any other actions related to, or in connection with, the liquidation of the Liquidation Trust Assets and the exercise of the Liquidation Trustee's powers granted by the Plan, the Confirmation Order and this Agreement, including, but not limited to, the exercise of the Debtors' rights to conduct discovery and oral examination of any person under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(h)     hold legal title to any and all rights of the Beneficiaries in or arising from the Liquidation Trust Assets;

(i)     protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by this Agreement, the Plan, and/or the Confirmation Order by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(j)     make distributions to holders of Allowed Claims and deliver distributions on account of the Liquidation Trust Interests or such other distributions as may be authorized by Final Order of the Bankruptcy Court, this Agreement, or the Plan to the Beneficiaries in accordance with this Agreement, the Plan (including the priorities set forth in Section 10.4 of the Plan), and the Confirmation Order;

(k)     file, if necessary, any and all tax returns, and make any and all related elections, with respect to the Liquidation Trust, pay taxes, if any, properly payable by the Liquidation Trust, and make distributions to the Beneficiaries net of such taxes;

(l)     request any appropriate tax determination with respect to the Liquidation Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(m)     oversee compliance with the Liquidation Trust's accounting, finance, and reporting obligations;

(n)     make any and all necessary filings in accordance with any applicable law, statute, or regulation;

(o)     determine and satisfy any and all uncontested liabilities created, incurred, or assumed by the Liquidation Trust;

(p)     pay any and all expenses and make all other payments in connection with administering the Liquidation Trust without further order of the Bankruptcy Court;

(q)     retain professionals, if any, including, without limitation, counsel, accountants, investment advisors, auditors, and other agents on behalf of the Liquidation Trust necessary or desirable to carry out the obligations of the Liquidation Trustee hereunder; *provided, however*, notwithstanding anything to the contrary herein and in accordance with the Plan and Confirmation Order, selection of any counsel to the Liquidation Trust prior to the Effective Date must be mutually acceptable to the Debtors, the Committee, and after the

12

Effective Date to the LTOC, if any.  A law firm shall not be disqualified from serving as counsel to the Liquidation Trust and/or the Liquidation Trustee solely because of that law firm's prior retention by the Debtors or Committee:

(r)     pay, without application to the Bankruptcy Court or any other court of competent jurisdiction, professionals retained by the Liquidation Trustee;

(s)     invest monies received by the Liquidation Trust or otherwise held by the Liquidation Trust in accordance with the Plan and this Agreement;

(t)     in the event that the Liquidation Trustee determines that the Beneficiaries or the Liquidation Trust may, will, or have become subject to adverse tax consequences, in the Liquidation Trustee's sole discretion, take such actions that will, or are intended to, alleviate such adverse tax consequences;

(u)     subject to applicable limitations set forth in this Agreement, utilize Liquidation Trust Assets to obtain, purchase and maintain all appropriate insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems necessary or advisable to insure the acts and omissions of the Liquidation Trustee;

(v)     exercise any and all powers granted to the Liquidation Trustee under the Plan or Confirmation Order;

(w)     to perform such other acts and undertake such other conduct as the Liquidation Trustee believes is necessary or advisable to carry out the purpose and intent of the Liquidation Trust, including maintaining its status as, or re-qualifying as, a Liquidation Trust;

(x)     execute and deliver all documents and take all actions that are not inconsistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Liquidation Trustee deems reasonably necessary to consummate the Plan or desirable to further the purposes of the Liquidation Trust; and

(y)     use, sell at public or private sale, assign, transfer, abandon or otherwise dispose of the Liquidation Trust Assets or convert the same to cash without Bankruptcy Court approval, but consistent with the provisions herein.

Section 6.2     *Limitations on Liquidation Trustee*.  The Liquidation Trustee shall not at any time, on behalf of the Liquidation Trust or the Beneficiaries, (i) enter into or engage in any trade or business, (ii) take any actions that are not related, directly or indirectly, to the purposes of this Agreement and the Liquidation Trust or the administration or implementation of the terms hereof, or that are contrary to the terms of the Plan or the Confirmation Order, (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Liquidation Trust as a Liquidation Trust within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, or (iv) take any action that would jeopardize treatment of the Liquidation Trust as a grantor trust for United States federal income tax purposes under Section 671-677 of the Code, or any successor provisions thereof, except such prohibition shall not apply with respect to the Disputed Claim Reserve.  Moreover, without the unanimous consent of the LTOC, the Liquidation Trustee shall not (i) obtain additional funding

13

for the Liquidation Trust other than the Liquidation Trust Loan; or (ii) make distributions to Beneficiaries.

Section 6.3    *Payment of Claims, Expenses and Liabilities of the Liquidation Trust*.  The Liquidation Trustee shall pay the Liquidation Trust Expenses, including, after the Effective Date and until the Chapter 11 Cases are closed, all fees incurred under 28 U.S.C. § 1930(a)(6), from the Liquidation Trust Assets as set forth in the Plan.

Section 6.4    *Non-Cash Trust Assets*.  To the extent Liquidation Trust Assets consist of property other than Cash, the Liquidation Trustee shall reduce such Liquidation Trust Assets to Cash.  The Liquidation Trustee shall determine the preferred timing of reducing such Liquidation Trust Assets to Cash.

Section 6.5    *Distributions*.  After the Effective Date and the establishment and funding of any necessary reserves, subject to applicable limitations set forth in this Agreement, on any Distribution Date, the Liquidation Trustee shall distribute from the Liquidation Trust the remaining Available Cash to Beneficiaries in accordance with the terms of the Plan and the Confirmation Order. The timing of all distributions shall be at the discretion of the Liquidation Trustee; *provided, however*, that distributions to Beneficiaries may only be made after the Final Administrative Claim Bar Date and subject to applicable limitations set forth in this Agreement. In the event that the Liquidation Trustee elects to make a distribution prior to the resolution of all Disputed Claims, the Liquidation Trustee shall hold in trust any distributions with respect to Disputed Claims of parties asserting an interest in the Liquidation Trust Assets until such Disputed Claims (i) become Allowed Claims that entitle the holder of such Claim to be a Beneficiary, or (ii) become disallowed by Final Order of the Bankruptcy Court.  Prior to making any distributions to the Beneficiaries permitted by this Agreement, the Liquidation Trustee may retain such amounts (x) as are reasonably necessary to meet contingent liabilities, fund required or appropriate reserves, and to maintain the value of the Liquidation Trust Assets during the liquidation, (y) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets), and (z) to satisfy other liabilities incurred by the Liquidation Trust in accordance with the Plan, the Confirmation Order, and this Agreement.

Section 6.6    *Request for Tax Identification Information*.  As soon as practicable after the Effective Date, if not done prior, the Liquidation Trustee shall distribute to all Beneficiaries a form to be completed by such Beneficiary and returned to the Liquidation Trustee requesting tax identification information from the Beneficiary.

Section 6.7    *Books and Records*.  The Liquidation Trustee shall maintain, in respect of the Liquidation Trust and the Beneficiaries, books and records relating to the assets and the income of the Liquidation Trust and the payment of expenses of the Liquidation Trust, in such detail and for such period of time as may be necessary to enable the Liquidation Trustee to make full and proper reports in respect thereof.  The LTOC shall have the right upon five (5) business days' notice to the Liquidation Trustee to inspect such books and records, subject to the Liquidation Trustee's right to deny access in a reasonable effort to preserve privileged or confidential information.

14

Section 6.8    *Cash Payments*.  Cash payments under the Plan shall be made, at the option, and in the sole discretion, of the Liquidation Trustee, by wire, check, or such other method as the Liquidation Trustee deems appropriate under the circumstances.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Liquidation Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Pursuant to Section 10.3 of the Plan, cash payments in the form of checks issued by the Liquidation Trust shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions.  Following the expiration of ninety (90) days after issuance of such null and void checks, amounts in respect of these undeliverable Distributions shall be become unrestricted Liquidation Trust Assets redistributed to the Beneficiaries in accordance with the terms of the Plan after reserving as necessary for payment of Liquidation Trust Expenses.  Any such holder of undeliverable Distributions shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidation Trust and any Liquidation Trust Interests held by such holder shall be deemed cancelled, and the Claims of such holder shall be forever barred.  For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

Section 6.9    *Set Off*.  The Liquidation Trustee may, but shall not be required to, set off against, or recoup from, any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Liquidation Trust may have against the holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such claim that it may have against such holder.

## ARTICLE VII

## CONCERNING THE LIQUIDATION TRUSTEE

Section 7.1    *Generally*.  The Liquidation Trustee accepts and undertakes to discharge the Liquidation Trust created by this Agreement, the Plan, and the Confirmation Order upon the terms and conditions hereof and thereof.  The Liquidation Trustee shall exercise such of the rights and powers vested in the Liquidation Trustee by this Agreement, the Plan, and the Confirmation Order and use the same degree of care and skill in the Liquidation Trustee's exercise as a prudent person would exercise or use under the circumstances in the conduct of Liquidation Trustee's own affairs.  No provision of this Agreement shall be construed to relieve the Liquidation Trustee or the Liquidation Trustee's employees, affiliates, officers, directors, principals, attorneys, accountants, experts, and agents (collectively with the Liquidation Trustee, the "Trustee Parties") from liability for that Trustee Party's own gross negligence, actual fraud, intentional misconduct, or willful misconduct, except that:

(a)    the Trustee Parties shall not be liable for any action taken in good faith in reliance upon the advice of attorneys, accountants, and other professionals;

(b)    the Trustee Parties undertake to perform such duties and only such duties as are specifically set forth in this Agreement, the Plan, and the Confirmation Order and to the

15

fullest extent permitted by applicable law no implied covenants or obligations shall be read into this Agreement, the Plan, or the Confirmation Order against the Trustee Parties;

(c)    the Trustee Parties shall not be liable for any error of judgment made in good faith; and

(d)    the Trustee Parties shall not be liable with respect to any action taken, suffered or omitted to be taken by the Trustee Parties in good faith in accordance with the direction of the LTOC.

Whether or not therein expressly so provided, every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Trustee Parties shall be subject to the provisions of this section.

Section 7.2    *Certain Rights of the Liquidation Trustee*.  Except as otherwise provided in this Agreement:

(a)    the Liquidation Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been signed or presented by the proper party or parties;

(b)    the Liquidation Trustee may consult with counsel, and the advice or opinion of counsel shall be full and complete protection to the Liquidation Trustee in respect of any action taken, suffered, or omitted by the Liquidation Trustee in good faith and in reliance on, or in accordance with, such advice or opinion;

(c)    except in the case of liability arising from the Liquidation Trustee's gross negligence, actual fraud, intentional misconduct, or willful misconduct, persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of this Agreement and the Liquidation Trustee shall have no personal or individual obligation to satisfy any such liability;

(d)    whenever, in the administration of this Agreement, the Liquidation Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Liquidation Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on the part of the Liquidation Trustee, rely upon an opinion of counsel or certificate furnished to the Liquidation Trustee by or on behalf of the Beneficiaries or the LTOC;

(e)    the Liquidation Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, or other paper or document, but the Liquidation Trustee, in the Liquidation Trustee's discretion, may make such further inquiry or investigation into such facts or matters as the Liquidation Trustee may see fit, and, if the Liquidation Trustee shall determine to make such further inquiry or investigation, the Liquidation Trustee shall be

16

entitled to examine the books, records and premises of the relevant person or entity, personally or by agent or attorney; and

       (f)     the Liquidation Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Liquidation Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by the Liquidation Trustee hereunder.

       Section 7.3    *Limitation of Liability; Indemnification.*  The Liquidation Trustee and the members of the LTOC and all of their respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designees, agent or representative of the Liquidation Trustee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, intentional misconduct, or actual fraud.  Neither the Liquidation Trustee nor the members of the LTOC shall be deemed to have any fiduciary duty to the Beneficiaries but shall exercise their obligations and duties under this Agreement, the Plan, and the Confirmation Order in good faith and in the reasonable best interests of the Liquidation Trust.  Subject to the terms and conditions of this Agreement, the Plan and the Confirmation Order, the Liquidation Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Liquidation Trustee and each of the members of the LTOC may, in connection with the performance of its functions, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons.  Notwithstanding such authority, neither the Liquidation Trustee nor the members of the LTOC shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence, intentional misconduct, or actual fraud.  The Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee and the members of the LTOC and their designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; *provided, however*, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence, intentional misconduct, or actual fraud.

17

Section 7.4 *Compensation and Reimbursement*.

(a) The Liquidation Trustee shall be entitled to (i) compensation at the Liquidation Trustee's normal and customary hourly rates, as set from time to time by the Liquidation Trustee, for services rendered as a trustee and (ii) reimbursement of actual, reasonable and necessary out-of-pocket expenses from time to time incurred by the Liquidation Trustee in rendering services as Liquidation Trustee. The Liquidation Trustee's current hourly rate is $450.

(b) Subsequent to the Effective Date, the reasonable fees and expenses of any professionals retained by the Liquidation Trustee in connection with the prosecution of the Retained Actions and related Claim Objections shall be (i) deemed an expense of the Liquidation Trust, and (ii) paid by the Liquidation Trust in accordance with any applicable retention agreements without any requirement of approval by the Bankruptcy Court of the retention, fees or expenses payable to such professionals.

Section 7.5 *Exculpatory Provisions*. The Liquidation Trustee shall not have any obligation, responsibility or liability for: (i) the validity, execution (except the Liquidation Trustee's own execution), enforceability, legality, or sufficiency of this Agreement; and (ii) taking any action under this Agreement, if taking such action (x) would subject the Liquidation Trustee to a tax in any jurisdiction where the Liquidation Trust is not then subject to a tax, or (y) would require the Liquidation Trust to qualify to do business in any jurisdiction where it is not then so qualified, unless the Liquidation Trustee receives an indemnity satisfactory to the Liquidation Trustee against such tax (or equivalent liability), or any liability resulting from such qualification.

## ARTICLE VIII

## LIQUIDATION TRUSTEE AND SUCCESSOR LIQUIDATION TRUSTEES

Section 8.1 *Resignation or Removal*. The Liquidation Trustee may resign and be discharged by giving at least 60 days' prior written notice thereof to the LTOC or, in the event the LTOC is no longer in existence, the holders of the 20 largest Liquidation Trust Interests. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice and (ii) the effective date of the appointment of a successor Liquidation Trustee in accordance with Section 8.3 hereof and such successor's acceptance of such appointment.

Section 8.2 *Removal*. After the payment of all outstanding fees and expenses of the Liquidation Trustee and the professionals retained by the Liquidation Trust through such date, the Liquidation Trustee may be removed, with or without cause, by the LTOC by unanimous vote of the LTOC. Such removal shall become effective on the later to occur of (i) the date such action is taken by the LTOC, and (ii) the effective date of the appointment of a successor Liquidation Trustee in accordance with Section 8.3 of this Agreement and such successor's acceptance of such appointment.

18

Section 8.3    *Appointment of Successor*.  In the event of the death, resignation, or removal of the Liquidation Trustee, a vacancy shall be deemed to exist and a successor Liquidation Trustee shall be appointed by a vote of the LTOC.  The successor Liquidation Trustee shall be elected by unanimous vote of the members of the LTOC or, in the event the LTOC is no longer in existence, then the successor Liquidation Trustee shall be selected upon further Bankruptcy Court Order issued following a motion filed by an interested party seeking appointment of a successor Liquidation Trustee.

Section 8.4    *Acceptance of Appointment by Successor Liquidation Trustee*.  The death, resignation, or removal of the Liquidation Trustee shall not operate to terminate the Liquidation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Liquidation Trustee.  Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such successor Liquidation Trustee's appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing, and, in case of the Liquidation Trustee's resignation or removal, to the retiring Liquidation Trustee.  Thereupon, such successor Liquidation Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion, and privileges of the predecessor Liquidation Trustee in the Liquidation Trust with like effect as if originally named Liquidation Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Actions and Proceeds for the benefit of the Beneficiaries and to file, prosecute, settle, compromise, and to be heard with regard to Claim Objections in accordance with the Plan, the Confirmation Order, and this Agreement.

## ARTICLE IX

## **MISCELLANEOUS PROVISIONS**

Section 9.1    *Privileges*.  Without compromising any other attorney-client privileges of the Debtors vis-à-vis any other Person, any and all attorney-client privileges, work product immunity, and other privileges of the Debtors shall vest in the Liquidation Trust and the Liquidation Trustee.  For the limited purpose of retaining the attorney-client privileges of the Debtors alone, the Liquidation Trustee shall be deemed to be an officer of each of the Debtors and, as such, no communications between any of the Debtors, any of the Debtors' officers, directors, professionals, and agents on the one hand, and the Liquidation Trustee and the Liquidation Trustee's professionals and agents on the other, shall be deemed to have waived the attorney-client privileges held by the Debtors.  Moreover, any other privileges or immunities attaching to any documents or communications (whether written or oral) transferred from any of the Debtors to the Liquidation Trust shall automatically vest in, and be available for assertion by, the Liquidation Trust and its representatives.

Section 9.2    *Construction*.  This Agreement and the Liquidation Trust created hereby shall be governed by and construed in accordance with the laws of the State of Delaware without giving effect to choice of law principles.  The Liquidation Trustee's interpretation of the provisions of this Agreement, the Confirmation Order and the Plan shall be deemed conclusive in the absence of a contrary interpretation of a court of competent jurisdiction.

19

Section 9.3    *Jurisdiction*.   The parties agree that the Bankruptcy Court shall have jurisdiction to determine all controversies and disputes arising under or in connection with this Agreement.

Section 9.4    *Severability*.   In the event any provision of this Agreement shall be determined by Final Order of a court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Section 9.5    *Notices*.   Any notice, consent, approval or other communication required or permitted to be given in accordance with this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or mailed by first class mail to the following address (it being understood that any party may change its address by similar written notice to the other party):

(i)    if to the Liquidation Trustee:

With a copy to:

Francis J. Lawall
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
francis.lawall@troutman.com

And

Deborah Kovsky-Apap
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
deborah.kovsky@troutman.com

20

(ii)     if to any Beneficiary, to the address or facsimile number of such Beneficiary as reflected in the Register.

(iv)     if to Debtors:

Section 9.6     *Entire Agreement*.  This Agreement (including the recitals hereof and, to the extent applicable, the Plan, and the Confirmation Order) constitutes the entire agreement by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order.  This Agreement (together with the Plan and the Confirmation Order) supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, if any, of the parties hereto relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.  This Agreement shall be binding on the parties hereto and their successors, including any chapter 11 Liquidation Trustee or chapter 7 trustee appointed in the Bankruptcy Cases.

Section 9.7     *No Relationship Created*.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

Section 9.8     *Effective Date*.  This Agreement shall become effective as of the Effective Date.

Section 9.9     *Amendment*.  This Agreement may from time to time be amended, supplemented or modified by the Liquidation Trustee, but only with (i) the approval of the Bankruptcy Court or (ii) the written consent of the LTOC.  The Liquidation Trustee shall provide the LTOC notice of any proposed amendment, supplement or modification to this Agreement at least five (5) business day prior to the proposed effective date of such amendment, supplement or modification; *provided, however*, that the LTOC may waive the notice period contained in this Section 9.9.

Section 9.10    *Headings*.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

Section 9.11    *Counterparts*.  This Agreement may be executed in facsimile and in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 9.12    *No Bond*.  The Liquidation Trustee shall serve without a bond.

21

Section 9.13   *Relationship to the Plan*.  The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore this Agreement incorporates the provisions of the Plan and the Confirmation Order.  To that end, the Liquidation Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and the Confirmation Order, and to seek any orders from the Bankruptcy Court in furtherance of the implementation of the Plan, the Confirmation Order, and this Agreement.  If any provisions of this Agreement are found to be inconsistent with provisions of the Plan or the Confirmation Order, the provisions of the Plan or Confirmation Order, as applicable, shall control.

Section 9.14   *Confidentiality*.  The Liquidation Trustee shall, during the period that such Liquidation Trustee serves as Liquidation Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or such Liquidation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain, any material, non-public information of or pertaining to any entity to which any of the Liquidation Trust Assets relates or of which such Liquidation Trustee has become aware in its capacity as Liquidation Trustee, except as otherwise required by law.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the date first above written.

LIQUIDATION TRUST OVERSIGHT COMMITTEE

By:_____
   Name:
   Title:

By:_____
   Name:
   Title:

By:_____
   Name:
   Title:

LIQUIDATION TRUSTEE

By: _____

22

Name:
Title:


QHC FACILITIES LLC


By: _____
          Name:
          Title: