## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-01643-als11 |
| **QHC FACILITIES LLC, et al.,**[1] | ) | Jointly Administered |
| | ) | |
| Debtors and Debtors in Possession. | ) | Hon. Anita L. Shodeen |
| | ) | |
| | ) | **MOTION FOR APPROVAL OF** |
| | ) | **SETTLEMENT BETWEEN THE** |
| | ) | **DEBTORS, COMMITTEE, AND** |
| | ) | **CEDAR HEALTHGROUP, LLC** |
| | ) | **UNDER FEDERAL RULE OF** |
| | ) | **BANKRUPTCY PROCEDURE 9019** |
| | ) | |
| ———————————————— | ) | *No Hearing Set* |

**COMES NOW** QHC Facilities, et al (collectively, "QHC" or the "Debtors"), Debtors

and Debtors in Possession herein, by and through their undersigned counsel, and pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully

file this Motion for Approval of Settlement between the Debtors, Official Committee of

Unsecured Creditors (the "Committee"), and Cedar Healthgroup, LLC  ("Cedar"), and would

show this Honorable Court as follows:

### JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334(b)

and 157. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A). Venue is proper before

this Court pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory and legal predicates for the

relief requested herein are in Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

---

[1]  The Jointly Administered Debtors in this proceeding are: *In re QHC Management, LLC* (Case No. 21-01644-als11) *In re QHC Mitchellville, LLC* (Case No. 21-01645-als11), *In re QHC Winterset North, LLC* (Case No. 21-01646-als11), *In re QHC Madison Square, LLC* (Case No. 21-01647-als11), *In re QHC Fort Dodge Villa, LLC* (Case No. 21-01648-als11), *In re Crestridge, Inc.* (Case No. 21-01649-als11), *In re Crestview Acres, Inc.* (Case No. 21-01650-als11), *In re QHC Humboldt North, LLC* (Case No. 21-01651-als11), *In re QHC Humboldt South, LLC* (Case No. 21-01652-als11) and *In re QHC Villa Cottages, LLC* (Case No. 21-01653-als11).

## **BACKGROUND**

2.        On December 29, 2021, (the "Petition Date"), the Debtors filed their voluntary

petitions under Chapter 11 of the Bankruptcy Code (Docket No. 1). On January 19, 2022, the

Court entered an Order directing that the cases be jointly administered for procedural purposes

under Case No. 21-01643.

3.        Information regarding the Debtors' history and business operations, capital structure

and secured indebtedness, and the events leading up to the commencement of these Chapter 11

cases can be found in the Debtors' First Day Declaration, filed with the Court on December 31,

2021.

4.        On March 23, 2022 the Debtors filed a Motion with this Court seeking forfeiture

of the deposit paid by Cedar (Docket No. 221).

5.        On May 26, 2022, Cedar filed a Motion for Summary Judgment seeking the

return of its $605,000.00 deposit (the "Deposit") (Docket No. 322).

6.        On June 30, 2022, the Debtors filed a Resistance and Cross-Motion for Summary

Judgment arguing the Debtors were entitled to retain the Deposit (Docket No. 364).

7.        On June 30, 2022, the Committee filed a Joinder to the Debtors' Resistance, as

well as its own Cross Motion for Summary Judgment (Docket No. 365).

8.        On July 1, 2022, Lincoln Savings Bank ("LSB") also filed a Joinder and Cross

Motion for Summary Judgment (Docket No. 367).

9.        On July 14, 2022, Cedar filed a Response and an Objection to the Debtors' and

Committee's Resistance and Cross Motions (Docket Nos. 375 & 376).

10.        On August 22, 2022, Cedar submitted a post-petition administrative expense

claim to the Debtors and Committee counsel (the "Cedar Administrative Expense Claim").

11.     On January 26, 2023, the Court entered an Order and Memorandum Granting Summary Judgment in favor of Cedar for the return of the Deposit (Docket Nos. 593 & 594).

12.     On February 7, 2023, the Debtors filed a Notice of Appeal and Statement of Election (Docket No. 601) (the "Debtors' Appeal"), and an Emergency Motion for Stay Pending Appeal (Docket No. 602).

13.     On February 9, 2023, the Debtors and Cedar entered into a Stipulation Regarding the Stay Pending Appeal (Docket No. 606).

14.     On February 9, 2023, Cedar filed a Motion to Approve and Allow Attorney's Fees (Docket No. 605) (the "Cedar Fee App").

15.     On February 14, 2023, Cedar filed a Notice of Cross-Appeal and Statement of Election (Docket No. 612) (the "Cedar Appeal").

16.     The Debtors, Committee, and Cedar (the "Parties") entered into settlement negotiations to resolve the Parties' disputes. The Parties reached a global settlement resolving all issues between and among them, memorialized by a settlement agreement (the "Settlement Agreement") attached hereto as **"Exhibit A"**.  The material terms of the Settlement Agreement are summarized as follows[2]:

> (a) Upon Bankruptcy Court approval, the Debtors shall transfer $415,000.00 of the Deposit to Cedar's counsel's trust account. The Debtors shall retain the remainder of the Deposit, totaling $190,000.00.  Any interest that has accrued on the Deposit shall be divided pro rata between the Parties.

> (b) The Cedar Administrative Expense Claim shall be deemed withdrawn upon Bankruptcy Court approval of this Settlement Agreement. For the avoidance of doubt, the terms of this Settlement Agreement constitute a final satisfaction of any and all administrative claims Cedar may have or have had against the

---

[2] In the event of any disagreement between this summary and the Settlement Agreement, the terms of the Settlement Agreement control.  Further, capitalized terms used in this paragraph not otherwise defined shall have the meaning ascribed to them in the Settlement Agreement.

Debtors and their Estates.

(c) Cedar shall withdraw the Cedar Fee App and shall not seek reimbursement of attorneys' fees from the Debtors or the Estates or have any claim for such attorneys' fees.

(d) The Debtors shall file a dismissal of the Debtors' Appeal.

(e) Cedar shall file a dismissal of the Cedar Appeal.

(f) As part of this Settlement Agreement, Cedar agreed to withdraw its objection to confirmation of the Joint Plan of Liquidation. The withdrawal was filed by Cedar before the confirmation hearing on February 22, 2023 (Docket No. 628).

(g) Mutual and customary releases by the Parties of all causes of action following completion of the terms of the Settlement Agreement.

17.     The Debtors believe the Settlement Agreement represents a fair and equitable settlement and compromise of the matters addressed therein. The Settlement Agreement will result in an immediate and substantial benefit to the Debtors and their Estates, while alleviating the financial burden, time and uncertainty associated with continued litigation of the issues resolved under the Settlement Agreement.

## **RELIEF REQUESTED**

18.     As stated above, as memorialized in the Settlement Agreement, the Debtors and Committee have reached a global settlement with Cedar. If approved, this settlement will avoid additional expense and uncertainty of further litigation.  By this Motion, the Debtors seek entry of an order approving the Settlement Agreement under Bankruptcy Code section 105 and Bankruptcy Rule 9019.

## BASIS FOR RELIEF

19.     Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement…"

20.     Settlements are favored in bankruptcy "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996). The Supreme Court has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts*." Protective Comm. for Independent Stockholder of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

21.     Under Eight Circuit precedent, the standard in determining whether to approve a settlement is "whether the settlement is fair and equitable and in the best interest of the estate." *In re Hildreth*, No. 09-00293, 434 F.3d 639, 654 (8th Cir. 2008) *(citing In re Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997).  "A settlement is not required to constitute 'the best result possible.'" *Id.*  "'Rather, the court need only canvass the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness.'"  *Id.*

22.     Courts generally examine four factors in determining whether to approve a settlement or compromise: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see In re Tri-State Financial, LLC*, 525 F.3d at 654 (*citing In re Martin*, 212 B.R. 291, 296 (Bankr. D. Del. 2006)); *see also Drexel Burnham Lambert Inc. v. Flight Transp. Corp.* (*In re Flight Transp. Corp. Sec. Litig.*), 730 F.2d 1128, 1135 (8th Cir. 1984).

23.     Application of the foregoing standards to the circumstances of the Chapter 11

Cases weighs in favor of approval of the Settlement Agreement because the settlement embodied

therein is in the best interest of the Debtors' estates and their creditors and parties in interest.

24.     First, the Settlement Agreement was negotiated at arms' length by sophisticated

parties and their respective experienced counsel. *See Motorola Inc. v. Official Comm. Of*

*Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (noting

that approval of settlements includes weighing the support of other parties in interest and the

"competency and experience of counsel" support the settlement").

25.     The factors of expense, inconvenience and delay have credible weight in this case

in particular where the Debtors have attempted multiple times to restructure, sell and otherwise

emerge from bankruptcy. The proposed resolution addresses the primary issues and crafts a

solution that bypasses delay, expensive litigation and preserves funds for the Estates and the

benefit of creditors.

26.     If the Court does not approve the Settlement Agreement, the Debtors will incur

additional legal expenses. The approval of this Settlement Agreement will eliminate potential

costs of litigation that involve a substantial risk of uncertainty.

27.     Further, this settlement provides a pathway for resolving all of Cedar's claims

against the Estates and all potential Estate claims against Cedar. As such, by providing a route

for full and complete satisfaction of the claims, the Settlement Agreement proffers more funds

for the Estates and their creditors. Therefore, the Settlement Agreement will materially and

beneficially impact the recoveries of the Estates' creditors.

28.     Accordingly, the proposed Settlement Agreement is fair and equitable, falls well within the required range of reasonableness, and should be approved by the Court as being in the best interests of the Debtors and their Estates.

## NOTICE

29.     Under Federal Rule of Bankruptcy Procedure 9006(c), the Court for cause shown may in its discretion, reduce the time for giving notice of the settlement, after considering the prejudice that would potentially result if notice were reduced, weighed against the reasons for shortening the notice period. *See In re Grant Broad. of Philadelphia, Inc*., 71 B.R. 390, 397 (Bankr. E.D. Pa. 1987)). Time is of the essence; accordingly, the Debtors request the Court to reduce the notice period from twenty-one (21) to fourteen (14) days.

30.     Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee; (b) counsel for the Official Committee of Unsecured Creditors; (c) Lincoln Savings Bank; (d) the Webb Family Trust; (e) Counsel to Cedar; and (f) all parties that have filed a notice of appearance and request for service in this proceeding of papers pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested herein, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

31.     No prior request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court, pursuant to Bankruptcy Rules 2002 and 9019, approve the attached Settlement Agreement; and for such other and further relief as the Court may deem just and proper under the circumstances.

Dated: 3/6/2023                             Respectfully submitted,


                                            Jeffrey D. Goetz, Esq., AT0002832
                                            Bradshaw Fowler Proctor & Fairgrave, PC
                                            801 Grand Avenue, Suite 3700
                                            Des Moines, IA  50309-8004
                                            515/246-5880
                                            515/246-5808 FAX
                                            goetz.jeffrey@bradshawlaw.com


                                            General Reorganization Counsel for
                                            Debtors and Debtors in Possession



                                            */s/  Krystal R. Mikkilineni*
                                            Krystal R. Mikkilineni, AT0011814
                                            Tirzah R. Roussell, AT0014113
                                            Dentons Davis Brown, P.C.
                                            The Davis Brown Tower
                                            215 10th ST. Suite 1300
                                            Des Moines, IA  50309
                                            (515) 246-7943
                                            krystal.mikkilineni@dentons.com
                                            tirzah.roussell@dentons.com

                                            General Reorganization Co-Counsel for
                                            Debtors and Debtors in Possession



                        CERTIFICATE OF SERVICE:

        This document was served electronically on parties who receive electronic notice through
CM/ECF as listed on CM/ECF's notice of electronic filing.

                                            */s/ Nicholas Valley*

**EXHIBIT A**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into as of March___, 2023 (the "Effective Date"), by and between QHC Facilities, LLC, QHC Management, LLC, QHC Mitchellville, LLC, QHC Winterset North, LLC, QHC Madison Square, LLC, QHC Fort Dodge Villa, LLC, QHC Humboldt North, LLC, QHC Humboldt South, LLC, and QHC Villa Cottages, LLC, each an Iowa limited liability company, and Crestridge, Inc. and Crestview Acres, Inc., each an Iowa corporation (collectively the, "Debtors"), the Official Committee of Unsecured Creditors in the Chapter 11 Cases (as defined below) of the Debtors (the "Committee"), and Cedar Healthgroup, LLC ("Cedar"). The Debtors, Committee, and Cedar shall each be referred to as a "Party" and together as the "Parties."

## RECITALS

**WHEREAS**, on December 29, 2021 (the "Petition Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court").

**WHEREAS**, on March 23, 2022, the Debtors filed a Motion with the Bankruptcy Court seeking forfeiture of the $605,000.00 deposit paid by Cedar (the "Deposit") (Docket No. 221). The Deposit was in relation to the auction and sale of substantially all of the Debtors' assets in which Cedar was the initial successful bidder.

**WHEREAS**, on May 26, 2022, Cedar filed a Motion for Summary Judgment seeking the return of the Deposit (Docket No. 322).

**WHEREAS**, on June 30, 2022, the Debtors filed a Resistance and Cross-Motion for Summary Judgment arguing the Debtors were entitled to retain the Deposit due to termination of the Asset Purchase Agreement because of Cedar's willful, incurable breaches (Docket No. 364).

**WHEREAS**, on June 30, 2022, the Committee filed a Joinder to the Debtors' Resistance as well as its own Cross Motion for Summary Judgment (Docket No. 365).

**WHEREAS**, on July 1, 2022, Lincoln Savings Bank also filed a Joinder and Cross Motion for Summary Judgment (Docket No. 367).

**WHEREAS,** on July 14, 2022, Cedar filed a Response and an Objection to the Debtors' and Committee's Resistance and Cross Motions (Docket Nos. 375 & 376).

**WHEREAS,** on August 22, 2022, Cedar submitted a post-petition administrative expense claim to the Debtors and Committee counsel (the "Cedar Administrative Expense Claim"). The claim asserted breach of contract, conversion, and other tort liability, as well as any claims revealed in the course of further proceedings, disclosures, and discovery. The total amount asserted in the claim was unliquidated and continuing to accrue in the minimum amount of $605,000.00.

**WHEREAS**, on January 26, 2023, the Court entered an Order and Memorandum Granting Summary Judgment in favor of Cedar for the return of the Deposit (Docket Nos. 593 & 594).

**WHEREAS**, on February 7, 2023, the Debtors filed a Notice of Appeal and Statement of Election (Docket No. 601), and an Emergency Motion for Stay Pending Appeal (Docket No. 602) (the "Debtors' Appeal").

**WHEREAS**, on February 9, 2023, the Debtors and Cedar entered into a Stipulation Regarding the Stay Pending Appeal (the "Stipulation") (Docket No. 606). Pursuant to the

-2-

Stipulation, the $605,000.00 Deposit was transferred into an interest-bearing account at Axos Bank until resolution of the Debtors' Appeal.

**WHEREAS,** on February 9, 2023, Cedar filed a Motion to Approve and Allow Attorney's Fees (Docket No. 605) (the "Cedar Fee App").

**WHEREAS**, on February 14, 2023, Cedar filed a Notice of Cross-Appeal and Statement of Election (Docket No. 612) (the "Cedar Appeal").

**WHEREAS**, to avoid the time and expense of litigation, Cedar, the Committee, and the Debtors wish to settle the issues related to all claims and disputes between the Parties according to the terms of this Settlement Agreement.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Cedar, the Committee, and the Debtors, agree as follows:

1.      Recitals.  The Recitals set forth above are hereby incorporated herein by reference in this Settlement Agreement.

2.      Effect of Agreement.  This Settlement Agreement is a compromise and settlement by each Party of that Party's claims against the other Party. It is also a mutual release by the Parties. By executing this Settlement Agreement, each of the Parties intends to and does hereby extinguish the obligations heretofore existing between them on the terms set forth below.

3.      Settlement of Claims. Each of the Parties hereto acknowledges that this Settlement Agreement effects the settlement of disputed claims and each of the Parties hereto agrees and acknowledges that this Settlement Agreement shall not be construed as an admission

of liability on the part of any Party hereto or that any contentions of any adverse party are true or meritorious.

4.    <u>Full Satisfaction.</u> The terms of the Settlement Agreement constitute a complete and final satisfaction of any and all claims which Cedar,  the Debtors, and Committee may have against each other. The terms of the Settlement Agreement constitute a complete and final satisfaction of any and all claims in which the Debtors and Committee have or may have against Cedar, and vice versa.

5.    <u>Cedar Payment/Deposit.</u>  Upon Bankruptcy Court approval of this Settlement Agreement, the Debtors shall transfer $415,000.00 of the Deposit to Cedar's counsel's trust account. The Debtors shall retain the remainder of the Deposit, totaling $190,000.00.   Any interest that has accrued on the Deposit shall be divided pro rata between the Parties.

6.    <u>Cedar's Withdrawal of Administrative Claim</u>. The Cedar Administrative Expense Claim shall be deemed withdrawn upon Bankruptcy Court approval of this Settlement Agreement. For the avoidance of doubt, the terms of this Settlement Agreement constitute a final satisfaction of any and all administrative claims Cedar may have or have had against the Debtors and their Estates.

7.    <u>Cedar's Withdrawal of Motion to Approve Attorney's Fees</u>.   Cedar shall withdraw the Cedar Fee App and shall not seek reimbursement of attorneys' fees from the Debtors or the Estates or have any claim for such attorneys' fees.

8.    <u>Debtors' Dismissal of Appeal</u>.  The Debtors shall file a dismissal of the Debtors' Appeal.

9.    <u>Cedar Dismissal of Cross Appeal</u>.  Cedar shall file a dismissal of the Cedar Appeal.

-4-

10.      Cedar Withdrawal of Plan Objection. As part of this Settlement Agreement, Cedar agreed to withdraw its objection to confirmation of the Joint Plan of Liquidation. The withdrawal was filed by Cedar before the confirmation hearing on February 22, 2023 (Docket No. 628).

11.      Release by Cedar.  Upon full performance by the Debtors and Committee of the terms set forth herein, Cedar releases the Debtors and Committee, and the Debtors' and Committee's agents, members, managers, principals, attorneys, other professionals (including the Debtors' financial advisors), members and representatives, and any predecessors, successors, and assigns thereof (collectively, the "Estate Release Parties") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, expenses, rights of setoff, or claims for recoupment, of any nature whatsoever, whether known or unknown, fixed or contingent, except as otherwise expressly provided in this Settlement Agreement.

12.      Release by the Debtors and Committee. Upon full performance by Cedar of the terms set forth herein, the Debtors and Committee release Cedar and its respective agents, members, managers, principals, attorneys, and representatives, and any predecessors, successors, and assigns thereof (collectively, the "Cedar Release Parties") from any and all manner of actions, causes of action in law or equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, expenses, rights of setoff, or claims for recoupment, of any nature whatsoever, whether known or unknown, fixed or contingent, except as otherwise expressly provided in this Settlement Agreement.

13.      Risk of Mistake. In executing this Settlement Agreement, the Parties represent and certify that they do so with full knowledge of any and all rights which they may have; that no Party has relied upon any representations made by any other Party with regard to this

Settlement Agreement or the basis thereof; that except for express representations contained herein, the Parties assume the risk of any mistake of fact on their part in connection with the facts involved herein or with regard to any facts which are now unknown to the Parties hereto.

14.   <u>Miscellaneous Provisions:</u>

A.   <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement with regard to the subject matter hereof, there being no oral, collateral, or supplemental agreement concerning the subject matter hereof. This Settlement Agreement may not be altered, amended, modified, or otherwise changed in any respect or particular, as to any Party, except by a writing duly executed by each Party affected thereby. Each Party acknowledges and warrants that their execution of this Settlement Agreement is free and voluntary.

B.   <u>Counter Parts</u>. This Settlement Agreement may be executed in any number of counterparts, and by the different Parties on different counterpart signature pages, all of which taken together shall constitute one and the same agreement.  Any of the Parties hereto may execute this Settlement Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed to be an original.  Delivery of a counterpart hereof by e-mail transmission of an Adobe portable document format file (also known as a "PDF" file) shall be effective as delivery of a manually executed counterpart hereof.

C.   <u>Severability.</u>  The Parties mutually agree that if any provision of this Agreement is found to be unenforceable, said provision shall be severed from this Agreement and shall have no effect on the enforceability of any other provision in this Agreement.

D.   <u>Amendment</u>. This Settlement Agreement may not be amended except by a written instrument executed and delivered by all of the Parties.

E.      <u>Successors</u>. This Agreement and its terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof shall be binding upon and shall inure to the benefit of the undersigned Parties and their respective representatives, successors and assigns.

F.      <u>Advice of Counsel.</u> Each Party warrants and represents that in executing this Settlement Agreement, they have relied upon legal advice from the attorney of their own choice; that the terms of this Settlement Agreement have been read and its consequences, including risks, complications, and costs, have been completely explained to them by that attorney; and that they fully understand the terms of this Settlement Agreement. Each Party further acknowledges and represents that, in executing this Settlement Agreement, they have not relied on any inducements, promises, or representations by the other Party or any Party representing or serving the other Party.

G.      <u>Authority.</u>  The Parties to this Settlement Agreement represent and warrant that they have full legal authority to enter into this Settlement Agreement and to dispose of the claims, demands, causes of action, obligation and liabilities which are the subject of this Settlement Agreement.

H.      <u>Notices.</u>  For purposes of any notice herein, including, but not limited to, application for approval of this Settlement Agreement, notices shall be sent as follows:

If to the Debtors:                         Krystal R. Mikkilineni
Dentons Davis Brown
215 10th St., Suite 1300
Des Moines, IA 50309
515/246-7943
krystal.mikkilineni@dentons.com

If to the Committee:                    Fran Lawall
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square

                                                   Eighteenth and Arch Streets
Philadelphia, PA 19103
215/981-4000
francis.lawall@troutman.com

If to Cedar                            Eric Lam
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, IA 52401
319/896-4018
elam@simmonsperrine.com

          I.        <u>Attorney's Fees.</u>  Each Party to this Settlement Agreement shall bear all attorney's fees and costs arising from their own counsel in connection with the Chapter 11 Cases, this Settlement Agreement, and the matters referred to herein, and all related matters.

         J.        <u>Approval by the Bankruptcy Court.</u>  This Settlement Agreement is conditioned on, and is subject to, the Bankruptcy Court's entry of an order approving this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019. Upon execution of this Settlement Agreement by all Parties, the Debtors shall promptly file a motion in accordance with Federal Rule of Bankruptcy Procedure 9019 seeking approval of this Settlement Agreement by the Bankruptcy Court. In the event that the Bankruptcy Court does not approve this Settlement Agreement, all agreements, stipulations, promises, or otherwise shall be null and void.

         K.        <u>Binding Effect.</u>      Upon approval by the Bankruptcy Court, this Settlement Agreement shall be binding upon each of the Parties and their respective successors-in-interest, including, but not limited to, any successor to the Debtors or their bankruptcy estates and including any representative that may be appointed for the Debtors by order of the

Bankruptcy Court or pursuant to any plan of reorganization or liquidation confirmed by the Bankruptcy Court.

       L.    <u>Enforcement.</u>  Any claims or causes of action, whether legal or equitable, arising out of or based upon this Settlement Agreement or related documents, including, but not limited to, the interpretation and/or enforcement of this Settlement Agreement, shall be commenced in the Bankruptcy Court or the United States District Court for the Southern District of Iowa.  The Parties hereby consent to the jurisdiction, venue, and process of the Bankruptcy Court and the District Court.

       M.    <u>Governing Law.</u>  This Settlement Agreement is made pursuant to, and shall be governed by, the laws of the State of Iowa and, where applicable, federal bankruptcy law.

*[Signature pages follow]*

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Settlement Agreement as of the date first written above.

**CEDAR HEALTHGROUP, LLC**

By: Mark Tress
Its: Member
Date: 3-06-23

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

/s/ Francis Lawall
By: Francis Lawall
Its: Counsel for the Committee
Date: 3/6/23

**QHC FACILITIES, LLC**

By: Mark Hidlebaugh
Its: Managing Member
Date: 3/6/23

**QHC MANAGEMENT, LLC**

By: Mark Hidlebaugh
Its: Managing Member
Date: 3/6/23

**QHC MITCHELLVILLE, LLC**

By: Mark Hidlebaugh
Its: Managing Member
Date: 3/6/23

**QHC WINTERSET NORTH, LLC**

By: Mark Hidlebaugh
Its: Managing Member

Date: 3/6/23

**QHC MADISON SQUARE, LLC**

By: _____
Its: ___Managing Member___
Date: 3/6/23

**QHC FORT DODGE VILLA, LLC**

By: Mark Hidlebaugh
Its: ___Managing Member___
Date: 3/6/23

**QHC HUMBOLDT NORTH, LLC**

By: Mark Hidlebaugh
Its: ___Managing Member___
Date: 3/6/23

**QHC HUMBOLDT SOUTH, LLC**

By: Mark Hidlebaugh
Its: ___Managing Member___
Date: 3/6/23

**QHC VILLA COTTAGES, LLC**

By: Mark Hidlebaugh
Its: ___Managing Member___
Date: 3/6/23

**CRESTRIDGE, INC.**

By: Mark Hidlebaugh
Its: ___CEO___
Date: 3/6/23

**CRESTVIEW ACRES, INC**

By: _Mark Holubowicz_

Its: ___CEO___

Date: _2/6/23_